UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GERALDINE FAVALORO, for herself and on behalf of all others similarly situated, | ) ) ) | Case No. 05-11594 RCL |
| Plaintiff, | ) ) | Honorable Reginald C. Lindsay |
| vs. | ) ) ) | |
| PRESIDENT AND FELLOWS OF HARVARD COLLEGE, BAYVIEW CREMATORY, LLC, a New Hampshire Limited Liability Company LINDA STOKES, Trustee of the Dekes Realty Trust of 107 South Broadway, Lawrence, Massachusetts, and JOHN J. GENTILE | ) ) ) ) ) ) ) | |
| Defendants | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
OF DEFENDANT PRESIDENT AND FELLOWS OF HARVARD COLLEGE**

## I.    INTRODUCTION

In this putative class action, plaintiff asserts claims against President and Fellows of

Harvard College ("Harvard"), among other defendants, in connection with the operation of a

charitable program by the Harvard Medical School known as the Anatomical Gifts Program, or

"AGP." AGPs are programs operated by medical schools, including Harvard Medical School,

and other institutions to which donors may donate their bodies after death for education and

research. The programs are critical to the training of physicians and other medical professionals.

After AGPs complete their studies, there are several options for donor remains. As

plaintiff alleges, in the case of Harvard, donor remains are delivered to the custody of licensed

funeral directors who, depending on the wishes of the donors or their next of kin, transfer them

to cemeteries for burial, or to crematories for cremation. Cremated remains are either transferred to cemeteries for interment or returned to next of kin.

Plaintiff alleges that her mother, Betty Frontiero, donated her body to Harvard Medical School's AGP; that after use of the remains, Harvard delivered the remains to a funeral director, defendant John Gentile; and that Mr. Gentile arranged for the cremation of her remains to occur at the Bayview Crematory in Seabrook, New Hampshire. Plaintiff alleges that she suffered emotional distress upon learning that the Bayiew Crematory was unauthorized to operate in New Hampshire and had mishandled bodies sent there. Plaintiff does not contend that Harvard participated in or was even aware of the crematory's alleged misconduct, but only that Harvard and the licensed funeral director on whom Harvard relied allegedly failed to investigate the crematory. Plaintiff asserts claims of negligence, negligent infliction of emotional distress and intentional infliction of emotional distress against Harvard and the other defendants. For the reasons set forth below, the claims against Harvard should be dismissed.

First, all claims against Harvard should be dismissed because Harvard is immune from liability under the Uniform Anatomical Gift Act, Mass. Gen. Laws ch. 113, § 13 (c). Plaintiff does not and cannot allege any facts that would void the broad grant of immunity provided by this statute to Harvard's Anatomical Gifts Program.

Second, plaintiff's claims against Harvard fail because plaintiff does not and cannot allege critical elements of those claims against Harvard. With respect to the claim for intentional infliction of emotional distress, plaintiff does not allege intentionally wrongful conduct on the part of Harvard or conduct by Harvard that it should have known would cause distress to this plaintiff. Neither has plaintiff alleged conduct by Harvard, in contrast to the crematory, that could even remotely be characterized as "extreme and outrageous." Plaintiff's allegations of

- 2 -

causation also fail because they do not allege that any conduct by Harvard was directed at her or occurred in her presence. Because each of these missing allegations are required elements of the cause of action, their absence requires dismissal.

With respect to plaintiff's claims against Harvard for negligence and negligent infliction of emotional distress, plaintiff's allegations of illegal activity by Bayview present an intervening illegal act that precludes Harvard's liability. In addition, plaintiff does not allege that her decedent's remains were wrongfully cremated. Rather, she bases her claim only on the allegation that Bayview Crematory was unauthorized to operate in New Hampshire and was discovered to have engaged in improper practices. The law does not recognize a claim for negligence or negligent infliction of emotional distress arising from wrongful cremation where the plaintiff's claim is that she is uncertain whether actual harm may have been caused to the decedent. The recognition of such a claim would greatly expand the scope of liability for negligently caused emotional harm, contrary to the clear trend of Massachusetts appellate decisions.

## II.    ARGUMENT

### A.    The Legal Standard

The First Circuit has described the standard for reviewing a motion to dismiss as follows:

> Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate if the facts alleged, taken as true, do not justify recovery. [Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).] The pleading requirement, however, is "not entirely a toothless tiger." The Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989). "The threshold [for stating a claim] may be low, but it is real." Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988). In order to survive a motion to dismiss, plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery." Id. at 515. Although all inferences must be made in the plaintiffs' favor, this court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aulson, 83 F.3d at 3.

- 3 -

Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir. 1996). Under this standard, even accepting plaintiff's allegations as true solely for purposes of this motion, the Complaint fails to state a claim against Harvard.

**B.     Harvard is Immune From Liability Under The Uniform Anatomical Gift Act**

Plaintiff asserts claims against Harvard in connection with Harvard's operation of its AGP. An AGP is a program by which donors may donate their bodies or organs to a medical school or other institution for the advancement of medical education and scientific research. All 50 states and the District of Columbia have officially recognized and supported such programs through their adoption of the Uniform Anatomical Gift Act ("UAGA"), which establishes certain requirements for AGPs and also provides immunity from liability for institutions that operate such programs in good faith. By adopting the UAGA, the state legislatures have accepted the uniform act's purpose to "encourage the making of anatomical gifts." 8A Uniform Laws Annotated, p. 4 (2004 ed.). The UAGA was adopted in Massachusetts in 1971 and is codified at Massachusetts General Laws ch. 113, §§ 7-13.

Section 9 of the Massachusetts UAGA describes the entities that may serve as donees for anatomical gifts. It provides in relevant part:

> The following persons may become donees of gifts of bodies or parts thereof for the purposes stated: . . . .
>
> (2) any accredited medical or dental school, college, or university for education, research, advancement of medical or dental science or therapy; . . . .

Mass. Gen. Laws ch. 113, § 9. As alleged in the Complaint, Harvard's AGP is operated by its medical school. Complaint, ¶¶ 2, 14.

Without programs such as Harvard's, and the generosity of its donors, the training and education of medical professionals would be insufficient and incomplete, to the vast detriment of

- 4 -

the public at large.  The important public interest in the advancement of medical education and research served by AGPs is described in the brochure attached to plaintiff's Complaint as Exhibit B:

> THE NEED FOR BODIES AFTER DEATH
>
> Dissection of the human body in medical schools
> constitutes an invaluable and indispensable part of medical
> education and research.  Each year numbers of bodies are
> needed for the teaching of medical and dental students,
> post-graduate physicians, nurses, physiotherapists,
> occupational therapists and students of related disciplines.
> The principal source of bodies is private donation.

By adoption of the UAGA, Massachusetts intended to foster just such activities of AGPs.  See Mass. Reg. Code tit. 105, § 800.001 (1994) (the Massachusetts Legislature adopted the UAGA to "increase the supply of organs and tissues for the purposes of transplantation, therapy, research and education.")

In order to encourage such programs, the law grants those who operate them immunity from civil suits arising from their activities, provided such activities occur in good faith.  The law states in part,

> A person who acts in good faith in accordance with the terms of
> sections seven to thirteen, inclusive, or under the anatomical gift
> laws of another state or a foreign country shall not be liable for
> damages in any civil action or be subject to prosecution in any
> criminal proceeding for his act.

Mass. Gen. Laws. ch. 113 § 13(c).  In keeping with the overall purposes of the UAGA, the provision of immunity is designed to encourage the making and acceptance of anatomical gifts and facilitate such donations.  See Carey v. New England Organ Bank, 2004 Mass. Super. LEXIS 132, *15, 30-32 (Apr. 23, 2004).

Good faith under the UAGA is a term of art, defined as "an honest belief, the absence of malice, and the absence of design to defraud or to seek an unconscionable advantage."  Id. at

- 5 -

*15. The application of the UAGA's good faith immunity is liberally construed to facilitate organ and tissue donation. Id. at *30-32. To establish a lack of good faith under the UAGA, a plaintiff must make "more than a showing of mere negligence, lest the Legislature's intent to protect organizations enabling organ donation and transplantation be frustrated." Id. at *20; see also, Lyon v. United States, 843 F.Supp. 531, 533 (D. Minn. 1994)(holding that consent for transplant was obtained in good faith, notwithstanding that eye donor form was inadvertently included with autopsy consent form); Rahman v. Mayo Clinic, 578 N.W.2d 802, 805-6 (Minn. App. 1998)(holding that defendants relied on facially valid donation permission form in good faith notwithstanding that the donor opposed donation); Kelly-Nevils v. Detroit Receiving Hosp., 526 N.W.2d 15, 20 (Mich. App. 1994)(holding that hospital acted in good faith when it accepted donation consent given by imposter claiming to be decedent's only living relative); Nicolleta v. Rochester Eye and Human Parts Bank, 519 N.Y.S.2d 928, 932 (N.Y. Sup. Ct. 1987)(holding that consent was obtained in good faith from girlfriend posing as wife). A court will abridge the UAGA immunity only where the defendant exhibits "a conscious or intentional wrongdoing carried out for a dishonest purpose or furtive design." Perry v. Saint Francis Hosp., 886 F.Supp. 1551, 1558 (D. Kan. 1995).

Nowhere does the Complaint allege that Harvard acted in bad faith. Nor does plaintiff allege any facts to suggest Harvard acted with a dishonest motive, a furtive design, or intent to do harm to plaintiff or her mother. The only alleged conduct that the Complaint attributes specifically to Harvard is that it engaged a licensed funeral director to arrange for the disposition of Betty Frontiero's remains, and that Harvard did not do an independent investigation of the crematory to which that funeral director sent the body. Complaint, ¶¶ 5, 23, 61. At best, these allegations amount to negligence (although those allegations also fail, as discussed in Section

- 6 -

II.C.2. below) and are inconsistent with a finding of intentionally wrongful conduct or bad faith. They do not come close to alleging improper motives or dishonest conduct. Such allegations are insufficient to override the immunity from liability provided to educational organizations like Harvard under the UAGA. For these reasons, Harvard is entitled to dismissal of all of the claims asserted against it in this action.[1]

### C.    Plaintiff's Claims All Fail to Allege Essential Elements in Relation to Harvard and Should for This Independent Reason Be Dismissed.

Even if Harvard were not immune from civil liability under the UAGA, plaintiff's claims against Harvard should be dismissed because they fail to allege the essential elements of those claims. Plaintiff purports to assert claims against Harvard of negligence (Count II), negligent infliction of emotional distress (Count IV), and intentional infliction of emotional distress (Count V).[2] For purposes of this motion, the plaintiff's factual assertions supporting the alleged claims must be taken as true. They are not complicated, and can be summarized as follows.

Plaintiff Geraldine Favaloro alleges that she is the daughter and next of kin of Betty Frontiero. Ms. Frontiero was among the generous donors to Harvard's AGP. According to the Complaint, Ms. Frontiero died on February 12, 2004. Her body was then taken to the Greeley

---

[1] The claims against Harvard should be dismissed even though there has been no discovery on the issue of bad faith. As the First Circuit has repeatedly held, a plaintiff is not entitled to discovery merely to attempt to unearth a factual basis for her claim. See MacKnight v. Leonard Morse Hosp., 828 F.2d 48, 52 (1st Cir. 1987)(where plaintiff failed to suggest any reasonable basis to conclude that discovery might uncover conduct by defendant that was arbitrary, discriminatory or in bad faith, district court did not abuse discretion in denying discovery)(citing 4 Moore's Federal Practice ¶ 26 56[1] at 26-95 n 3 ("discovery cannot be used as a vehicle for discovering a right of action"), and Bruno & Stillman, Inc. v. Globe Newspaper Co., 633 F.2d 583, 597 (1st Cir. 1980)("as a threshold matter, the court should be satisfied that a claim is not frivolous, a pretense for using discovery powers in a fishing expedition")). See also Kadar Corp. v. Milbury, 549 F.2d 230, 233 n. 2 (1st Cir. 1977) (plaintiff "is not entitled to a trial, or even to discovery, merely to find out whether or not there may be a factual basis for a claim which she has not made."); Cuddy v. City of Boston, 765 F. Supp. 775, 778 (D. Mass. 1991) ("[T]he circuit court has frequently held that where a plaintiff fails to state a claim, he is not entitled to discovery merely to find out whether or not there is a factual basis for his claim."); E.A. Miller, Inc. v. South Shore Bank, 405 Mass. 95, 100-02 (1989) (plaintiffs not entitled to discovery to support claim that bank acted in bad faith where plaintiffs failed to show a minimal basis in fact for allegations of bad faith).

[2] The Complaint also includes a sixth count which is nothing more than a request for relief against all of the defendants.

BST99 1469433-2 044541 0032

Funeral Home in Gloucester, Massachusetts, and then delivered to Harvard Medical School.
Complaint, ¶¶ 20-21. After Harvard completed its studies using Ms. Frontiero's body, it
delivered her remains to defendant John Gentile, "a licensed funeral director in the
Commonwealth of Massachusetts." Complaint, ¶¶ 5, 23, 70.[3] Mr. Gentile arranged for Ms.
Frontiero's remains to be cremated at the Bayview Crematory. Complaint, ¶¶ 24, 25. Bayview
certified that Ms. Frontiero's remains were cremated on November 9, 2004, and Harvard
received the cremated remains from Bayview on November 16th. Complaint, ¶¶ 25, 26.
Harvard then delivered the cremated remains to the plaintiff. Complaint, ¶ 27. Paperwork
concerning the handling of Ms. Frontiero's remains is attached as exhibits to the plaintiff's
Complaint and reveals nothing to suggest that her remains were mishandled in any way.

All of the plaintiff's claims in this case arise from its allegations that the Bayview
Crematory was unauthorized to operate and mishandled bodies that were sent there for
cremation. Complaint, ¶ ¶ 35, 36. Plaintiff does not allege that Harvard mishandled Ms.
Frontiero's body, had any involvement in Bayview's operations, or was aware of Bayview's
alleged misconduct.

The only allegations directed specifically at Harvard are that Harvard failed to investigate
the Bayview Crematory, and that, as a result, Bayview's alleged unauthorized operations and
alleged non-compliance with industry standards were not discovered. Complaint, ¶¶ 61-66. See
also id., ¶ 42 (describing Bayview's alleged misconduct and Harvard's and Gentile's alleged
failure to investigate Bayview's authorization to operate as "the core issues in this case.")

---

[3] Plaintiff alleges that defendant John Gentile was Harvard's agent. Complaint, ¶ 23. In fact, Gentile was not
employed by Harvard, but was an independent contractor. See Complaint, ¶71 ("Gentile charged and was
compensated by Harvard for his services.") Whether Gentile was Harvard's agent is immaterial to the present
motion, however, because even taking plaintiff's allegations of agency as true for purposes of the motion, Harvard is
entitled to dismissal.

Plaintiff alleges that defendant Linda Stokes, the trustee of the trust that owns Bayview, was "fully cognizant and aware of Bayview's alleged unauthorized status." Complaint, ¶¶ 53, 54. No similar allegations are made against Harvard or Gentile. Instead, the Complaint suggests that Stokes and other persons associated with Bayview knowingly misrepresented Bayview's authority to operate to Gentile and other funeral directors. Complaint, ¶ 54. The Complaint does not allege that Harvard intended that Ms. Frontiero's body be mishandled, but alleges intent only against the "Defendants" generically. Complaint, ¶¶ 93-99.

## 1.    Plaintiff Fails to State a Claim Against Harvard for Intentional Infliction of Emotional Distress

Plaintiff's count of intentional infliction of emotional distress against Harvard suffers several fatal defects. There are four elements to a cause of action for intentional infliction of emotional distress under Massachusetts law:

> It must be shown (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct, . . . ; (2) that the conduct was "extreme and outrageous," was "beyond all possible bounds of decency" and was "utterly intolerable in a civilized community . . . ; (3) that the actions of the defendant were the cause of the plaintiff's distress . . . ; and (4) that the emotional distress sustained by the plaintiff was "severe" and of a nature "that no reasonable [person] could be expected to endure it."

Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976)(citations omitted). Describing the standard for intentional infliction claims as "very high," the First Circuit has explained:

> Recovery on such a claim requires more than "that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." Foley v. Polaroid Corp., 400 Mass. 82, 508 N.E.2d 72, 82 (Mass. 1986).

- 9 -

Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996) (affirming dismissal of claim of

intentional infliction of emotional distress where plaintiff did not allege conduct amounting to

extreme and outrageous behavior); Orell v. UMass Mem'l Med. Ctr., Inc., 203 F. Supp.2d 52, 70

(D. Mass. 2002)(granting motion to dismiss claim of intentional infliction of emotional distress

because complaint failed to allege extreme and outrageous conduct); LaManque v.

Massachusetts Dept. of Employment & Training, 3 F. Supp. 2d 83, 94 (D. Mass. 1998) (Lindsay,

D.J.) (granting motion for judgment on the pleadings where complaint failed to "describe

conduct that exceeds all possible bounds of decency such that it is atrocious and utterly

intolerable in a civilized community").

      With respect to the first required element of the claim, plaintiff has failed to allege a

single fact that would lead to the conclusion that Harvard intended to inflict emotional harm on

her. The closest the Complaint comes is when it alleges in a conclusory fashion that the

"Defendants," generically, intentionally mishandled remains, without any allegations of

intentional misconduct directed specifically at Harvard. Complaint, ¶¶ 93-99. Nor has plaintiff

alleged any fact that would demonstrate that Harvard had reason to know that its conduct would

cause plaintiff distress. The only allegations of conduct specific to Harvard are that it engaged a

licensed funeral director to arrange for the cremation of Betty Frontiero's remains. According to

the documents attached as Exhibits G-J to the Complaint, the arrangements proceeded in an

orderly manner with Mr. Gentile and Bayview Crematory producing all the necessary

certifications and other paperwork to evidence the removal of the body, its transport to the

crematory, the cremation, and return of the cremated remains to Harvard. Plaintiff does not

allege, and cannot, that at any point in this process Harvard had any cause to believe that there

were problems with this arrangement, let alone that Harvard should have anticipated the acts

- 10 -

described in the Complaint against Bayview Crematory. Because plaintiff's general allegations of intentional misconduct are directed at the Defendants collectively, but the factual allegations directed specifically at Harvard do not support a conclusion of intentional misconduct on its part, plaintiff fails to satisfy the first element of the intentional tort, and her claim should be dismissed.

Plaintiff's claim of intentional infliction of emotional distress also fails because it does not allege conduct by Harvard that satisfies the second required element: "extreme and outrageous" conduct. The focus of the claims against Harvard are not intentional, affirmative acts but alleged failures to act which plaintiff characterizes as negligent in Count II of the Complaint. There, plaintiff alleges that Harvard "did not conduct any investigation" concerning Bayview's authorization to operate as a crematory (¶ 61); "failed to conduct any investigation into whether the Bayview crematory was operated in a manner consistent with the standard of care and regard for the handling and disposition of dead bodies customary and accepted in the industry" (¶ 62); "failed to observe the recommendations of national industry associations with regard to the due diligence required of a funeral home and funeral director in determining the licensing, status and operation of a crematory" (¶ 63);[4] and "failed to dispose of the bodies of the decedent/donors in accordance with the 'terms specified by the donor'" (¶ 64). Plaintiff alleges that, but for Harvard's negligence, the alleged unauthorized and improper operation of the Bayview crematory "would have been discovered." Complaint, ¶ 66. The Complaint also characterizes Bayview's alleged misconduct and Harvard's and Gentile's alleged failure to

---

[4] Paragraphs 61-63 of the complaint are directed at both Harvard and Gentile. The industry standards alleged to apply to funeral homes and funeral directors are not applicable to Harvard, as it is neither a funeral home nor a funeral director.

investigate Bayview and to determine whether Bayview was authorized to operate as a crematory as "the core issues in this case." Complaint, ¶ 42.

None of these allegations describe conduct that could be characterized as "extreme and outrageous" for purposes of the tort of intentional infliction of emotional distress. Mere negligence is not enough to satisfy the element of extreme and outrageous conduct. See Tetrault v. Mahoney, Hawke & Goldings, 425 Mass. 456, 466-67 (1997). Moreover, plaintiff's allegations of Harvard's alleged failure to act are insufficient to support her claim. See Caputo v. Boston Edison Co., 924 F.2d 11, 13 (1st Cir. 1991)(defendant's slowness to determine problem with nuclear plant employee's radiation monitor and to report excessive radiation exposure to Nuclear Regulatory Commission held as a matter of law not to amount to extreme and outrageous conduct); Lewis v. GE, 37 F. Supp. 2d 55, 60 (D. Mass. 1999)(defendant's failure to test plaintiff's property for PCB contamination based on plaintiff's speculation that defendant's release of PCBs into nearby river may have caused contamination on her property held not to amount to extreme and outrageous conduct.) Because plaintiff's claims against Harvard are premised on alleged negligent failures to act, and do not "describe conduct that exceeds all possible bounds of decency such that it is atrocious and utterly intolerable in a civilized community," they do not satisfy the required element of "extreme and outrageous conduct."

Finally, the allegations against Harvard fail to satisfy the causation element of the tort of intentional infliction of emotional distress. For purposes of this tort, plaintiff must show either that 1) defendant's extreme and outrageous conduct was directed at her, or 2) that she was present when the defendant's conduct occurred. See Christensen v. Superior Court, 820 P.2d 181, 202-04 (Cal. 1991) (allegation that crematory mishandled remains failed to satisfy causation requirement of intentional infliction of emotional distress claim). Plaintiff's allegations against

- 12 -

Harvard do not satisfy the requirement that Harvard's conduct (or, in this case, its alleged omission) was directed at the plaintiff or occurred in her presence. For all of these reasons, Count V of the Complaint should be dismissed as to Harvard.

> **2.     The Complaint Fails to State a Claim for Negligence or Negligent Infliction of Emotional Distress**

As explained in Section II.B. above, negligence is insufficient to overcome the grant of immunity for good faith operation of an AGP contained in the Uniform Anatomical Gifts Act, Mass. Gen Laws ch. 113, § 13(c). As a matter of law, therefore, plaintiff's claims of negligence and negligent infliction of emotional distress against Harvard must fail.

The Complaint fails to state a claim of negligence[5] against Harvard for two additional reasons: 1) the Complaint's allegations against Bayview Crematory allege intervening criminal acts that relieve Harvard from liability for any alleged negligence, and 2) the cause of the plaintiff's distress is not that the decedent's remains were mishandled, but that they might have been, which is insufficient to state a claim given Massachusetts' restrictive view of the tort of negligent infliction of emotional distress.

> **a.     Harvard Cannot Be Held Liable Because Plaintiff Alleges Intervening Illegal Acts of Defendant Bayview Crematory.**

As an initial matter, Harvard cannot be liable for negligence because the alleged activities of Bayview are intervening illegal acts that break the chain of causation. Plaintiff alleges that Bayview's operation of its crematory was "unauthorized and illegal." Complaint ¶ 36. Plaintiff goes on to allege that Bayview was "not a state authorized and approved crematory in the State of New Hampshire and had no official authority to conduct the business of cremating the

---

[5] Plaintiff alleges that she has suffered "extreme emotional distress, stigma damages, loss of enjoyment of life, loss of right to sepulture, and loss of right to grieving and mourning" as a result of the defendants' conduct. Complaint, ¶¶ 67, 89, 99. Because all of these alleged damages are in the nature of emotional injuries, plaintiff's claims of negligence and of negligent infliction of emotional distress are indistinguishable and will be treated identically for purposes of this motion.

- 13 -

remains of decedents under any rule, regulation, statute, law or ordinance of any state or of the United States of America." Id. at ¶¶ 32, 35, 53.

It is well established that, "as a general rule, there is no duty to protect another from the criminal conduct of a third party." Kavanagh v. Boston Univ., 440 Mass. 195, 201 (2003); see also Luoni v. Berube, 431 Mass. 729, 731 (2000); Mullins v. Pine Manor College, 389 Mass. 47, 50 (1983). Although there are exceptions to the rule that depend on the facts of the particular case, the courts have consistently denied liability where the defendant had no reason to anticipate that the third party had a propensity for criminal conduct. Compare Kavanagh, supra, (university not liable for assault and battery by student athlete where student had no history of violent behavior), with Beal v. Broadard, 2005 Mass. Super. LEXIS 125, * 12-13 (Feb. 4, 2005) (denying summary judgment where plaintiffs allege that defendant had knowledge of third party's sexual dangerousness); see also Whittaker v. Saraceno, 418 Mass. 196, 200-01 (1994)(landlord not liable for sexual assault on leased premises where there was no evidence of previous crimes on the premises). Plaintiff has not alleged a single fact that would have put Harvard on notice that Bayview was acting illegally. Indeed, plaintiff's allegations that because Harvard did not investigate Bayview Crematory, the crematory's illegal operation was not discovered, is inconsistent with a finding that Harvard was aware of facts that made the alleged criminal conduct of Bayview Crematory reasonably foreseeable. For this reason alone, plaintiff's claims of negligence against Harvard should be dismissed.

<div align="center">

**b.    The Complaint Fails to State a Claim for Negligent Infliction of Emotional Distress Because It Does Not Allege that Ms. Frontiero's Remains Were Mishandled**

</div>

The Complaint also fails to state a claim for negligent infliction of emotional distress because plaintiff does not allege that Ms. Frontiero's remains were mishandled by Bayview

<div align="center">- 14 -</div>

Crematory, and a claim for negligent infliction of emotional distress cannot be premised on the mere speculation that the decedent's remains may have been mishandled.

Critically missing from the Complaint is any allegation that Bayview mishandled Ms. Frontiero's remains or, for that matter, the remains of any donors to Harvard's AGP.  The Complaint glosses over this omission through the artful use of vague and general language, often relying on the use of the disjunctive "or" to mask the absence of the critical allegation.  For example, paragraph 36 vaguely asserts:

> [Bayview's practices] caused Bayview to return to Harvard and
> ultimately the families of Ms. Favaloro and other class members,
> tainted and contaminated remains, or remains that were not
> consistent with the unique identity of the decedent/donor.

Similarly, Count IV (Negligent Infliction of Emotional Distress) alleges only generally that the defendants handled bodies disrespectfully, and adds that these general practices "ultimately [left] Ms. Favaloro and the Class members with the knowledge, belief and stigma that the remains of a deceased loved one and/or family member were not disposed of as desired."  Complaint, ¶ 84. See also id., ¶ 94.  In paragraph 85, plaintiff alleges that "[t]he acts of commission and omission of the Defendants were so devoid of propriety, that the remains of the deceased loved ones of Ms. Favaloro and the Class members are tainted and contaminated."  Similarly, ¶ 87 alleges:

> The Defendants negligent acts constituted a seminal failure so
> consequential to the emotional well-being of Ms. Favaloro and the
> Class members, that the resulting horrendous acceptance, handling,
> treatment and disposition of the loved one and/or family member
> of each Putative Class Representative and member of the Classes,
> rose to the level of mutilation and desecration of the body....

These artful allegations avoid the issue of whether Ms. Frontiero's body was actually mishandled.  The Complaint does not allege that Ms. Frontiero's body was "not disposed of as desired," but only that defendants' practices left class members "with the knowledge, belief and stigma" that they were not.  Plaintiff does not allege that Ms. Frontiero's body was mutilated or

- 15 -

desecrated, but only that defendants' alleged conduct was so egregious that it "rose to the level of mutilation and desecration." The absence of any allegation that anything improper happened to Ms. Frontiero's remains ultimately is clear from plaintiff's use of the disjunctive. In Count V (Intentional Infliction of Emotional Distress) she alleges that "Defendants intentionally mishandled the remains of the deceased loved one of Ms. Favaloro and/or the Class members." Complaint, ¶ 93 (emphasis added). This allegation, combined with the others, makes it clear that the plaintiff has no basis to allege, and does not allege, that Ms. Frontiero's remains were among those that were allegedly mishandled.[6]

A claim of negligent infliction of emotional distress cannot be founded on mere speculation that harm might have befallen a body. Although Massachusetts recognizes a claim for negligent infliction of emotional distress based on a wrongful autopsy or mutilation of a corpse, in these cases the wrongful autopsy or mutilation of a decedent's body actually occurred. See Kelly v. Brigham & Women's Hosp., 51 Mass. App. Ct. 297 (2001); Rubianogroot v. Swanson, 2001 Mass. Super. LEXIS 244, * 5 (June 13, 2001). No Massachusetts case has permitted recovery merely because wrongful conduct may have occurred with respect to some decedents and a plaintiff speculates that it might also have happened with respect to her relative. Cf. Christensen, 820 P.2d at 201 (claim for negligent infliction of emotional distress based on mishandling of bodies at crematory requires "that the emotional distress was caused by a well-founded substantial certainty that [plaintiff's] decedent's remains were among those reportedly mistreated"). Allowing a claim for negligence to proceed without an allegation made in good

---

[6] Moreover, plaintiff does not actually seek to represent a class of all persons whose next of kin were improperly handled at the Bayview Crematory. Rather, she seeks to represent a class of next of kin of donors to Harvard's AGP whose remains were cremated at Bayview and returned to next of kin, family members and/or loved ones regardless of whether they were mishandled. Complaint, ¶ 37.

faith that the decedent's body was mishandled or improperly cremated would represent an unprecedented and unreasonable expansion of the law.

Allowing liability for negligent infliction of emotional distress where it is not alleged that the body of the plaintiff's particular decedent was mishandled would be inconsistent with rulings of the Massachusetts appellate courts that carefully limit the scope of liability for negligently caused emotional harm in order to avoid unreasonable burdens on merely negligent actors. This underlying principle of controlling the limits of liability to manageable proportions is clearly articulated in many of the courts' decisions. For example, in the landmark decision of <u>Payton v. Abbott Labs</u>, 386 Mass. 540 (1982), the Supreme Judicial Court adopted the majority rule, reflected in the Restatement (Second) of Torts, that negligent conduct that results in emotional disturbance alone, without accompanying bodily harm, does not give rise to liability. Although the requirement of physical harm was designed, in part, to prevent liability where the emotional distress was slight or not genuine, it also was designed, as a matter of policy, to avoid burdening negligent actors with legal exposure of an unreasonable scope. The court held:

> The third [reason for the majority rule] is that where the defendant's conduct has been merely negligent, without any element of intent to harm, his fault is not so great that he should be required to make good a purely mental disturbance. <u>Restatement (Second) of Torts</u>, <u>supra</u> at § 436A, Comment b. We find merit in this reasoning.

<u>Id.</u> at 552-53; <u>see also</u> <u>Sullivan v. Boston Gas Co.</u>, 414 Mass. 129, 133 (1993) (explaining that, in <u>Payton</u>, "we reasoned that the unintentional nature of the defendant's tortious conduct justified the imposition of an additional legal burden on the plaintiffs").

The Supreme Judicial Court's interest in avoiding unreasonable expansions of the tort is most often applied in the "bystander" cases, involving claims that plaintiffs suffered emotional distress as a result of witnessing or learning of injuries inflicted on another. <u>See, e.g.</u>, <u>Migliori</u>

v. Airborne Freight Corp., 426 Mass. 629, 631-33 (1998) (denying recovery for negligent infliction of emotional distress to would-be rescuer, citing "the need to impose some limits on the scope of liability" and "affirming our reluctance to expand the class of bystanders who may recover for emotional distress or the circumstances in which the members of that class may recover"); Cohen v. McDonnell Douglas Corp., 389 Mass. 327, 341, 343 (1983)(denying recovery to plaintiff who learned that son was killed in plane crash seven hours after it occurred "for policy reasons to prevent an unreasonable expansion of liability for the multitude of injuries that could fall within the bare principle of reasonable foreseeability" and because class of plaintiffs entitled to recovery "would be unreasonably large");  Barnes v. Geiger, 15 Mass. App. Ct. 365, 368 (1983)(denying recovery to plaintiff who witnessed accident and mistakenly believed victim was her son because to permit recovery "expands unreasonably the class of persons to whom a tortfeasor may be liable").  Although the Massachusetts Appeals Court in Kelly, supra, held that the limits on liability found in the bystander cases, allowing claims only by those who witnessed the harm to their injured family members at or very near the time of the injury, do not apply to wrongful autopsy cases, 51 Mass. App. Ct. at 309, those cases still are premised on a finding that a wrongful autopsy was actually performed on the body of the plaintiff's decedent, and nothing in the court's decision suggests that it would extend liability where plaintiff could not support such a finding.

As these cases recognize, the law must draw a line.  In cases alleging wrongful cremation, the line should be drawn to prevent liability where the plaintiff does not allege that her decedent's body was among those allegedly mishandled.  To permit recovery would represent a broad expansion of the law that would run directly contrary to the principles articulated in the Payton and Sullivan cases as well as in the bystander cases described above.  It

- 18 -

would allow recovery even where the decedent's body was handled by all defendants with the utmost care and dignity. It would allow the next of kin of any person whose body was sent to a crematory to assert claims against any person or organization that had a role in sending the body to the crematory, solely because the crematory allegedly mishandled the bodies of some other people at some other point in time. It would, therefore, greatly expand the universe of potential plaintiffs and potential defendants.

Not only would allowing plaintiff's claim expand the law of negligence beyond all reasonable bounds, but applying it to Harvard in this case would also place unreasonable burdens on charitable institutions that operate the invaluable programs that are necessary for the training of medical professionals. The public policy of encouraging donations reflected by the Massachusetts Legislature's grant of immunity precludes the unprecedented and expansive application of tort law that plaintiff's claim would require here. Accordingly, plaintiff's claims of negligence and negligent infliction of emotional distress against Harvard should be dismissed.

## III.     CONCLUSION

For all of the above reasons, all claims asserted against Harvard in this case should be dismissed.

<div style="margin-left: 40%;">

Respectfully submitted,

PRESIDENT AND FELLOWS OF HARVARD COLLEGE

By its attorneys:

Donald R. Frederico (BBO # 178220)
Melissa L. Nott (BBO #654546)
McDERMOTT WILL & EMERY LLP
28 State Street
Boston, Massachusetts 02109
(617) 535-4000
</div>

Dated: August 16, 2005

- 19 -

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of August, 2005, a true and correct copy of this Memorandum in Support of Motion to Dismiss of Defendant President and Fellows of Harvard College was served on all counsel of record in this matter.

**By Hand Delivery**
Lisa DeBrosse Johnson, Esq.
The Pilot House
Lewis Wharf
Boston, Massachusetts 02110
617-854-3740
617-854-3743 (facsimile)
*Counsel for Plaintiff*

**By United States Mail**
David H. Charlip, Esq.
1930 Harrison Street
Suite 208
Hollywood, Florida 33020
954-921-2131
954-921-2191 (facsimile)
*Counsel for Plaintiff*

**By Electronic Mail via CM/ECF**
Douglas A. Robertson, Esq.
Martin, Magnuson, McCarthy & Kenney
101 Merrimac Street
Boston, Massachusetts 02114
617-227-3240 ext. 315
drobertson@mmmk.com
*Counsel for John J. Gentile*

I also certify that courtesy copies were served on the following counsel:

**By Electronic Mail**
Andrew R. Schulman, Esq.
Getman, Stacey, Schulthess & Steere, P.A.
3 Executive Park Drive, Suite 9
Bedford, New Hampshire 03110
603-634-4300
Aschulman@gstss.com
*Counsel for Bayview Crematory, LLC*

**By United States Mail**
William P. Smith, Esq.
Haverty & Feeney
54 Samoset Street
Plymouth, Massachusetts 02360
508-746-6100
*Counsel for Bayview Crematory, LLC*

**By Electronic Mail**
William F. Ahern, Jr., Esq.
Mandi J. Hanneke, Esq.
Clark, Hunt & Embry
55 Cambridge Parkway, Suite 401
Cambridge, Massachusetts 02142
wahern@chelaw.com
mhanneke@chelaw.com
*Counsel for Linda Stokes*

Melissa Nott