UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

NO. 05-11594-RCL

_____

GERALDINE FAVALORO, for herself
and on behalf of all others similarly
situated,
        Plaintiff

v.

PRESIDENT AND FELLOWS OF
HARVARD COLLEGE, BAYVIEW
CREMATORY, LLC, a New Hampshire
Limited Liability Company, LINDA
STOKES, Trustee of the Dekes
Realty Trust of 107 South Broadway,
Lawrence, Massachusetts, and JOHN
J. GENTILE
_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

### LINDA STOKES, AS TRUSTEE OF THE DEKES REALTY TRUST OF 107 SOUTH BROADWAY, LAWRENCE, MASSACHUSETTS', OPPOSITION TO MOTION TO REMAND

Now comes defendant, Linda Stokes, Trustee of the Dekes Realty Trust of 107 South Broadway, Lawrence, Massachusetts (hereinafter, "Stokes" and "Dekes Realty Trust", respectively), and opposes the plaintiff's Motion for Remand. This action complies with the provisions of the Class Action Fairness Act, 28 U.S.C. §1332(d)(2)(A), granting original jurisdiction to this Court in this matter. The mandatory declination provisions of 28 U.S.C. §1132 have not been met, and the plaintiff's Motion for Remand should be denied.

### PROCEDURAL HISTORY

On June 29, 2005, the plaintiff filed this action in the Essex Superior Court of the Commonwealth of Massachusetts, asserting claims of negligence and emotional distress against defendants President and Fellows of Harvard College ("Harvard"), Bayview Crematory, LLC ("Bayview"), and John J. Gentile ("Gentile"). In addition, the

plaintiff asserted claims for emotional distress against defendant Stokes, as Trustee of the Dekes Realty Trust.  Harvard was served with process on July 8, 2005, and filed its Notice of Removal on July 29, 2005 pursuant to 28 U.S.C. §§ 1332, 1441, 1453, and 1446.  On August 2, 2005, after defendant Harvard removed the action to this Court, defendant Bayview was served with process.

## LAW

The enactment of the Class Action Fairness Act ("CAFA") established original jurisdiction in the federal courts for certain class actions.  A defendant is allowed to remove a class action when "the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of costs or interest" and "any member of a class of plaintiffs is a citizen of a State difference from any defendant."  28 U.S.C. §§1332(d)(2).  Although CAFA grants original jurisdiction to the federal courts, it also outlines situations in which the federal courts may decline jurisdiction and situations the federal courts must decline jurisdiction.  28 U.S.C. §§1332(d)(3) and (d)(4)(A) and (B).  The plaintiffs argue that this Court must decline jurisdiction of this action under the mandatory provisions of CAFA.  Defendant Stokes respectfully submits that the mandatory provisions for declination of jurisdiction are not applicable in this matter, and therefore requests this Court deny the plaintiff's motion.

**I.  The burden of proof to demonstrate that jurisdiction is not appropriate in the federal courts rests with the plaintiff.**

The burden of proof to demonstrate that remand is appropriate in this action rests with the plaintiff.  Prior to the enactment of CAFA, the burden of removal was on the party seeking removal to the federal courts.  Thompson v. Abbott Labs., 309 F.Supp.2d 165, 170 (D.Mass. 2004); BIW Deceived v. Local S6, 132 F.3d 824, 831 (1st Cir. 1997).  However, the Act modified the standard for removal and shifted the burden to the party seeking remand to state court.  Natale v. Pfizer, Inc., 2005 WL

1793451 (Young, C.J.) (D.Mass. 2005); <u>see also</u> <u>Waitt v. Merck & Co., Inc.</u>, 2005 WL 1799740 (W.D.Wash. 2005); <u>Berry v. American Express Publishing, Corp.</u>, 2005 U.S. Dist. LEXIS 15514 (C.D.Cal. 2005).[1]

   The Act itself is silent on the issue of burden.  However, as the <u>Berry</u> Court recognized: "[T]he burden of proof is not addressed in either the text of the original or the text of the new statute [and] CAFA was clearly enacted with the purpose of expanding federal jurisdiction over class actions." <u>Berry</u>, 2005 U.S. Dist. LEXIS 15514, *9.  The legislative record is clear: "[I]t is the Committee's intention with regard to each of these exceptions that the party opposing federal jurisdiction shall have the burden of demonstrating the applicability of an exemption." <u>Id.</u> <u>quoting</u> S.Rep. 109-14, p. 43-44 ("the named plaintiffs should bear the burden of demonstrating that a case should be remanded to state court…").[2]  Accordingly, the burden is on the plaintiffs to demonstrate that a mandatory declination provision applies to this action.

**II.    The mandatory declination provisions of the CAFA do not apply to this action.**

   The plaintiff cannot prove that the mandatory declination provisions of the CAFA apply to this action.  Section 1332(d)(4) of 28 U.S.C. provides:

   (4) A district court shall decline to exercise jurisdiction under paragraph (2) –
      (A)(i)  over a class action in which –
         (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
         (II) at least 1 defendant is a defendant –

---

[1] Unpublished cases cited by defendant Stokes which were not attached to the plaintiff's Motion for Remand are attached to the defendant's opposition for the Court's convenience.
[2] The Western District of Washington is split on the issue of burden shifting.  <u>See</u> <u>In Re Expedia Hotel Taxes and Fees Litigation</u>, 2005 WL 1706920 (W.D. Wash. 2005).  In addition, two other districts have held that the CAFA did not shift the burden to the plaintiff to prove remand is appropriate.  <u>Sneddon v. Hotwire, Inc.</u>, 2005 WL 1593593 (N.D. Cal. 2005); <u>Schwartz v. Comcast Corp.</u>, 2005 WL 1799414 (E.D. Pa. 2005).  Despite the apparent conflict, this Court (Young, C.J.) has held that the CAFA shifted the burden to the plaintiff.  <u>Natale</u>, <u>supra</u>.

(aa) from whom significant relief is sought by members of the plaintiff class;

(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

(cc) who is a citizen of the State in which the action was originally filed; and

(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or

(B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

In this action, the plaintiff's request for remand under either Section A or B is not supported by the allegations in the complaint.

**A.      The plaintiff's allegations do not meet the requirements of 28 U.S.C. § 1332(d)(4)(A).**

The plaintiff's proposed class does not meet the requirements of 28 U.S.C. §1332(d)(4)(A).  Specifically, there is no evidence that two-thirds of the proposed class members are citizens of the Commonwealth of Massachusetts.  There is also no support for the plaintiff's argument that the other class actions filed related to this matter do not assert "the same or similar factual allegations against any of the defendants on behalf of the same or other persons."    28 U.S.C. §1332(d)(4)(A)(ii). Therefore, original jurisdiction of this action remains with this Court and the plaintiff's Motion for Remand should be denied.

The plaintiff's proposed class includes the following individuals:

All next of kin, family members and/or loved ones of donors to Harvard Medical School Anatomical Gifts Program whose decedent/donor directed cremation of his or her anatomical remains and return of those remains to their next of kin, family members and/or loved ones that were cremated at Bayview crematory at the direction of Harvard through its agents, within the applicable limitations period.

The proposed class is not limited to residents of Massachusetts.  It includes all next of kin, family members and loved ones of donors to Harvard's Program.  Harvard is a renowned institution, and the plaintiff has not alleged that the Program restricts its gifts to donors who are residents of Massachusetts.  Nevertheless, even if the donors had to be residents, there is no basis in asserting that the family members, next of kin and loved ones of the donors, the people who would actually be in the class, are residents of Massachusetts.  Family members can live anywhere.  Children move.  Spouses move.  Parents move.  Simply, the plaintiff has no basis for asserting, as she so adamantly does, that greater than two-thirds of the family members of donors to the Program reside in Massachusetts. This Court should not decline jurisdiction on the basis of pure speculation.

Moreover, since there have been at least four other purported class action suits filed prior to this action that assert the same or similar factual allegations against Bayview on behalf of the plaintiff or other persons, 28 U.S.C. § 1332(d)(4)(A) cannot apply to this action, and remand is not required.  In order for this Court to be required to decline jurisdiction under 28 U.S.C. § 1332(d)(4)(A),  the plaintiff must show that "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." 28 U.S.C. § 1332(d)(4)(A)(ii) (emphasis added).

Four other purported class actions have been filed asserting similar claims against both Bayview and Stokes on behalf of the same or other persons. See Anzalone v. Bayview Crematory, LLC, et al., Essex, Massachusetts, Superior Court Civil Action No. 2005-00709; Hunt v. Bayview Crematory, LLC, et al., U.S. District Court, District of Massachusetts Case No. 2005-11140-RCL; Stinchcomb v. Bayview Crematory, LLC,

et al., Cumberland County, Maine, Superior Court Civil Action No. 05337; Ellis v. Bayview Crematory, LLC, et al., Rockingham County, New Hampshire, Superior Court Civil Action No. 05-C-350.[3]

Specifically, the plaintiff to this action would be a member of the class, if certified, in the Hunt matter.  The plaintiff in Hunt "seeks equitable relief and damages on behalf of the families of all decedents whose remains were cremated by Bayview Crematory" and includes in the class "all persons who controlled the disposition of the remains of any decedents delivered for cremation to defendant Bayview Crematory." Hunt Complaint ¶¶ 3, 29. Ms. Favaloro controlled the disposition of the remains of Ms. Frontiero and Ms. Frontiero was cremated at Bayview Crematory.  Complaint ¶¶ 13, 19, 25.

The Hunt complaint alleges, among other counts, negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress against Bayview and Stokes, the same allegations made in this action.  Further, the Hunt complaint alleges that Bayview "systematically and commonly mishandled, desecrated, abused and commingled the remains of the decedents in a manner offensive to human sensibilities and/or expressly prohibited by law."  Hunt Complaint ¶ 63.   These are substantially the same allegations made in this action:  "Bayview performed multiple cremations simultaneously; left bodies to decompose in non-refrigerated containers; generally failed to properly handle the bodies of decedents; and failed to prepare, keep and maintain accurate and proper records of its business."  Complaint ¶ 36.

Class action complaints were filed in the three years prior to the filing of this action that allege similar allegations against Bayview and Stokes that this action alleges.  Since the plaintiff and the proposed members of this class would also be

---

[3] The Complaints of these cases were attached to the Plaintiff's Motion for Remand.

members of the proposed classes in the other actions, particularly <u>Hunt</u>, the requirements of 28 U.S.C. §1332(d)(4)(A) cannot be met.  This Court should deny the plaintiff's Motion for Remand.

**B.     The plaintiff's allegations do not meet the requirements of 28 U.S.C. § 1332(d)(4)(B).**

The second mandatory declination provision provides for remand when "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed."  28 U.S.C. § 1332(d)(4)(B).  Two-thirds of the members of the proposed class, and all of the primary defendants are not all citizens of Massachusetts, the place in which the action was originally filed.  Bayview, a primary defendant, is a citizen of New Hampshire.  Complaint ¶3.

The plaintiff's allegations primarily stem from the alleged conduct of Bayview Crematory.  As stated in the plaintiff's complaint, a core issue of the case is whether "[t]he unauthorized and illegal operation of the Bayview Crematory, as well as its improper, offensive and mortifying method of operation, together with its deficient and/or non-existent record-keeping practices ... resulted in an offensively irreverent disposition of the anatomical remains of the class members' decedent/donors and resulting damage to Ms. Favaloro and the members of the Class."  Complaint ¶42.  If a determination of Bayview's conduct is a core issue in the case, then Bayview is a primary defendant.

In <u>Adams v. Federal Materials Company, Inc.</u>, 2005 U.D. Dist. LEXIS 15324 (W.D. Ken. 2005), the plaintiff attempted to assert that the only out-of-state defendant was not a primary defendant.  The district court examined the counts alleged against the out-of-state defendant and the in-state defendants and held that "in light of the lack of a principled distinction between the positions of Hanson and Rogers Group,

and the fact that one count of the Plaintiffs' complaint is directed against Hanson and Rogers explicitly, there is simply no basis for treating Rogers Group as a secondary defendant in this case." Id. at *16. This analysis applies here. The plaintiff has alleged negligence, intentional infliction of emotional distress and negligent infliction of emotional distress against Bayview, Harvard, and Gentile. There is no basis for any claim that Bayview is anything but a primary defendant in this case. Since Bayview is clearly a primary defendant in this matter, and Bayview is not a citizen of the state in which the action was originally filed, 28 U.S.C. § 1332(d)(4)(B) does not apply.

Furthermore, as discussed in Section II.A., above, the plaintiff's proposed class is not limited to residents of Massachusetts. Harvard is a world renowned institution, and may possibly receive gifts to its Anatomical Gift Program from around the nation. The proposed class includes "all next of kin, family members and/or loved ones of donors to" Harvard's program whose decedent "directed cremation of his or her anatomical remains and return of those remains to their next of kin...". Complaint ¶37. Through pure speculation, the plaintiffs have asserted that "greater than two-thirds, if not all, of the members of the proposed Class in the aggregate...are citizens of the Commonwealth of Massachusetts." Complaint ¶10. Family members, next of kin and loved ones of donors to the Harvard program could live anywhere. The plaintiff has presented no evidence demonstrating that two-thirds of the class members are citizens of Massachusetts, nor has the plaintiff attempted to restrict the class to only citizens of Massachusetts.

The provisions of 28 U.S.C. § 1332(d)(4)(B) are not met in this matter, as one of the primary defendants is not a citizen of the state in which this action was originally filed, and there is no proof that greater that two-thirds of the proposed class members

are citizens of Massachusetts.  Therefore, remand is not appropriate and the plaintiff's

Motion for Remand should be denied.

## CONCLUSION

The provisions that require this Court to decline jurisdiction over this action

have not been met.  There were four other class action lawsuits filed prior to this

matter that are related to this matter, at least one of which includes Ms. Favaloro and

her proposed class members, and makes substantially similar allegations against two

of the defendants to this action.  Moreover, one of the defendants, Bayview, is not a

citizen of Massachusetts, but is a primary defendant.  Finally, there are only bald

allegations that more than two-thirds of the proposed members of the class are

citizens of Massachusetts, despite no attempt to restrict the class membership to

Massachusetts citizens and no proof that the family members, next of kin, and loved

ones of the deceased donors to Harvard's Program are likely to be, or even are, citizens

of Massachusetts.  Accordingly, the plaintiff's Motion for Remand should be denied.


Respectfully submitted,

**CLARK, HUNT & EMBRY**


__/s/ Mandi Jo Hanneke_____
William F. Ahern, Jr. (013365)
Mandi Jo Hanneke (657349)
55 Cambridge Parkway
Cambridge, MA  02142
(617) 494-1920

9

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of September, 2005, a true and correct copy of this Opposition of the Defendant, Linda Stokes, Trustee of the Dekes Realty Trust of 107 South Broadway, Lawrence Massachusetts to the Plaintiff's Motion for Remand, was served on all counsel of record in this matter.

### *By United States Mail*

David H. Charlip, Esq.
1930 Harrison Street
Suite 208
Hollywood, FL 33020
954-921-2131
954-921-2191 (facsimile)

### *By Electronic Mail via CM/ECF*

Lisa DeBrosse Johnson, Esq.
The Pilot House
Lewis Wharf
Boston, MA 02110
617-854-3740
Counsel for Plaintiff

Douglas A. Robertson, Esq.
Martin, Magnuson, McCarthy & Kenney
101 Merrimac Street
Boston, MA 02114
617-227-3240 ext. 315
Counsel for John J. Gentile

Donald Frederico, Esq.
Greenberg Traurig, LLP
One International Place
Boston, MA 02110
617-310-6000
Counsel for President and Fellows of
Harvard College

Edward Leibensperger, Esq.
Melissa Nott, Esq.
McDermott, Will & Emery
28 State Street
Boston, MA 02109
617-535-4000
Counsel for President and Fellows of
Harvard College

Dona Feeney, Esq.
Andrew R. Schulman, Esq.
Getman, Stacey, Schulthess & Steere,
P.A.
3 Executive Park Drive, Suite 9
Bedford, NH 03110
603-634-4300
Counsel for Bayview Crematory, LLC


_/s/   Mandi Jo Hanneke_____
        Mandi Jo Hanneke

10

LEXSEE 2005 US DIST LEXIS 15514

**SAMUEL A. BERRY, Plaintiff, v. AMERICAN EXPRESS PUBLISHING, CORPORATION, et al., Defendants.**

**SA CV 05-302 AHS (ANx)**

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

*2005 U.S. Dist. LEXIS 15514*

**June 15, 2005, Decided**

**DISPOSITION:** [*1] Plaintiff's motion for remand granted and matter ordered remanded.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Samuel A Berry, as an individual, Samuel A Berry, on behalf of others similarly situated, Plaintiffs: Matthew Hale, Matthew S Hale Law Offices, Newport News, VA.

For American Express Publishing Inc, a New York corporation, American Express Travel Related Services Inc, a New York corporation Erroneously Sued As American Express Travel Related Services Company Inc, American Express Centurion Bank, doing business as American Express Bank FSB, a Utah corporation, Defendants: Andrew W Moritz, Scott M Pearson, Stroock Stroock & Lavan, Los Angeles, CA; Gerald S Ohn, CAAG – Office of Attorney General, Los Angeles, CA.

**JUDGES:** ALICEMARIE H. STOTLER, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** ALICEMARIE H. STOTLER

**OPINION:**

ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND

**I.**

**PROCEDURAL BACKGROUND**

On April 19, 2005, plaintiff Samuel A. Berry ("Berry") filed a motion to remand. On May 2, 2005, defendants American Express Publishing Corporation, American Express Travel Related Services Company, Inc., and American Express Centurion Bank ("defendants") filed opposition. Plaintiff filed a reply thereto on May 9, 2005. By [*2] Order dated May 10, 2005, the

Court took the matter under submission.

**II.**

**FACTUAL HISTORY**

On March 3, 2005, plaintiff filed a class action complaint, No. 05CC00049 ("Complaint"), in the Superior Court of California, County of Orange, on behalf of himself and others similarly situated. Plaintiff has filed the present suit for injunctive relief to end an allegedly unlawful business practice whereby defendants charge credit card holders for unsolicited magazine subscriptions unless the credit card holders take affirmative actions to the contrary. Plaintiff, who was charged for a subscription to "Travel + Leisure," was able to reverse the charges and cancel the magazine after contacting defendants. Nonetheless, plaintiff contends that defendants' actions violate *California Civil Code §§ 1584.5, 1770(a)(14)*, and *1770(a)(19)*.

On April 1, 2005, defendants filed a notice of removal under the newly-enacted Class Action Fairness Act of 2005 ("CAFA"). See U.S.C. *§ 1332(d)*. Plaintiff opposes removal and has filed a motion for remand on the basis that, notwithstanding the CAFA, defendants still bear the burden to show that the amount in controversy [*3] exceeds $5,000,000, and defendants that do not meet this burden when the complaint contains only claims for injunctive relief and plaintiff affirmatively indicates that "no monetary award in the amount of $5,000,000.00 or greater is sought that would provide the United States District Court with diversity jurisdiction pursuant to the terms of the Class Action Fairness Act of 2005 . . ." Complaint, p. 17, P16.

In reply, defendants urge the Court to interpret the CAFA according to its purported legislative intent to confer jurisdiction on federal courts and to shift the burden to plaintiff to show that removal is improper. Defendants further assert that plaintiff has asserted a claim for statutory damages and that the recovery could exceed $5,000,000.

Even if damages are not awarded, defendants contend that the value of the injunctive relief, whether measured from the perspective potential recovery by or value to plaintiff or the cost to defendants, also exceeds the requisite amount in controversy.

## III.

## DISCUSSION

### A. Standard of Review

#### 1. Diversity Jurisdiction Prior to Enactment of Class Action Fairness Act

Prior to the enactment of the CAFA, [*4] a removing defendant bore the burden of proving the existence of jurisdictional facts and there was a "strong presumption" against removal jurisdiction. See *Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992)*. On a motion to remand, the court would "resolve all contested issues of substantive fact in favor of the plaintiff . . ." See *Boyer v. Snap on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990)*, cert. denied, *498 U.S. 1085, 112 L. Ed. 2d 1046, 111 S. Ct. 959 (1991)* (internal citations omitted).

As with other claims brought under diversity jurisdiction, an amount in controversy exceeding $75,000 was required to invoke federal jurisdiction. See *28 U.S.C. § 1441(b)*. In the Court of Appeals for the Ninth Circuit, it was well established that, although joinder was proper for pleading purposes, the value of individual claims could not be aggregated for jurisdictional purposes unless the claims were either joint or common and undivided. *Gibson v. Chrysler Corp., 261 F.3d 927, 940 (9th Cir. 2001)*; see also *In re Brand Name Prescription Drugs Antitrust Litig., 123 F.3d 599, 607 (7th Cir. 1997)* (in a class action, [*5] "at least one named plaintiff must satisfy the jurisdictional minimum.").

#### 2. The Enactment and Purpose of the Class Action and Fairness Act

Under the rule of non–aggregation, class action complaints, which by their very nature often included small individual claims, were regularly remanded for failure to meet the amount in controversy requirement for diversity jurisdiction. Because "federal courts are the appropriate forum to decide most interstate class actions because these cases usually involve large amounts of money and many plaintiffs, and have significant implications for interstate commerce and national policy," Congress enacted the CAFA on March 3, 2005, to help minimize the alleged class action abuses in state courts and to ensure that certain class actions could be litigated in the appropriate forum. See Senate Pub. 109–14, p. 27.

As part of the CAFA, Congress inserted additional language into Title *28 United States Code Section 1332(d)*, and what was formerly *Section 1332(d)* became *Section 1332(e)*. Among other changes, the amount in controversy for class actions was increased to $5,000,000. However, courts are now required to "aggregate the claims of the individual [*6] class members to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." See *28 U.S.C. § 1332(d)(6)*.

#### 3. Interpretative Issues Created by the Class Action Fairness Act

CAFA substantially alters federal diversity jurisdiction over class actions. Where former diversity jurisdiction statutes did not specifically address the amount in controversy with respect to class actions, *Section 1332(d)(2)* provides in pertinent part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs . . . and is a class action . . .

*Section 1332(d)(6)* further states:

> In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest of costs.

These new additions to the diversity jurisdiction statute create various interpretative issues, such as whether the burden of proof has shifted post–CAFA in favor of federal jurisdiction, and how the [*7] amount in controversy should be measured now that aggregation of plaintiffs' claims is required. These two questions are implicated in the matter at hand, and, just as the answers to these questions were not found in the former statutory text, the current amendments do not provide a clear answer. Further, given the recent enactment of the CAFA, the Court finds no cases, binding or otherwise, that speak directly to the questions presented. Thus, the Court faces the difficult task of reconciling previously established, judicially–developed principles of diversity jurisdiction with the purpose and structure of the recent CAFA–amendments to the statute. Although the Court is cognizant that determining legislative "intent" is a process not without the potential for selective interpretation, where the statute does not squarely address the issue, legislative history is an essential tool for statutory interpretation. To this end, Committee Reports are "the authoritative source for finding the Legislature's intent," and may be

consulted as one important resource in the quest for faithful statutory interpretation. See *Garcia v. United States, 469 U.S. 70, 76, 105 S. Ct. 479, 83 L. Ed. 2d 472 (1984)*; [*8] accord *City of Edmonds v. Washington State Building Code Council, 18 F.3d 802, 805 (9th Cir. 1994)*.

Plaintiffs' arguments to the contrary, and, specifically, that resort to legislative history violates Article III, are misplaced. First, a statute cannot address all possible outcomes and situations, and language inevitably contains some imprecision; where the text does not provide a clear answer, a faithful interpretation of the statute necessarily involves more than the text itself. Second, if legislative intent is clearly expressed in Committee Reports and other materials, judicial disregard for the explicit and uncontradicted statements contained therein may result in an interpretation that is wholly inconsistent with the statute that the legislature envisioned. Where the source of legal authority is statutory and not constitutional, such as with the diversity statute n1, Congress retains the ability to create and direct the law, so long as it is consistent with constitutional principles, and it is particularly important for the Court to follow that directive. Where both plaintiffs' and defendants' interpretations of the burden of proof and the proper method of [*9] calculating the amount in controversy are constitutionally permissible, the role of the Court is to faithfully implement the law as intended by the Legislature. In these circumstances, the legislative history is a proper tool of statutory interpretation.

> n1 See Senate Committee Report, B.1. ("these procedural limitations [on diversity jurisdiction] regarding interstate class actions were policy decisions, not constitutional ones . . . it is therefore the prerogative of Congress to modify these technical requirements as it deems appropriate.").

### a. Burden of Proof When Removal is Contested

Although the burden of proof is not addressed in either the text of the original or the text of the new statute, the CAFA was clearly enacted with the purpose of expanding federal jurisdiction over class actions. See Sen. Pub. 109–14, p. 8 ("The Framers were concerned that state courts might discriminate against interstate business and commercial activities . . . both of these concerns – judicial integrity and [*10] interstate commerce – are strongly implicated by class actions . . . [thus] class action legislation expanding federal jurisdiction over class actions would fulfill the intentions of the Framers") (internal quotations omitted).

To this end, the Committee Report expresses a clear intention to place the burden of removal on the party opposing removal to demonstrate that an interstate class

action should be remanded to state court. The Committee Report states that "it is the Committee's intention with regard to each of these exceptions that the party opposing federal jurisdiction shall have the burden of demonstrating the applicability of an exemption." S. Rep. 109–14, p. 44; see also Sen. Rep. 109–14, p. 43 ("the named plaintiffs should bear the burden of demonstrating that a case should be remanded to state court . . .").

Although plaintiff argues that the failure to incorporate this directive on the burden of proof into the statute evinces an explicit intent to maintain the status quo, this contention cannot be squared with the uncontradicted statements contained in the Committee Report. Although the lack of any burden-shifting provisions may be an opaque means of preserving [*11] the status quo, as defendants suggest, it is equally possible that it was due to legislative oversight, the inability of the Legislature to foresee, or for statutes to address all circumstances.

Alternatively, and more plausibly, the failure to address the burden of proof in the statute reflects the Legislature's expectation that the clear statements in the Senate Report would be sufficient to shift the burden of proof. The Court notes, with some irony, that the original diversity statute does not contain any reference to the burden of proof. Plaintiff fails to explain how the failure to incorporate the burden of proof in *Section 1332(d)* should be assigned more or less meaning than the failure to incorporate any burden of proof into the original text. In these circumstances, the Court finds that the failure to explicitly legislate changes on the burden of proof in interstate class actions has little interpretative value.

Finally, in determining that the burden of proof has indeed shifted to the party seeking remand, the Court observes that this interpretation is also consistent with the tradition of placing the burden on the moving party.

### b. Valuation of the Amount in Controversy [*12]

Unlike the burden of proof, the amended statute explicitly addresses the amount in controversy requirement for class actions; however, notwithstanding this amendment, like its predecessor, the amended statute does not detail the appropriate means of valuing the amount in controversy. Valuation of the amount of controversy is particularly difficult where the plaintiff seeks non-monetary relief.

Prior to the CAFA, the Ninth Circuit held that, where an individual plaintiff seeks injunctive relief, the amount in controversy may be determined from the perspective of either the value to the plaintiff or the value to defendant. See *In re Ford Motor Co./Citibank (So. Dakota) N.A., 264 F.3d 952, 958 (9th Cir. 2001)*. However, because of the non-aggregation rules formerly applicable to all

claims, including class actions n2, the Ninth Circuit did not permit the value of injunctive relief sought in a class action to be determined by examination of its potential aggregate cost to the defendant. See *Kanter v. Warner–Lambert Co., 265 F.3d 853, 859 (9th Cir. 2001); Snow v. Ford Motor Co., 561 F.2d 787, 789 (9th Cir. 1977)* (holding that "if plaintiff [*13] cannot aggregate to fulfill the jurisdictional requirement of *§ 1332*, then neither can a defendant who invokes the removal provisions under *§ 1441*."). The amount in controversy depended on the nature and value of each class member's separate claim. See *id.*

        n2 Aggregation of plaintiffs' claims prior to the CAFA was permitted only in limited circumstances. See *Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1262 (11th Cir. 2000)* (aggregation permitted pre–CAFA only where plaintiffs suing to enforce single title or right in which they had a common and undivided interest). *Section 1332(d)(6)* now allows the aggregation of class members' claims without limitation.

      Given the explicit statutory change allowing aggregation of claims in class actions, it appears as though the justifications previously advanced for considering only the value to individual plaintiffs in a class action are no longer relevant. Since plaintiffs can now aggregate their claims to invoke diversity jurisdiction, finding the [*14] amount of controversy from the aggregate cost to defendants does not circumvent any non–aggregation principles and is consistent with the principle that only cases that could have been originally brought in federal court may be removed. Accordingly, the Court concludes that the amount in controversy may be satisfied either from the view of the aggregate value to the class members or defendants.

**B. Merits of Plaintiff's Motion to Remand**

      Assuming that the burden under the CAFA is on plaintiff to show that the amount in controversy is less than $5,000,000 in the aggregate, plaintiff meets this burden. First, plaintiff does not claim monetary damages. Plaintiff's three claims are explicitly for injunctive relief and plaintiff further states that he has no adequate remedies available at law. See, e.g., Complaint p. 5 P3, and p. 28 P62. Although plaintiff also states in the general prayer for relief that he also seeks statutory damages (Complaint, p. 40 P4), plaintiff specifically states that he and the class do not seek to recover more than $5,000,000. The Court has no reason to assume that plaintiff has misstated the value of the claim to defeat jurisdiction. Given plaintiff's [*15] representations to the Court, it would appear that

defendants would be in a strong position to estop plaintiffs from asserting a claim and recovering damages in excess of $5,000,000. Plaintiff has met his burden to show that he and the class members will not recover more than $5,000,000 in damages.

      The value of the injunctive relief also does not exceed the jurisdictional minimum. Whether taken from the perspective of the plaintiff class members or the defendants, the monetary value of the claims in this matter "are so uncertain that the court cannot reasonably determine whether the amount of money placed in controversy by the present suit exceeds [the requisite amount in controversy]." *Morrison v. Allstate Indem. Co., 228 F.3d at 1269 (11th Cir. 2000).*

      From the class members' perspective, the value of the injunctive relief appears nominal. Currently, some class members receive a magazine subscription that has a market value equal to the price that they are charged. For those class members who do not want the subscription, it appears possible to reverse the charges. Thus, the value of an injunction to the class members would be the value of not being bothered [*16] by unsolicited magazine subscriptions, an intangible, highly speculative benefit.

      Likewise, the cost to defendants if forced to cease this practice is wholly speculative. The cost to defendants of the injunction is not the gross value of the magazine subscription but rather it is either the cost of compliance or lost net benefit. See *In re Brand Name Prescription Drugs Antitrust Litig. 123 F.3d 599, 609 (7th Cir. 1997).* Here, the cost to defendants would be the cost of ceasing the practice; however, it is not clear what costs would be incurred by prohibiting unsolicited magazine subscription offers. Indeed, ceasing this practice might actually result in savings to defendants as a result of fewer mailings, less postage and reduced promotional materials.

      Even if one considers the value of the practice as the "cost" to defendants of complying with an injunction, defendants' valuation of the lawsuit as the price of subscriptions multiplied by the number of subscribers is not accurate. First, publishing a magazine and mailing it to subscriber entails costs. The value to defendants of lost subscription is the lost profit from one less magazine subscriber, of which there [*17] is no evidence before the Court. Second, it is not clear, nor does it seems necessarily likely that the subscriptions to the various magazines at issue would drop substantially if defendants were barred from making unsolicited subscriptions. Finally, profits from magazine subscriptions depend on a variety of factors, from the price of advertising to the number and demographics of subscribers. There is no indication how these factors would be altered and how defendants' profits would change if the plaintiff class were to prevail.

Although the Court is aware that the burden is on plaintiffs to demonstrate that the amount in controversy does not exceeds $5,000,000, the claims in this dispute are so difficult to value that any monetary valuation could only be wholly speculative. Accordingly, the Court finds that the amount in controversy, from either the perspective of the class members or the defendants, is less than the requisite $5,000,000.

**IV.**

**CONCLUSION**

For the reasons stated above, plaintiff's motion for remand is granted and the matter is ordered remanded.

Accordingly, the Court vacates the scheduling conference and the hearing on defendants' petition to compel [*18] arbitration and to stay action pending arbitration or, in the alternative, dismiss action, both set for July 25, 2005.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order on counsel for all parties in this action.

DATED: June 15, 2005.

ALICEMARIE H. STOTLER

UNITED STATES DISTRICT JUDGE

LEXSEE 2005 U.S. DIST. LEXIS 15324

**JAMES ADAMS, et al., PLAINTIFFS v. FEDERAL MATERIALS COMPANY, INC., et al., DEFENDANTS**

**CIVIL ACTION NO. 5:05CV-90-R**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY, PADUCAH DIVISION**

*2005 U.S. Dist. LEXIS 15324*

**July 28, 2005, Decided**

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] For James Adams, on behalf of himself and all persons similarly situated, Plaintiff: Alexander Barnett, The Mason Law Firm, PC, New York, NY; Daniel K. Bryson, Lewis & Roberts, Raleigh, NC; Gary W. Jackson, Lewis & Roberts, Raleigh, NC; Gary E. Mason, The Mason Law Firm, PC, Washington, DC; Goeffrey S. Proud, Lewis & Roberts, Raleigh, NC; John C. Whitfield, Whitfield & Cox PSC, Madisonville, KY; Michael J. Flannery, Carey & Danis LLC, St. Louis, MO

For Wallace York, on behalf of himself and all persons similarly situated, Plaintiff: Alexander Barnett, The Mason Law Firm, PC, New York, NY; Daniel K. Bryson, Lewis & Roberts, Raleigh, NC; Gary W. Jackson, Lewis & Roberts, Raleigh, NC; Gary E. Mason, The Mason Law Firm, PC, Washington, DC; Goeffrey S. Proud, Lewis & Roberts, Raleigh, NC; John C. Whitfield, Whitfield & Cox PSC, Madisonville, KY; Michael J. Flannery, Carey & Danis LLC, St. Louis, MO

For Doris York, on behalf of herself and all persons similarly situated, Plaintiff: Alexander Barnett, The Mason Law Firm, PC, New York, NY; Daniel K. Bryson, Lewis & Roberts, Raleigh, NC; Gary W. Jackson, Lewis & Roberts, Raleigh, NC; Gary E. Mason, The Mason Law Firm, PC, Washington, [*2] DC; Goeffrey S. Proud, Lewis & Roberts, Raleigh, NC; John C. Whitfield, Whitfield & Cox PSC, Madisonville, KY; Michael J. Flannery, Carey & Danis LLC, St. Louis, MO

For Dean Ray, on behalf of himself and all persons similarly situated, Plaintiff: Alexander Barnett, The Mason Law Firm, PC, New York, NY; Daniel K. Bryson, Lewis & Roberts, Raleigh, NC; Gary W. Jackson, Lewis & Roberts, Raleigh, NC; Gary E. Mason, The Mason Law Firm, PC, Washington, DC; Goeffrey S. Proud, Lewis & Roberts, Raleigh, NC; John C. Whitfield, Whitfield & Cox PSC, Madisonville, KY; Michael J. Flannery, Carey & Danis LLC, St. Louis, MO

For Anna Ray, on behalf of herself and all persons similarly situated, Plaintiff: Alexander Barnett, The Mason Law Firm, PC, New York, NY; Daniel K. Bryson, Lewis & Roberts, Raleigh, NC; Gary W. Jackson, Lewis & Roberts, Raleigh, NC; Gary E. Mason, The Mason Law Firm, PC, Washington, DC; Goeffrey S. Proud, Lewis & Roberts, Raleigh, NC; John C. Whitfield, Whitfield & Cox PSC, Madisonville, KY; Michael J. Flannery, Carey & Danis LLC, St. Louis, MO

For Federal Materials Company, Inc., a Kentucky Corporation, Defendant: David K. Taylor, Boult, Cummings, Conners & Berry [*3] PLC, Nashville, TN; Julie M. Burnstein, Boult, Cummings, Conners & Berry PLC, Nashville, TN; Marc A. Wells, Wells & Wetzel, Princeton, KY

For Hanson Aggregates Midwest, Inc., a division of Hanson Aggregates East, Inc., a division of Hanson Building Materials America, a subsidiary of Hanson PLC is a New Jersey Corporation, Defendant: David J. Forestner, Phears & Moldovan, Norcross, GA; H. Wayne Phears, Phears & Moldovan, Norcross, GA; John David Cole, Sr., Cole & Moore, Bowling Green, KY; John A. Gillan, Hanson Aggregates Midwest, Inc., Morrisville, NC; Joseph Coomes, Phears & Moldovan, Norcross, GA; Van F. Sims, Boswell Sims & Vasseur, PLLC, Paducah, KY

For Rogers Group, Inc., Defendant: J. Mark Grundy, Greenebaum Doll & McDonald PLLC, Louisville, KY; P. Blaine Grant, Greenebaum Doll & McDonald PLLC, Louisville, KY; William Edward Skees, Greenebaum Doll & McDonald PLLC, Louisville, KY

For Federal Materials Company, Inc., a Kentucky

2005 U.S. Dist. LEXIS 15324, *3

Corporation, ThirdParty Plaintiff: David K. Taylor, Boult, Cummings, Conners & Berry PLC, Nashville, TN; Julie M. Burnstein, Boult, Cummings, Conners & Berry PLC, Nashville, TN; Marc A. Wells, Wells & Wetzel, Princeton, KY

For Rogers [*4] Group, Inc., ThirdParty Defendant: J. Mark Grundy, Greenebaum Doll & McDonald PLLC, Louisville, KY; P. Blaine Grant, Greenebaum Doll & McDonald PLLC, Louisville, KY; William Edward Skees, Greenebaum Doll & McDonald PLLC, Louisville, KY

For Federal Materials Company, Inc., a Kentucky Corporation, Cross Claimant: David K. Taylor, Boult, Cummings, Conners & Berry PLC, Nashville, TN; Julie M. Burnstein, Boult, Cummings, Conners & Berry PLC, Nashville, TN

For Hanson Aggregates Midwest, Inc., a division of Hanson Aggregates East, Inc., a division of Hanson Building Materials America, a subsidiary of Hanson PLC is a New Jersey Corporation, Cross Defendant: David J. Forestner, Phears & Moldovan, Norcross, GA; H. Wayne Phears, Phears & Moldovan, Norcross, GA; Joseph Coomes, Phears & Moldovan, Norcross, GA; Van F. Sims, Boswell Sims & Vasseur, PLLC, Paducah, KY

**JUDGES:** Thomas B. Russell, Judge

**OPINIONBY:** Thomas B. Russell

**OPINION:**

### MEMORANDUM OPINION

This matter is before the Court on motion to remand (Dkt. # 22) of Plaintiffs James Adams, Anna Ray, Dean Ray, Doris York, and Wallace York ("Plaintiffs"). Defendant Federal Materials Company, Inc. ("Federal") responded (Dkt. # 23), as did Defendant [*5] Rogers Group, Inc. ("Rogers Group")(Dkt. # 24) and Defendant Hanson Aggregates Midwest, Inc. ("Hanson")(Dkt. # 26). Plaintiffs replied (Dkt. # 31), Hanson and Rogers Group sur-replied (Dkt. # 35), and this matter is now ripe for adjudication. For the reasons that follow, the Court **DENIES** Plaintiffs' motion to remand.

### BACKGROUND

On March 11, 2004, Plaintiffs filed this class action lawsuit against Defendants Federal and Hanson in Caldwell Circuit Court in Princeton, Kentucky. The complaint alleged that Federal operates a ready-mix concrete business and that it obtained at least some of the high-alkali reactive coarse aggregate used in that business from

Hanson, which owns a quarry in Princeton. Plaintiffs are owners of buildings in that area which contain cement poured by Federal containing aggregate purchased from Hanson, and their suit was brought on behalf of themselves and all others similarly situated. Plaintiffs allege further that the aggregate was "inherently defective and/or deficient and not suitable for its intended use" and that "Federal and Hanson failed to inform Plaintiffs and the members of the class of this fact." (Complaint, Exhibit A to Defendants' Notice [*6] of Removal, Dkt. # 1, at 2.) On this basis, Plaintiffs (or a subclass thereof) sued: Federal for breach of contract and breach of express warranties, both Federal and Hanson for breach of implied warranties, and all defendants for negligence, negligence *per se,* and breach of Kentucky's building code.

On February 18, 2005, the United States Congress passed the "Class Action Fairness Act of 2005," (CAFA) which is applicable "to any civil action commenced on or after [February 18, 2005]." PL 109-2, § 9, set out as a note to *28 U.S.C. A. § 1332*, 119 Stat. 4 (2005). On February 25, 2005, Federal filed a third-party complaint against Rogers Group based on Rogers Group's alleged acquisition of the Princeton Quarry from Hanson in December, 2000. Then, on April 1, 2005, Plaintiffs filed an amended complaint which added Rogers Group as a defendant in the case. On May 2, 2005, Rogers Group, joined by Federal and Hanson, removed the case to this Court based on (i) *28 U.S.C. § 1332(d)(2)*, alleging that the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and that the action "is a class action in which a class [*7] member is not a citizen of Kentucky, Tennessee or Indiana, the states of which Defendants are citizens" and (ii) *28 U.S.C. § 1332(d)(3)* and *(4)* "because during the previous three-year period preceding the filing of this class action, one or more other class actions have been filed asserting the same or similar claims on behalf of other persons against Defendant Hanson." (Defendant's Notice of Removal, Dkt. # 1, at 3-4).

Thereafter, on May 23, 2005, Plaintiffs filed a Motion to Remand arguing (i) that the CAFA does not apply to this action because it was commenced before February 18, 2005 and (ii) that more than two-thirds of the class members and the primary defendants (Federal and Hanson) are Kentucky citizens, meaning that this Court is required by *28 U.S.C. § 1332(d)(4)(B)* to decline to exercise jurisdiction otherwise granted to it under *§ 1332(d)(2)*.

### ANALYSIS

Plaintiffs' Motion to Remand requires the Court to interpret the newly-enacted CAFA to determine whether it has jurisdiction over this class action lawsuit or whether the jurisdictional statutes require remand to state courts

for adjudication. If CAFA applies, the Court [*8] must then determine whether its provisions permit Rogers Group to remove to federal court. If CAFA does *not* apply, Rogers Group's removal is clearly improper because complete diversity does not exist. The relevant facts are fairly simple: the Plaintiffs are all citizens of Kentucky, and the citizens of the class are largely, if not all, citizens of Kentucky. Defendants Federal and Hanson are also citizens of Kentucky, and made no effort to remove the case to federal court when it was first filed. Defendant Rogers Group, however, is an Indiana corporation with its principal place . of business in Tennessee and therefore diverse for jurisdictional purposes from Plaintiffs, meaning that minimal diversity exists.

**Applicability of the CAFA**

Plaintiffs argue that the case was "commenced" for CAFA purposes when they filed it in Caldwell Circuit Court in March, 2004 – well before the effective date of the CAFA. Defendants argue that, because the CAFA changes diversity requirements such that *any* diversity makes a case removable, the "commencement" provision of the CAFA should be interpreted to yield a different commencement date for a later–added defendant. n1 If the suit [*9] commenced as to the later–added defendant after February 18, 2005, Defendants argue, the later–added defendant's right to remove should be governed by the jurisdictional statutes as amended by the CAFA. n2 In this case, Defendant Rogers Group was brought into the case via a third–party complaint on February 25, 2005, and Plaintiffs amended their complaint to assert a claim against Rogers Group on April 1, 2005. On May 2, 2005, the thirtieth day after April 1 for purposes of the Federal Rules of Civil Procedure, Rogers Group filed its notice of removal in this court. n3

n1 Plaintiffs correctly noted that there is a presumption against a statute's being applied retroactively. *Landgraf v. USI Film Prods., Inc., 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).* However, Defendants' argument for removal is not actually based upon a retroactive application of the statute; rather, it seeks to construe the commencement date in such a way as to bring the case within the *prospective* reach of the CAFA.

n2 The Court notes that this appears to be somewhat different from the grounds for removal set forth in Defendants' Notice of Removal in which Defendants asserted that the action "is a class action in which a class member is not a citizen of Kentucky, Tennessee or Indiana, the states of which Defendants are citizens." Nevertheless, the argument as described in this paragraph has been developed in subsequent briefs responding to the Motion to Remand and Plaintiffs have had the opportunity adequately to respond to it.

[*10]

n3 *FRCP 6* dictates that, if the suit was commenced as to Rogers Group on April 1, 2005, the 30-day period would begin on April 2 and run for 30 calendar days therefrom, not including May 1 because it was a Sunday.

Due to the CAFA's recent enactment, there is a relative dearth of case law interpreting its provisions. Plaintiffs rely upon a recent decision from the Tenth Circuit in which that Court was faced with a related issue: whether an action commenced, for jurisdictional purposes, as of its filing in state court or its removal to federal court. *Pritchett v. Office Depot, Inc., 404 F.3d 1232 (10th Cir. 2005).* In that case, the defendants sought to invoke the CAFA in order to effect removal of a class action which qualified as diverse under the CAFA rules but not under the pre–CAFA regime. The court in *Pritchett* held that "removal to federal court does not 'commence' an action for the purposes of the Class Action Fairness Act of 2005." *Id. at 1238.*

Defendants, however, cite a Seventh Circuit decision which deals with [*11] the possibility of exceptions to this general rule of interpretation, although ultimately rejecting the exception proposed by the defendants in that case. *Knudsen v. Liberty Mut. Ins. Co., 411 F.3d 805, 2005 WL 1389059 (7th Cir. 2005).* In that case, the defendant "contend[ed] that any substantial change to the class definition 'commences' a new case." *Id.* at * 1. The *Knudsen* court, in rejecting a "significant change" test for determining whether or not a new case has commenced, drew a distinction between changes of the kind made by the plaintiffs in that case (changing the class definition) and changes that could in fact constitute a new case. It suggested that

a new claim for relief (a new 'cause of action' in state practice), the addition of a new defendant, or any other step sufficiently distinct that courts would treat it as independent for limitations purposes, could well commence a new piece of litigation for federal purposes even if it bears an old docket number for state purposes.

*Id. 411 F.3d 805, 2005 WL 1389059 at *2.* The *Knudsen* court further noted that "removal practice recognizes this

point: an amendment to the pleadings that adds a claim under [*12] federal law (where only state claims had been framed before), or adds a new defendant, opens a new window of removal." *Id.,* citing *28 U.S.C. § 1446(b)* and Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 14C *Federal Practice & Procedure* § 3732 at 311–348 (3d ed. 1998).

The general rule for statute of limitations purposes is that "a party brought into court by an amendment, and who has, for the first time, an opportunity to make defense to the action, has a right to treat the proceeding, as to him, as commenced by the process which brings him into court." *U.S. v. Martinez, 195 U.S. 469, 473, 25 S.Ct. 80, 81, 49 L.Ed. 282 (1904)*(citing *Miller v. M'Intyre, 31 U.S. 61, 6 Pet. 61, 8 L.Ed. 320 (1832))*. Further, in the removal context, the Sixth Circuit has held that "a later-served defendant has 30 days *from the date of service* to remove a case to federal district court, with the consent of the remaining defendants." *Brierly v. Alusuisse Flexible Packaging, Inc., 184 F.3d 527, 533 (6th Cir. 1999)*(emphasis supplied). Similarly, *Rule 15(c) of the Federal Rules of Civil Procedure* [*13] , which governs relation back of amendments to the date of the original pleading, allows relation back of a change of party only when: (i) "the claim or defense asserted in the amended pleading arose out of conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading;" (ii) the party to be brought in "has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits;" (iii) the party to be brought in "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party;" and (iv) the requirements in (ii) and (iii) were met within the applicable statutory limitations period.

As suggested by the *Knudsen* court, then, Plaintiffs' decision to add Rogers Group as a defendant presents precisely the situation in which it can and should be said that a new action has "commenced" for purposes of removal pursuant to the CAFA. This is both a logical extension of pre-existing removal practice and in keeping with the general intent of Congress in passing the CAFA – that is, extending the privilege of removal [*14] to federal district courts to defendants in large class actions on the basis of minimal diversity.

In so holding, the Court is mindful of our sister court's opinion in *Norman v. Sundance Spas, Inc.,* upon which Plaintiffs rely, in which Judge Heyburn construed the phrase "commencement of the action" in the opposite manner. *844 F.Supp. 355 (W.D. Ky. 1994).* In that case, obviously governed by the removal statutes pre–CAFA, a later-joined defendant argued that, when calculating the

one-year overall deadline for removal, "commencement of the action" should not be defined from the perspective of the plaintiff but from the perspective of each defendant as he is joined. n4 *Id. at 357.* The *Norman* court based its decision to construe the language from the plaintiff's perspective upon (i) the "plain meaning" of the language; (ii) the probable effect of a contrary reading on the overall statutory removal scheme; (iii) the consequences of application of the plain meaning for later-joined defendants; and (iv) the efficacy of a contrary reading in discouraging forum-shopping by plaintiffs. *Id. at 357–360.* Ultimately, it concluded, these factors [*15] supported a reading of the statute pursuant to which an action "commenced" when, and only when, the plaintiff initially filed the suit. *Id.*

> n4 The Court notes that the CAFA removed (for class actions to which it applies) the one-year deadline for removal, set forth in *28 U.S.C. § 1446(b).* that was at issue in *Norman. 28 U.S.C. § 1453(b).*

The Court does not disagree with the reasoning in *Norman,* but believes that, in light of the significant changes in the law of removal with respect to class actions enacted in the CAFA, it is distinguishable from the case at bar. The most significant difference with respect to the analysis of removal issues, of course, is the provision that eliminates the one-year deadline entirely, signaling Congress's belief that whatever benefit accrued from such a provision was outweighed by other considerations. Secondly, the CAFA removes the requirement that all defendants consent to removal. Finally, the *Norman* court saw its [*16] reading of the statute as being in accord with "a deliberate legislative trend to curtail federal suits between litigants of diverse citizenship." *Id. at 359.* Although such limits are by no means generally being reversed, in the particular situations addressed by the CAFA, it is clear that the opposite effect was intended; i.e., that an opening of federal courts to *more,* not fewer, litigants was the goal. The combination of these three considerations leads the Court to believe that Defendants' argument for a construction of the CAFA which defines the term "commenced" from the point of view of each defendant rather than the plaintiff is appropriate.

**Jurisdiction under the CAFA**

Plaintiffs argue, in the alternative, that even if the CAFA applies, jurisdiction in this court is inappropriate because, they argue, *28 U.S.C. § 1332(d)(4)(B)* requires that the Court decline to exercise jurisdiction. That provision requires remand where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State

in which the action was originally filed." Plaintiffs assert that [*17] "by definition, the proposed Class consists entirely of Kentucky citizens." (Plaintiffs' Motion to Remand, Dkt. # 22, at 7.) It is not clear to the Court that this is necessarily so – the class is defined in the Complaint as "all other similarly situated owners of structures in the Princeton, Kentucky area with cement poured by [Federal] containing aggregate from a quarry owned by [Hanson] and [Rogers Group]." It is likely, of course, that the owners of such buildings would be largely Kentucky citizens; in any case, it does not appear that Defendants contest this characterization of the class. Plaintiffs also assert that the primary Defendants are Kentucky citizens insofar as Federal and Hanson, both Kentucky corporations, are the primary defendants, whereas Rogers Group is a "secondary defendant."

In so arguing, Plaintiffs rely upon a distinction between "parties that are allegedly directly liable to the plaintiffs" and "those parties joined for purposes of contribution or indemnification." (Plaintiff's Reply, Dkt. # 31). Plaintiffs argue that, because Rogers Group initially entered the case as a third–party defendant to Federal's Third Party Complaint, it falls into the category [*18] of a "secondary defendant" because Federal brought it in for indemnity purposes.

As an initial matter, it is difficult to see how Hanson's liability, if any, to Plaintiffs could possibly be any different from Rogers Group's. Plaintiffs assert that "the fact that Plaintiffs amended their complaint to add [Rogers Group] as a defendant does not change [Rogers Group's] status as a secondary defendant." It may be that Rogers Group will ultimately be liable to Federal on the basis of a theory of indemnification; this does not, however, negate the fact

that Plaintiffs amended their complaint to assert Rogers Group's liability directly to Plaintiffs for its supply of allegedly defective aggregate to Federal. In fact, according to the Complaint, Count III includes claims by Plaintiffs directly against *all* defendants, including Rogers Group, on the basis of Plaintiffs' assertion that "the cement sold to Plaintiffs and the other members of the Direct Purchasers Subclass did not satisfy the *Defendants'* implied warranties that the cement *and/or the aggregate* would satisfy applicable standards, including, but not limited to Kentucky state specifications, ASTM standards, and the [*19] Kentucky Building Code." (Plaintiffs' Amended Complaint, Exhibit A to Dkt. # 1, P 56)(emphasis supplied). Not only, then, is Rogers Group's liability not distinguishable (except for by the date of its purchase of the quarry) from Hanson's liability, neither Rogers Group's nor Hanson's liability is limited to indemnification of Federal. In light of the lack of a principled distinction between the positions of Hanson and Rogers Group, and the fact that one count of Plaintiffs' complaint is directed against Hanson and Rogers explicitly, there is simply no basis for treating Rogers Group as a secondary defendant in this case. Therefore, *28 U.S.C. § 1332(d)(4)(B)* does not require that the Court decline to exercise jurisdiction.

**CONCLUSION**

For the reasons outlined above, the Court **DENIES** Plaintiff's motion to remand.

An appropriate order shall issue.

July 28, 2005

Thomas B. Russell, Judge

United States District Court