## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GERALDINE FAVALORO, for herself and on behalf of all others similarly situated, | ) ) ) | Case No. 05-11594 RCL |
| Plaintiff, | ) ) ) | Honorable Reginald C. Lindsay |
| vs. | ) ) ) | |
| PRESIDENT AND FELLOWS OF HARVARD COLLEGE, BAYVIEW CREMATORY, LLC, a New Hampshire Limited Liability Company LINDA STOKES, Trustee of the Dekes Realty Trust of 107 South Broadway, Lawrence, Massachusetts, and JOHN J. GENTILE | ) ) ) ) ) ) ) | |
| Defendants | ) ) | |

## OPPOSITION OF PRESIDENT AND FELLOWS OF
## HARVARD COLLEGE TO PLAINTIFF'S MOTION FOR REMAND

### I.    Introduction

Plaintiff Geraldine Favaloro purports to bring this action on behalf of a class of persons that includes both in-state and out-of-state class members against four defendants, one of which, Bayview Crematory, LLC, ("Bayview") is a citizen of New Hampshire. Plaintiff's claims against the defendants all stem from Bayview's operation of a crematory in New Hampshire.

Because plaintiff seeks certification of an interstate class action that satisfies the requirements of diversity jurisdiction set forth in the recently enacted Class Action Fairness Act of 2005 ("CAFA"), defendant, President and Fellows of Harvard College ("Harvard",) removed plaintiff's action filed in state court to this Court. All defendants have assented to the removal.

Plaintiff concedes that this action meets the minimal diversity requirements of CAFA. *See* Memorandum of Law in Support of Geraldine Favaloro's Motion for Remand ("Pl. Mem."), p. 8 ("Ms. Favaloro does not dispute the preliminary applicability of the provisions of §

1332(d)(2)(A) to this case.") Nevertheless, she filed a Motion for Remand based solely on the

narrow exceptions to federal jurisdiction contained in 28 U.S.C. § 1332(d)(4)(A) and 28 U.S.C. §

1332(d)(4)(B). *See* Motion for Remand, p. 2; Pl. Mem., p. 4. These exceptions are commonly

referred to as the Local Controversy Exception and the Home State Exception, respectively. *See*

S. Rep. No. 109-14 at 28 (2005).[1] As shown below, the plain language of these exceptions

prevents their application to this interstate class action. As a result, plaintiff's Motion for

Remand must be denied.[2]

## II.    Argument

### A.    Plaintiff Bears the Burden of Proving That This Court Should Decline Jurisdiction

As an initial matter, contrary to plaintiff's arguments, under CAFA, the party seeking

remand bears the burden of proof on the issue of whether the district court should decline

jurisdiction.

Congress enacted CAFA to ensure that, except in very narrow circumstances, interstate

class actions are resolved in federal, rather than state, court. As explained in the Report of the

Senate Judiciary Committee:

> . . . S. 5 makes it harder for plaintiffs' counsel to "game the system" by
> trying to defeat diversity jurisdiction, creates efficiencies in the judicial
> system by allowing overlapping and "copycat" cases to be consolidated in
> a single federal court, places the determination of more interstate class
> action lawsuits in the proper forum—the federal courts.

S. Rep. No. 109-14 at 5 (2005); *see also id.,* at 43 (CAFA is "intended to expand substantially

federal court jurisdiction over class actions. Its provisions should be read broadly with a strong

---

[1] Relevant pages of the Senate Report on the Class Action Fairness Act of 2005 are attached hereto as Exhibit A.
[2] Also pending before this Court are Harvard's Motion to Dismiss, and the separate motions to dismiss filed by defendants John Gentile, Bayview and Linda Stokes. Because Harvard is immune from liability under the Uniform Anatomical Gift Act., M.G.L. ch. 113 § 13(c), plaintiff's claims should be dismissed. Harvard is also entitled to dismissal because plaintiff has failed to state a claim against it for negligent or intentional infliction of emotional distress.

preference that interstate class actions should be heard in a federal court if properly removed by any defendant."); *see also, In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 80 n. 10 (D. Mass. 2005)("The Act essentially consolidates all class actions with multi-state constituencies in the federal courts."); *Adams v. Federal Materials Co., Inc.*, 2005 U.S. Dist. LEXIS 15324, *16 (W.D. Ky. July 28, 2005)(holding that "an opening of federal courts to *more,* not fewer, litigants was the goal")(emphasis in original).

This Court has noted that "[u]nder the Act, the burden of removal is on the party opposing removal to prove that remand is appropriate." *Natale v. Pfizer, Inc.*, 2005 WL 1793451, *4 (D. Mass. July 28, 2005)(Young, C.J.)(*citing Berry v. American Express Publ'g Corp.*, 2005 U.S. Dist. LEXIS 15514 (C.D. Cal. June 15, 2005)). Moreover, the legislative history of the Act plainly states that the party seeking to remand a class action to state court bears the burden of proving that the case should be remanded under one of the Act's stated exceptions.

> [I]t is the intent of the Committee that the named plaintiff(s) should bear the burden of demonstrating that a case should be remanded to state court (e.g. the burden of demonstrating more than two-thirds of the proposed class members are citizens of the forum state). Allocating the burden in this manner is important to ensure that the named plaintiffs will not be able to evade federal jurisdiction with vague class definitions or other efforts to obscure the citizenship of class members.

S. Rep. No. 109-14 at 43 (2005).

Plaintiff ignores the above quoted legislative history, the *Natale* case from the District of Massachusetts, and the weight of decisions from other district courts placing the burden of proof squarely on the party seeking remand. *See Harvey v. Blockbuster, Inc.*, 2005 U.S. Dist. LEXIS 16446, *6 (D.N.J. Aug. 8, 2005)("the party opposing removal under Section 1332(d) bears the initial burden of demonstrating that an action should be remanded"); *Waitt v. Merck & Co.*, 2005 WL 1799740, *2 (W.D. Wash. July 27, 2005)("it is plaintiff's responsibility to demonstrate that

removal from state court was improvident");[3] *Berry,* 2005 U.S. Dist. LEXIS 15514 at *11

("[T]he Committee Report expresses a clear intention to place the burden of removal on the party

opposing removal to demonstrate that an interstate class action should be remanded to state

court.").[4]

Congress' plainly stated intent and the only case addressing this issue in the District of

Massachusetts place the burden of proof firmly on plaintiff. She must prove all the elements

necessary to meet the criteria for the very narrow exceptions to federal jurisdiction on which she

relies. As discussed below, plaintiff has not met and cannot meet her burden.

**B.    The Class Action Fairness Act Requires This Court's Exercise of Jurisdiction**

   **1. This Case Satisfies the Minimal Diversity Requirement of the Class Action Fairness Act**

Under CAFA, the federal courts have jurisdiction over actions in which plaintiffs seek

class-wide relief in excess of $5,000,000 in the aggregate and where at least one member of the

proposed class of plaintiffs is a citizen of a different state from at least one defendant. *See* 28

U.S.C. § 1332(d)(2)(A). There is no dispute that this action satisfies these jurisdictional

requirements. The alleged class is not limited to citizens of Massachusetts, but includes citizens

of other states as well. Even if it were limited to Massachusetts citizens, however, defendant

Bayview is a citizen of New Hampshire, which is sufficient to satisfy CAFA's minimal diversity

requirement. Moreover, plaintiff does not contend that the aggregate amount of damages she

---

[3] The Western District of Washington is split regarding allocation of the burden of proof. In *In re Expedia Hotel Taxes and Fees Litigation,* 2005 WL 1706920 (W.D. Wash. Apr. 15, 2005), the court cited exclusively to pre-CAFA case law to place the burden of establishing federal jurisdiction on the defendant. In July 2005, the *Waitt* court carefully reviewed CAFA's legislative history and held that the plaintiff bore the burden of proving "the applicability of an exception" to federal jurisdiction. *Waitt,* 2005 WL 1799740 at *2.
[4] In light of the multiple decisions holding that the party seeking remand bears the burden, including the language of this Court in *Natale*, plaintiff's statement that "one Federal District Court has ruled that a party seeking remand under [the Local Controversy Exception] has the burden of demonstrating that the criteria for application of the exceptions to jurisdiction are met" is misleading at best.

seeks on behalf of the class is less than $5,000,000. Thus, under CAFA, this case is subject to federal jurisdiction unless an exception to the jurisdictional rule applies.

Plaintiff concedes that this case satisfies the minimal diversity requirements of CAFA. *See* 28 U.S.C. § 1332(d)(2)(A); Pl. Mem., p. 8. Plaintiff's only theories for her Motion for Remand are to invoke the Local Controversy and Home State Exceptions to federal jurisdiction. However, as explained below, these narrow jurisdictional exceptions are not available to plaintiff.

### 2.    The Local Controversy Exception to Federal Jurisdiction Does Not Apply

The Local Controversy Exception provides "a narrow exception that was carefully drafted to ensure that it does not become a jurisdictional loophole." S. Rep. No. 109-14 at 39 (2005); 151 Cong. Rec. H731 (daily ed. Feb. 17, 2005).[5] The purpose of the Local Controversy Exception "is to identify a truly local controversy – a controversy that uniquely affects a particular locality to the exclusion of all others." S. Rep. No. 109-14 at 39 (2005).

The plain language of the Local Controversy Exception leads ineluctably to the conclusion that this Court has jurisdiction over this matter. *See* 28 U.S.C. § 1332(d)(4)(A). "[W]hen the statute's language is plain, the sole function of the courts … is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6 (2000) (*quoting, United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241 (1989)); *see also, Chatman v. Gentle Dental Center of Waltham,* 973 F. Supp. 228, 238 (D. Mass. 1997)(Lindsay, J.)("If the words are a clear expression of congressional intent, the inquiry need go no further."). The plain language of the Local Controversy Exception prevents its application to the facts of this case and the legislative history firmly supports this interpretation.

---

[5] The House Congressional Record dated February 17, 2005 is attached hereto as Exhibit B.

To invoke the Local Controversy Exception, plaintiff must establish, *inter alia,* that:

> during the 3-year period preceding the filing of that class action, no other
> class action has been filed asserting the same *or similar* factual allegations
> *against any of the defendan*ts on behalf of the same *or other persons*

28 U.S.C. § 1332(d)(4)(A)(ii)(emphasis added).[6]  Because four similar putative class actions

have been filed against Bayview and Stokes within three months of this Complaint, this

requirement is fatal to plaintiff's motion. The cases are:

(1)    *Hunt, et al. v. Bayview Crematory, LLC, Derek A. Wallace, Linda Stokes,
       et al.,* C.A. No. 05-11140 RCL (D. Mass.)(filed June 1, 2005);

(2)    *Anzalone, et al. v. Bayview Crematory, LLC, Linda Stokes, Trustee of the
       Dekes Realty Trust of 107 South Broadway, et al.,* No. ESCV2005-00789
       (Massachusetts Superior Court Dept. Essex County)(filed May 11, 2005
       by counsel for plaintiff);

(3)    *Stinchomb, et al. v. Bayview Crematory, LLC, Linda Stokes, Trustee of the
       Dekes Realty Trust of 107 South Broadway,* C.A. No. 05337 (Maine
       Superior Court Cumberland County)(filed May 2005 by counsel for
       plaintiff);

(4)    *Ellis, et al. v. Bayview Crematory, LLC, Linda Stokes, Trustee of the
       Dekes Realty Trust of 107 South Broadway,* C.A. No. 05-C-350 (New
       Hampshire Superior Court Rockingham County)(Amended Writ of
       Summons filed June 2005 by counsel for plaintiff).

*See* Pl. Mem., Exhibits A-D. Each of the pending class actions involves allegations against

Bayview and Stokes related to the same alleged practices that form the core of plaintiff's claims

here.

---

[6] Pursuant to 28 U.S.C. § 1332(d)(4)(A)(i) plaintiff must also satisfy additional criteria for meeting the Local
Controversy Exception. One of those criteria is that greater than two-thirds of the members of the proposed class
are citizens of Massachusetts. In its Notice of Removal, Harvard did not contend that fewer than two-thirds of the
proposed class members are citizens of Massachusetts. Accordingly, the request in plaintiff's Memorandum that
plaintiff should be permitted to take discovery concerning the composition of the proposed class is irrelevant.
Because of the existence of the other class action lawsuits involving some of the same defendants and similar
allegations as the instant case, the Court has no need to consider the states of residence of the potential class of
plaintiffs. Such a request for discovery also conflicts with Congress' intent. As noted in the Senate Report, "it
would in most cases be improper for the named plaintiffs to request that the defendant produce a list of all class
members (or detailed information that would allow the construction of such a list), in many instances a massive,
burdensome undertaking that will not be necessary unless a proposed class is certified." S. Rep. No. 109-14 at 44
(2005).

BST99 1471591-8 044541 0032

The three additional class actions filed by counsel for plaintiff in this case – *Anzalone,*

*Stinchomb and Ellis* – each name Bayview and Stokes as defendants and contain virtually

identical allegations as those set forth at paragraphs 28-36 of plaintiff's Complaint in this action.

*See Anzalone* Complaint at ¶¶ 76-80, 119-123; *Stinchomb* Complaint at ¶¶ 30-34, 45-46; *Ellis*

Amended Writ at ¶¶ 52-56, 79-80.  All of these class actions make the following virtually

identical allegations against Bayview:

> Bayview's operation of its crematory was not only unauthorized and
> illegal, it was not in compliance with and did not observe the standards
> deemed ordinary and proper for the handling and cremation of decedents.
> Particularly, Bayview performed multiple cremations simultaneously; left
> bodies to decompose in non-refrigerated containers; generally failed to
> properly handle the bodies of decedents; and failed to prepare, keep and
> maintain accurate and proper records of its business.

Complaint ¶ 36; *Anzalone* Complaint ¶ 123; *Stinchomb* Complaint ¶ 46; *Ellis* Amended Writ ¶

80.  Additionally, all of the class actions make identical allegations against Stokes:

> At all times material hereto, Stokes was fully cognizant of the fact that
> Bayview was not a state authorized and approved crematory in the State of
> New Hampshire and had no official authority to conduct the business of
> cremating the remains of decedents under any rule regulation, statute, law
> or ordinance of any state or of the United States of America. ... Stokes
> permitted Bayview to improperly operate its unauthorized and unapproved
> business with full knowledge of the foreseeable consequences and likely
> effect on [named plaintiff] and the Class.

Complaint ¶ 32; *Anzalone* Complaint ¶ 80; *Stinchomb* Complaint ¶ 34; *Ellis* Amended Writ ¶ 56.

Similarly, *Hunt* is a putative class action pending in this Court, where Bayview and

Stokes are defendants.  The claims concern Bayview's alleged "mishandling, abuse and

desecration of the remains of loved ones of plaintiff and the class members she seeks to

represent." *Hunt* Complaint ¶ 1.

Given the core allegations against Bayview and Stokes in all five of these putative class

actions, the actions clearly present "similar factual allegations" within the meaning of CAFA.

Moreover, because CAFA only requires that the similar class action be filed "against any of the defendants," it is immaterial that Harvard and Gentile are not named defendants in the other cases. *See* 28 U.S.C. § 1332(d)(4)(A)(ii). Finally, because this provision of CAFA applies when there have been other class actions filed on behalf of the same "or other persons," differences in the class definitions do not affect federal jurisdiction.

The legislative history regarding the exception also supports this Court's exercise of jurisdiction. As stated by the Senate Judiciary Committee:

> The Committee also wishes to stress that the inquiry under this criterion should not be whether identical (or nearly identical) class actions have been filed. The inquiry is whether similar factual allegations have been made against the defendant in multiple class actions, regardless of whether the same causes of action were asserted or whether the purported plaintiff classes were the same (or even overlapped in significant respects).

S. Rep. No. 109-14 at 40-41 (2005); 151 Cong. Rec. H731 (daily ed. Feb. 17, 2005)("I would like to stress that the inquiry under this criterion should not be whether identical or nearly identical class actions have been filed."). Moreover, the Act's prior pending class action provisions are intended to "be interpreted liberally" to prevent plaintiffs from "plead[ing] around it with creative legal theories." S. Rep. No. 109-14 at 38 (2005).

There are four class actions that have been filed within the three years preceding the filing of plaintiff's Complaint that assert virtually identical facts against Bayview and Stokes. Accordingly, the Local Controversy Exception does not apply and this Court must exercise jurisdiction over this action.

### 3.    The Home State Exception to Federal Jurisdiction Does Not Apply

Plaintiff's reliance on the Home State Exception is also to no avail. The Home State Exception requires a district court to decline to exercise jurisdiction where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, *and the primary defendants,* are

- 8 -

citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B)

(emphasis added). Plaintiff alleges, and it is undisputed, that Bayview is a New Hampshire

Limited Liability Corporation. Because Bayview is not a citizen of Massachusetts, and is a

primary defendant, the Home State Exception does not apply.

Plaintiff appears to base her invocation of the Home State Exception on an argument that

Harvard, and not Bayview, should be considered *the* primary defendant. Pl. Mem., p. 12. Her

argument depends on the conclusion that, for purposes of CAFA's jurisdictional provisions, there

can be only one primary defendant. Such an interpretation cannot be reconciled with CAFA's

clear statutory language or its legislative history.

The Home State Exception refers to "the primary defendants" in the plural. Thus, if any

one of the primary defendants is out of state, the exception does not apply. *See* 28 U.S.C. §

1332(d)(4)(B); *see also, Adams,* 2005 U.S. Dist. LEXIS 15324 at *19 (holding that three named

defendants were all considered primary defendants for purposes of the Home State Exception).

The legislative history confirms that there can be more than one primary defendant:

> A purported class action should be deemed a case that falls outside Federal
> jurisdiction only if virtually all members of all proposed classes are
> residents of a single State of which *all primary defendants are also
> citizens.*

H. Rep. No. 108-144 at 37 (2003)[7](emphasis added).[8] *See also,*. Nelson, Scott L., *The Class

Action Fairness Act of 2005: An Analysis*, 2005 ABA Annual Meeting, Section of Litigation,

Aug. 4-7, 2005 at p. 6 (noting that a federal court may not exercise jurisdiction "if two-thirds of

---

[7] Relevant pages of the House Report on the Class Action Fairness Act of 2003 attached hereto as Exhibit C.
[8] Because Bayview is a primary defendant and is not a citizen of Massachusetts, the Home State Exception does not apply. It is therefore not necessary for the Court to determine whether Harvard or any of the other defendants are also primary defendants. However, because Harvard is immune from liability under the Uniform Anatomical Gift Act, and as a charitable organization is protected by the cap on liability set forth in Mass. Gen. Laws ch. 231, § 85K, it cannot be considered a primary defendant.

BST99 1471591-8 044541 0032

all class members are citizens of the forum state, and . . . all 'the primary defendants' are citizens of the same state . . .").[9]

Plaintiff cannot dispute that Bayview is a primary defendant for purposes of the Home State Exception. The Complaint asserts claims of negligence, negligent infliction of emotional distress and reckless and/or intentional infliction of emotional distress claims against Bayview and seeks to recover damages from Bayview, including an award of attorneys' fees for class counsel and class co-counsel. *See* Complaint ¶¶ 50-57, 80-99, D, F. Moreover, plaintiff's claims against each of the other defendants are derivative of Bayview's alleged misconduct, premised on allegations that Bayview was not licensed to operate as a crematory in the State of New Hampshire and mishandled bodies that were sent there. She includes in her description of "the core issues in this case" the "unauthorized and illegal operation of the Bayview Crematory, as well as its improper, offensive, and mortifying method of operation, together with its deficient and/or non-existent record-keeping practices . . . ." Complaint ¶ 42. Because substantial claims have been asserted against Bayview, and all of the claims against all of the defendants depend on a finding that Bayview engaged in improper practices, Bayview's status as a primary defendant is beyond dispute. Accordingly the Home State Exception does not apply.

### III.    Conclusion

For all of the above reasons, plaintiff's Motion for Remand should be denied.

---

[9] This article is attached as Exhibit D

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Harvard believes that oral argument may assist the Court and wishes to be heard. Harvard therefore requests oral argument on plaintiff's Motion for Remand.

Respectfully submitted,

PRESIDENT AND FELLOWS OF HARVARD COLLEGE

By:    /s/ Edward P. Leibensperger
      Edward P. Leibensperger (BBO #292620)
      Melissa L. Nott (BBO #654546)
      McDERMOTT WILL & EMERY LLP
      28 State Street
      Boston, Massachusetts 02109
      (617) 535-4000

      and

By:    /s/ Donald R. Frederico
      Donald R. Frederico (BBO #178220)
      GREENBERG TRAURIG, LLP
      One International Place
      Boston, Massachusetts 02110
      (617) 310-6000

Dated: September 13, 2005

# EXHIBIT A

# Calendar No. 1

| 109TH CONGRESS } | SENATE | { REPORT |
|---|---|---|
| *1st Session* } | | 109–14 |

## THE CLASS ACTION FAIRNESS ACT OF 2005

---

FEBRUARY 28, 2005 —Ordered to be printed

---

Mr. SPECTER, from the Committee on the Judiciary, submitted the
following

## R E P O R T

together with

## ADDITIONAL AND MINORITY VIEWS

[To accompany S  5]

[Including cost estimate of the Congressional Budget Office]

The Committee on the Judiciary, to whom was referred the bill
(S. 5) to amend title 28, United States Code, to allow the applica-
tion of the principles of federal diversity jurisdiction to interstate
class actions, having considered the same, reports favorably there-
on, without amendments, do pass.

### CONTENTS

|  |  | Page |
|---|---|---|
| I. | Legislative History | 1 |
| II. | Votes of the Committee | 3 |
| III. | Purposes | 4 |
| IV. | Background and Need for the Legislation | 6 |
| V. | How It Works: S  5 and Changes in Existing Law | 27 |
| VI. | Section-by-Section Analysis | 29 |
| VII. | Critics Contentions and Rebuttals | 51 |
| VIII. | Congressional Budget Office Cost Estimate | 76 |
| IX. | Regulatory Impact Statement | 78 |
| X. | Additional Views | 79 |
| XI. | Minority Views | 82 |
| XII. | Changes in Existing Law | 96 |

### I. LEGISLATIVE HISTORY

The Senate began consideration of the Class Action Fairness Act
in the 105th Congress when the Senate Judiciary Subcommittee on

39–010

4

Grassley
Kyl
DeWine
Sessions
Graham
Cornyn
Brownback
Coburn
Kohl
Feinstein
Schumer
Specter

Kennedy (Proxy)
Biden
Feingold
Durbin

### III. PURPOSES

By now, there should be little debate about the numerous problems with our current class action system. A mounting stack of evidence reviewed by the Committee demonstrates that abuses are undermining the rights of both plaintiffs and defendants. One key reason for these problems is that most class actions are currently adjudicated in state courts, where the governing rules are applied inconsistently (frequently in a manner that contravenes basic fairness and due process considerations) and where there is often inadequate supervision over litigation procedures and proposed settlements. The problem of inconsistent and inadequate judicial involvement is exacerbated in class action because the lawyers who bring the lawsuits effectively control the litigation; their clients—the injured class members—typically are not consulted about what they wish to achieve in the litigation and how they wish it to proceed. In short, the clients are marginally relevant at best. This stands in stark contrast to the designed purpose of class actions. Class actions were designed to provide a mechanism by which persons, whose injuries are not large enough to make pursuing their individual claims in the court system cost efficient, are able to bind together with persons suffering the same harm and seek redress for their injuries. As such, class actions are a valuable tool in our jurisprudential system. However, they are only beneficial when the class members are kept a priority throughout the process.

To make matters worse, current law enables lawyers to "game" the procedural rules and keep nationwide or multi-state class actions in state courts whose judges have reputations for readily certifying classes and approving settlements without regard to class member interests. In this environment, consumers are the big losers: In too many cases, state court judges are readily approving class action settlements that offer little—if any—meaningful recovery to the class members and simply transfer money from corporations to class counsel. Often, the settlement notices in such cases are so confusing that the plaintiff class members do not understand what—if anything—the settlement offers or how they can opt out of it. Multiple class action cases purporting to assert the same claims on behalf of the same people often proceed simultaneously in different state courts, causing judicial inefficiencies and promoting collusive activity. Finally, many state courts freely issue rulings in class action cases that have nationwide ramifications, sometimes overturning well-established laws and policies of other jurisdictions.

5

The Class Action Fairness Act of 2005 is a modest, balanced step that would address some of the most egregious problems in class action practice. The Committee emphasizes, however, that the Act is not intended to be a "panacea" that will correct all class action abuses.

The Act has three key components.

First, S. 5 includes a consumer class action bill of rights, with multiple components. One element prohibits federal courts from approving coupon or "net loss" settlements without making written findings that such settlements benefit the class members. Another element specifies the methods for calculating attorneys' fees in class settlements in which coupons constitute all or part of the relief afforded to claimants to ensure that such fee awards are consistent with the benefits afforded class members or the amount of real work that the class counsel have performed in connection with the litigation. Yet another element of the bill of rights provides an additional mechanism to safeguard plaintiff class members' rights by requiring that notice of class action settlements be sent to appropriate state and federal officials, so that they may voice concerns if they believe that the class action settlement is not in the best interest of their citizens.

Second, S. 5 corrects a flaw in the current diversity jurisdiction statute (28 U.S.C. § 1332) that prevents most interstate class actions from being adjudicated in federal courts. One of the primary historical reasons for diversity jurisdiction "is the reassurance of fairness and competence that a federal court can supply to an out-of-state defendant facing suit in state court."[1] Because interstate class actions typically involve more people, more money, and more interstate commerce ramifications than any other type of lawsuit, the Committee firmly believes that such cases properly belong in federal court. To that end, this bill (a) amends section 1332 to allow federal courts to hear more interstate class actions on a diversity jurisdiction basis, and (b) modifies the federal removal statutes to ensure that qualifying interstate class actions initially brought in state courts may be heard by federal courts if any of the defendants so desire. Thus, S. 5 makes it harder for plaintiffs' counsel to "game the system" by trying to defeat diversity jurisdiction, creates efficiencies in the judicial system by allowing overlapping and "copycat" cases to be consolidated in a single federal court, places the determination of more interstate class action lawsuits in the proper forum—the federal courts.

Third, S. 5 directs the Judicial Conference of the United States to conduct a review of class action settlements and attorneys' fees and to present Congress with recommendations for ensuring that attorneys' fees are determined in a fair and reasonable way. This provision will help address the problem of excessive attorneys' fees and will facilitate legislative oversight of the Judicial Conference's efforts in this area.

---

[1] *Davis v. Carl Cannon Chevrolet-Olds, Inc.* 182 F.3d 792, 797 (11th Cir. 1999)

28

more abusive class action settlement practices that came to the Committee's attention during hearings on class action abuses.

S. 5 would also amend the class action rules by requiring that class counsel serve appropriate state and federal officials with notice of a proposed settlement. This notice must occur no later than 10 days after the proposed settlement is filed in federal court.

The notice to the appropriate officials would include: (1) A copy of the complaint and amended complaints, unless those materials are available through the Internet and the notice includes directions on how to access the materials on-line; (2) notice of any scheduled judicial hearing in the class action; (3) proposed or final notification to class members of the right to be excluded from the class; (4) any proposed or final class action settlement; (5) any settlement made between class counsel and defendants' counsel; (6) any final judgment or notice of dismissal; and (7) the names of the class members who reside in each respective state and the proportionate claims of such members. The designated officials would then have at least 90 days to review the proposed settlement before the court gives final settlement approval.

Nothing in this section creates an affirmative duty for either the state or federal officials to take any action in response to a class action settlement. Moreover, nothing in this section expands the current authority of the state or federal officials.

### DIVERSITY JURISDICTION AND REMOVAL

S. 5 would amend the diversity jurisdiction and removal statutes applicable to larger interstate class actions by modifying 28 U.S.C. 1332 to incorporate the concept of balanced diversity. The bill grants the federal courts original jurisdiction to hear interstate class action cases where (a) any member of the proposed class is a citizen of a different state from any defendant; and (b) the amount in controversy exceeds $5 million (aggregating claims of all purported class members, exclusive of interest and costs).

The bill, however, includes several provisions ensuring that where appropriate, state courts can adjudicate certain class actions that have a truly local focus. The first is the "Home State" exception. Under this provision, if two-thirds or more of the class members are from the defendant's home state, the case would not be subject to federal jurisdiction. Conversely, class actions filed in the home state of the primary defendant would automatically be subject to federal jurisdiction (assuming the other prerequisites are met) if less than one-third of the proposed class members are citizens of that state. For cases brought in a defendant's home state in which between one-third and two-thirds of the class members were citizens of that state, federal jurisdiction would also exist; however, a federal judge would have the discretion, in the interests of justice, to decline to exercise that jurisdiction based on consideration of six factors designed to help assess whether the claims at issue are indeed local in nature.

In addition, S. 5 contains a "Local Controversy Exception" intended to ensure that state courts can continue to adjudicate truly local controversies in which some of the defendants are out-of-state corporations. In order to fall within the Local Controversy Exception, a class action must meet the following four criteria: (1) The class must be primarily local, meaning that more than two-thirds

29

of class members must be residents of the state in which the action was filed; (2) at least one real defendant (whose alleged conduct is central to the class's claims and from whom the class seeks significant relief) must also be local; (3) the "principal injuries" caused by the defendants" conduct must have occurred in the state where the suit was brought; and (4) no other similar class actions have been filed against any of the defendants (by the same or other proposed classes) in the preceding three years. If all of these four criteria are satisfied, the case will not be subject to federal jurisdiction under the bill.

S. 5 also excludes from its federal jurisdiction grant: (1) Class actions involving fewer than 100 plaintiff class members; (2) class actions in which the primary defendants are states, state officials, or other governmental entities against whom the district court may be foreclosed from ordering relief; (3) any securities class actions covered by the Securities Litigation Reform Act; and (4) corporate governance cases.

In order to enable more class actions to be removed to federal court, S. 5 would also create three new rules regarding the removal of class actions filed in state court. First, any defendant would be able to remove a class action to federal court without the consent of any other defendant. Second, any defendant would be able to remove a class action to federal court, even if that defendant is a citizen of the state in which the action was brought. And third, the current ban on removal of a class action to federal court after one year would be eliminated, although the current requirement that removal occur within 30 days of notice of grounds for removal would be retained.

## REPORT ON CLASS ACTION SETTLEMENTS

S. 5 would direct the Judicial Conference of the United States, with the assistance of the Federal Judicial Center and Administrative Office of the United States Courts, to prepare a report on class action settlements to be transmitted to the House and Senate Judiciary Committees. The report will include (1) recommendations on best practices to ensure the fairness of settlements for class members and to ensure the appropriateness of attorneys' fees and expenses, and (2) a discussion of any actions taken or planned by the Judicial Conference to implement the report recommendations.

## VI. SECTION-BY-SECTION ANALYSIS

*Section 1.*—Section 1 establishes the "Class Action Fairness Act of 2005" as the short title of the bill.

*Section 2.*—Section 2 sets forth findings and purposes. The Committee is concerned that there have been abuses of the class action device over the last decade that have hurt consumers, adversely affected interstate commerce, and undermined public respect for our judicial system. In particular, the Committee is concerned about class actions that do little to benefit—and sometimes actually harm—the class members who are supposed to be the beneficiaries of such cases, while enriching their lawyers. The Committee is also concerned that this problem is exacerbated by confusing notices that make it difficult for class members to understand and effectively exercise their rights. Taken together, the Committee believes

Once the appropriate state and federal officials have received notice under 28 U.S.C. 1715(b), they would then have at least 90 days to review the proposed settlement and decide what (if any) action to take to protect the interests of the plaintiff class. The state and federal officials are not required to take any affirmative action once they receive the proposed settlement according to new section 28 U.S.C. 1715(f); nor does this section expand their current authority in any respect.

Section 28 U.S.C. 1715(e)(1) instructs that in cases where the appropriate state and federal officials are not provided notice of the potential settlement, plaintiffs can choose not be bound by that settlement. The Committee wishes to make clear that this provision is intended to address situations in which defendants have simply defaulted on their notification obligations under this provision; it is not intended to allow settlement class members to walk away from an approved settlement based on a technical noncompliance (e.g., notification of the wrong person, failure of the official to receive notice that was sent), particularly where good faith efforts to comply occurred. In particular, the Committee wishes to note that where the appropriate officials received notification of a proposed settlement from at least one defendant, section 1715(e) should not be operative. New subsection 1715(e)(2) specifically states that a class member may not refuse to comply with a settlement if the notice was directed to the appropriate federal official and to the state attorney general or the primary licensing authority. This provision reflects the overall intent of section 1715 that a settlement should not be undermined because of a defendant's innocent error about which federal or state official should have received the required notice in a particular case.

The Committee believes that notifying appropriate state and federal officials of proposed class action settlements will provide a check against inequitable settlements in these cases. Notice will also deter collusion between class counsel and defendants to craft settlements that do not benefit the injured parties.

*Section 4.*—Section 4 amends 28 U.S.C. § 1332 to re-designate current subsection 1332(d) as subsection (e) and create a new subsection 1332(d).

The definitional provisions of Section 4—as reflected in the new section 1332(d)(1)—are self-explanatory. However, the Committee notes that as with the other elements of section 1332(d), the overall intent of these provisions is to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications. In that regard, the Committee further notes that the definition of "class action" is to be interpreted liberally. Its application should not be confined solely to lawsuits that are labeled "class actions" by the named plaintiff or the state rulemaking authority. Generally speaking, lawsuits that resemble a purported class action should be considered class actions for the purpose of applying these provisions.

The new subsection 1332(d)(2) gives the federal courts original jurisdiction over class action lawsuits in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and either (a) any member of a class of plaintiffs is a citizen of a different state from any defendant; (b) any member of a class of plaintiffs is a foreign state or a citizen or subject of

36

a foreign state and any defendant is a citizen of a state; or (c) any member of a class of plaintiffs is a citizen of a state and any defendant is a foreign state or a citizen or subject of a foreign state.

The Committee notes that for purposes of the citizenship element of this analysis, S. 5 does not alter current law regarding how the citizenship of a person is determined, including the provisions of 28 U.S.C. § 1332(c) specifying that "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

While the core concept of the bill is that class actions filed against defendants outside their home state are subject to federal jurisdiction if citizens from different states are on opposing sides and more than $5 million is at issue, new subsections 1332(d)(3) and (d)(4)(B) address the jurisdictional principles that will apply to class actions filed against a defendant in its home state, dividing such cases into three categories.

First, for cases in which two-thirds or more of the members of the plaintiff class and the primary defendants are citizens of the state in which the suit was filed, subsection 1332(d)(4)(B) states that federal jurisdiction will not be extended by S. 5. Such cases will remain in state courts under the terms of S. 5, since virtually all of the parties in such cases (both plaintiffs and defendants) would be local, and local interests therefore presumably would predominate.

Second, cases in which more than two-thirds of the members of the plaintiff class or one or more of the primary defendants are not citizens of the state in which the action was filed will be subject to federal jurisdiction, pursuant to the provisions of subsection 1332(d)(2). Federal courts should be able to hear such lawsuits because they have a predominantly interstate component—they affect people in many jurisdictions, and the laws of many states may be at issue.

Finally, there is a middle category of class actions in which more than one-third but fewer than two-thirds of the members of the plaintiff class and the primary defendants are all citizens of the state in which the action was filed. In such cases, the numbers alone may not always confirm that the litigation is more fairly characterized as predominantly interstate in character. New subsection 1332(d)(3) therefore gives federal courts discretion, in the "interests of justice," to decline to exercise jurisdiction over such cases based on the consideration of six factors:

• Whether the claims asserted are of "significant national or interstate interest".—If a case presents issues of national or interstate significance, that argues in favor of the matter being handled in federal court. For example, if a nationally distributed pharmaceutical product is alleged to have caused injurious side-effects and class actions on the subject are filed, those cases presumably should be heard in federal court because of the nationwide ramifications of the dispute and the probable interface with federal drug laws (even if claims are not directly filed under such laws). Under this factor, the federal court should inquire whether the case does present issues of national or interstate significance of this sort. If such issues are identified, that point favors the exercise of federal jurisdiction. If such issues are not identified and the matter ap-

37

pears to be more of a local (or intrastate) controversy, that point would tip in favor of allowing a state court to handle the matter.

• Whether the claims asserted will be governed by laws other than those of the forum state.—As noted previously, the Committee believes that one of the significant problems posed by multi-state state court class actions is the tendency of some state courts to be less than respectful of the laws of other jurisdictions, applying the law of one state to an entire nationwide controversy and thereby ignoring the distinct, varying state laws that should apply to various claims included in the class depending on where they arose. Under this factor, if the federal court determines that multiple state laws will apply to aspects of the class action, that determination would favor having the matter heard in the federal court system, which has a record of being more respectful of the laws of the various states in the class action context. Conversely, if the court concludes that the laws of the state in which the action was filed will apply to the entire controversy, that factor will favor allowing the state court to handle the matter.

• Whether the class action has been pleaded in a manner that seeks to avoid federal jurisdiction.—The purpose of this inquiry is to determine whether the plaintiffs have proposed a "natural" class—a class that encompasses all of the people and claims that one would expect to include in a class action, as opposed to proposing a class that appears to be gerrymandered solely to avoid federal jurisdiction by leaving out certain potential class members or claims. If the federal court concludes evasive pleading is involved, that factor would favor the exercise of federal jurisdiction. On the other hand, if the class definition and claims appear to follow a "natural" pattern, that consideration would favor allowing the matter to be handled by a state court.

• Whether there is a "distinct" nexus between: (a) the forum where the action was brought, and (b) the class members, the alleged harm, or the defendants.—This factor is intended to take account of a major concern that led to this legislation—the filing of lawsuits in out-of-the-way "magnet" state courts that have no real relationship to the controversy at hand. Thus, for example, if the majority of proposed class members and the defendant reside in the county where the suit is brought, the court might find distinct nexus exists. The key to this factor is the notion of there being a distinct nexus. If the selected forum's nexus to the controversy is shared by many other forums (e.g., some allegedly injured parties live in the locality, just as allegedly injured parties live in many other localities), the nexus is not distinct, and this factor would in that circumstance weigh heavily in favor of the exercise of federal jurisdiction over the matter.

• Whether the number of citizens of the forum state in the proposed plaintiff class(es) is substantially larger than the number of citizens from any other state, and the citizenship of the other members of the proposed class(es) is dispersed among a substantial number of states.—This factor is intended to look at the geographic distribution of class members in an effort to gauge the forum state's interest in handling the litigation. To be subject to this inquiry, between one-third and two-thirds of the class members are citizens of the state in which the class action was filed and all of the primary defendants are also citizens of that state. If all of the

38

other class members (that is, the class members who do not reside in the state where the action was filed) are widely dispersed among many other states (e.g., no other state accounted for more than five percent of the class members), that point would suggest that the interests of the forum state in litigating the controversy are pre-eminent (versus the interests of any other state). The Committee intends that such a conclusion would favor allowing the state court in which the action was originally filed to handle the litigation. However, if a court finds that the citizenship of the other class members is not widely dispersed, the opposite balance would be indicated. A federal forum would be favored in such a case because several states other than the forum state would have a strong interest in the controversy.

• Whether one or more class actions asserting the same or similar claims on behalf of the same or other persons have been filed in the last three years.—The purpose of this factor is efficiency and fairness: to determine whether a matter should be subject to federal jurisdiction so that it can be coordinated with other overlapping or parallel class actions. If other class actions on the same subject have been (or are likely to be) filed elsewhere, the Committee intends that this consideration would strongly favor the exercise of federal jurisdiction so that the claims of all proposed classes could be handled efficiently on a coordinated basis pursuant to the federal courts' multidistrict litigation process as established by 28 U.S.C. § 1407. Under that process, it is likely that all class actions filed on an issue will be handled by a single tribunal that will, in any event, be facing the challenge of interpreting the varying state laws and assessing how they should be applied to the purported class claims. Thus, allowing a case to remain in federal court so that it may become part of that coordinated multi district litigation proceeding makes good sense. On the other hand, if other courts are unlikely to have to undertake the burden of handling the class claims and the state court appears positioned to handle the case in a manner that is respectful of state law variations, that consideration would favor remand of the matter to state court.

It is the Committee's intention that this factor be interpreted liberally and that plaintiffs not be able to plead around it with creative legal theories. If a plaintiff brings a product liability suit alleging consumer fraud or unjust enrichment, and another suit was previously brought against some of the same defendants alleging negligence with regard to the same product, this factor would favor the exercise of federal jurisdiction over the later-filed claim.

The following examples are intended to be illustrative of how these factors would work.

• If a California state court class action were filed against a California pharmaceutical drug company on behalf of a proposed class of 60% California residents and 40% Nevada residents alleging harmful side effects attributable to a drug sold nationwide, it would make sense to leave the matter in federal court. The state laws that would apply in all of these cases would vary depending on where the drug was prescribed and purchased, such that allowing a single court to sort out such issues and handle the balance of the litigation would make sense both from an efficiency and federalism standpoint. These concerns would be even greater and the

39

arguments for asserting jurisdiction stronger if another class action alleging similar side-effects has been filed in the last three years.

• On the other hand, if a checking account fee disclosure class action were filed in a Nevada state court against a Nevada bank located in a border city and the class consisted of 65% Nevada residents and 35% California residents (who crossed the border to conduct transactions in the Nevada bank), it might make sense to allow that matter to proceed in state court. It is likely that Nevada banking law would apply to all claims (even those of the California residents), since all of the transactions occurred in Nevada. And there is less likelihood that multiple actions will be filed around the country on the same subject, so as to give rise to a coordinating federal multidistrict litigation proceeding. Thus, the federalism concerns would be substantially diminished.

In sum, the Committee intends that these factors would permit a federal court, in its discretion, to allow a class action asserting primarily local claims under local law for what is primarily a local group of claimants to proceed in state court, particularly where the action has not been pleaded manipulatively to avoid federal jurisdiction and the case is not likely to become an "orphan" that cannot be coordinated with similar class actions that are or, in the future, may be pending in federal court.

New subsection 1332(d)(4)(A) is the "Local Controversy Exception" to the foregoing provisions that otherwise expand federal diversity jurisdiction over class actions. This subsection requires that federal diversity jurisdiction over a class action under the foregoing provisions be declined if the proponents of that view clearly demonstrate that each and every of the following criteria are satisfied in the case at issue: (1) more than ⅔ of class members are citizens of forum state; (2) there is at least one in-state defendant from whom significant relief is sought by members of the class and whose conduct forms a significant basis of plaintiffs' claims; (3) the principal injuries resulting from the alleged conduct, or related conduct, of each defendant were incurred in the state where the action was originally filed; and (4) no other class action asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons has been filed during the preceding three years.

This provision is intended to respond to concerns that class actions with a truly local focus should not be moved to federal court under this legislation because state courts have a strong interest in adjudicating such disputes. At the same time, this is a narrow exception that was carefully drafted to ensure that it does not become a jurisdictional loophole. Thus, the Committee wishes to stress that in assessing whether each of these criteria is satisfied by a particular case, a federal court should bear in mind that the purpose of each of these criteria is to identify a truly local controversy—a controversy that uniquely affects a particular locality to the exclusion of all others.

• The first criterion—that greater than two-thirds of all class members in the aggregate are citizens of the State in which the action was originally filed—is a critical inquiry for determining whether the matter is a local controversy. The proponents of applying the exception thus must demonstrate that a supermajority of

40

the class members are local in the sense that they all reside in the forum state.

• Under the second criterion, there must be at least one real local defendant. By that, the Committee intends that the local defendant must be a primary focus of the plaintiffs' claims—not just a peripheral defendant. The defendant must be a target from whom significant relief is sought by the class (as opposed to just a subset of the class membership), as well as being a defendant whose alleged conduct forms a significant basis for the claims asserted by the class. For example, in a consumer fraud case alleging that an insurance company incorporated and based in another state misrepresented its policies, a local agent of the company named as a defendant presumably would not fit this criteria. He or she probably would have had contact with only some of the purported class members and thus would not be a person from whom significant relief would be sought by the plaintiff class viewed as a whole. Obviously, from a relief standpoint, the real demand of the full class in terms of seeking significant relief would be on the insurance company itself. Similarly, the agent presumably would not be a person whose alleged conduct forms a significant basis for the claims asserted. At most, that agent would have been an isolated role player in the alleged scheme implemented by the insurance company.[126] In this instance, the real target in this action (both in terms of relief and alleged conduct) is the insurance company, and if that company is not local, this criterion would not be met.

• The third criterion is that the principal injuries resulting from the actions of all the defendants must have occurred in the state where the suit was filed. By this criterion, the Committee means that all or almost all of the damage caused by defendants' alleged conduct occurred in the state where the suit was brought. The purpose of this criterion is to ensure that this exception is used only where the impact of the misconduct alleged by the purported class is localized. For example, a class action in which local residents seek compensation for property damage resulting from a chemical leak at a manufacturing plant in that community would fit this criterion, provided that the property damage was limited to residents in the vicinity of the plant. However, if the defendants engaged in conduct that could be alleged to have injured consumers throughout the country or broadly throughout several states, the case would not qualify for this exception, even if it were brought only as a single-state class action.

• The fourth and final criterion is that no other class action involving similar allegations has been filed against any of the defendants over the last three years on behalf of the same or other persons. In other words, if a controversy results in the filing of multiple class actions, it is a strong signal that those cases may not be of the variety that this exception is intended to address. As such, it is a test for assessing whether a controversy is localized. The Committee wishes to stress that another purpose of this cri-

---

[126] The Committee wishes to stress that the presence of conspiracy allegations should not alter this inquiry. For example, if in the hypothetical discussed here, the class alleges that the agent conspired with the insurance company with respect to the alleged scheme, it theoretically would expose the agent to potential liability to the entire class. But that would not change the relatively minor role that the agent played in the overall misconduct that is alleged and would not change the fact that the agent is not the real target of the litigation, which is the inquiry contemplated by this criterion.

41

terion is to ensure that overlapping or competing class actions or class actions making similar factual allegations against the same defendant that would benefit from coordination are not excluded from federal court by the Local Controversy Exception and thus placed beyond the coordinating authority of the Judicial Panel on Multidistrict Litigation. The Committee also wishes to stress that the inquiry under this criterion should not be whether identical (or nearly identical) class actions have been filed. The inquiry is whether similar factual allegations have been made against the defendant in multiple class actions, regardless of whether the same causes of actions were asserted or whether the purported plaintiff classes were the same (or even overlapped in significant respects).

The following two examples are intended to illustrate how the Committee intends this provision to work:

• A class action is brought in Florida state court against a Florida funeral home regarding alleged wrongdoing in burial practices. Nearly all the plaintiffs live in Florida (about 90 percent). The suit is brought against the cemetery, a Florida corporation, and an out-of-state parent company that was involved in supervising the cemetery. No other class action suits have been filed against the cemetery. This is precisely the type of case for which the Local Controversy Exception was developed. Although there is one out-of-state defendant (the parent company), the controversy is at its core a local one, and the Florida state court where it was brought has a strong interest in resolving the dispute. Thus, this case would remain in state court.

• A class action is brought in Florida against an out-of-state automobile manufacturer and a few in-state dealers, alleging that a certain vehicle model is unsafe because of an allegedly defective transmission. The vehicle model was sold in all fifty states but the class action is only brought on behalf of Floridians. This case would not fall within the Local Controversy Exception for two reasons. First, the automobile dealers are not defendants whose alleged conduct forms a significant basis of the claims or from whom significant relief is sought by the class. Even if the plaintiffs are truly seeking relief from the dealers, that relief is just small change compared to what they are seeking from the manufacturer. Moreover, the main allegation is that the vehicles were defective. In product liability cases, the conduct of a retailer such as an automobile dealer does not form a significant basis for the claims of the class members. Second, the case falls outside the Local Controversy Exception because the "principal injuries resulting from the alleged conduct,"—i.e., selling a vehicle with a defective transmission—were incurred in all fifty states. The fact that the suit was brought as a single-state class action does not mean that the principal injuries were local. In other words, this provision looks at where the principal injuries were suffered by everyone who was affected by the alleged conduct—not just where the proposed class members were injured. Thus, any defendant could remove this case to federal court.

New subsection 1332(d)(5)(A) and (B) specify, respectively, that S. 5 does not extend federal diversity jurisdiction to class actions in which (a) the primary defendants are states, state officials, or other governmental entities against whom the district court may be foreclosed from ordering relief ("state action" cases) or (b) the num-

42

ber of members of all proposed plaintiff classes in the aggregate is
fewer than 100 class members ("limited scope" cases). The purpose
of the "state action" cases provision is to prevent states, state offi-
cials, or other governmental entities from dodging legitimate claims
by removing class actions to federal court and then arguing that
the federal courts are constitutionally prohibited from granting the
requested relief. This provision will ensure that cases in which
such entities are the primary targets will be heard in state courts
that do not face the same constitutional impediments to granting
relief. The "limited scope" cases provision is intended to allow class
actions with relatively few claimants to remain in state courts.[127]

Federal courts should proceed cautiously before declining federal
jurisdiction under the subsection 1332(d)(5)(A) "state action" case
exception, and do so only when it is clear that the primary defend-
ants are indeed states, state officials, or other governmental enti-
ties against whom the "court may be foreclosed from ordering re-
lief." In making such a finding, courts should apply the guidance
regarding the term "primary defendants" discussed below. The
Committee wishes to stress that this provision should not become
a subterfuge for avoiding federal jurisdiction. In particular, plain-
tiffs should not be permitted to name state entities as defendants
as a mechanism to avoid federal jurisdiction over class actions that
largely target non-governmental defendants. Similarly, the sub-
section 1332(d)(5)(B) exception for "limited scope" cases (actions in
which there are fewer than 100 class members) should also be in-
terpreted narrowly. For example, in cases in which it is unclear
whether "the number of members of all proposed plaintiff classes
in the aggregate is less than 100," a federal court should err in
favor of exercising jurisdiction over the matter.

Pursuant to new subsection 1332(d)(6), the claims of the indi-
vidual class members in any class action shall be aggregated to de-
termine whether the amount in controversy exceeds the sum or
value of $5,000,000 (exclusive of interest and costs). The Committee
intends this subsection to be interpreted expansively. If a pur-
ported class action is removed pursuant to these jurisdictional pro-
visions, the named plaintiff(s) should bear the burden of dem-
onstrating that the removal was improvident (i.e., that the applica-
ble jurisdictional requirements are not satisfied). And if a federal
court is uncertain about whether "all matters in controversy" in a
purported class action "do not in the aggregate exceed the sum or
value of $5,000,000," the court should err in favor of exercising ju-
risdiction over the case.

By the same token, the Committee intends that a matter be sub-
ject to federal jurisdiction under this provision if the value of the
matter in litigation exceeds $5,000,000 either from the viewpoint of
the plaintiff or the viewpoint of the defendant, and regardless of
the type of relief sought (e.g., damages, injunctive relief, or declara-
tory relief). The Committee is aware that some courts, especially in
the class action context, have declined to exercise federal jurisdic-
tion over cases on the ground that the amount in controversy in
those cases exceeded the jurisdictional threshold only when as-

---

[127] Under federal law, a purported class action may involve as few as 21 class members. See,
e.g., *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (noting that class-
es encompassing fewer than 21 persons normally are not subject to class certification); *Tietz v.
Bowen*, 695 F. Supp. 441,445 (C.D. Cal. 1987) (certifying class with 27 class members).

43

sessed from the viewpoint of the defendant. For example, a class
action seeking an injunction that would require a defendant to re-
structure its business in some fundamental way might "cost" a de-
fendant well in excess of $75,000 under current law, but might
have substantially less "value" to a class of plaintiffs. Some courts
have held that jurisdiction does not exist in this scenario under
present law, because they have reasoned that assessing the amount
in controversy from the defendant's perspective was tantamount to
aggregating damages. Because S. 5 explicitly allows aggregation for
purposes of determining the amount in controversy in class actions,
that concern is no longer relevant.

The Committee also notes that in assessing the jurisdictional
amount in declaratory relief cases, the federal court should include
in its assessment the value of all relief and benefits that would
logically flow from the granting of the declaratory relief sought by
the claimants. For example, a declaration that a defendant's con-
duct is unlawful or fraudulent will carry certain consequences, such
as the need to cease and desist from that conduct, that will often
"cost" the defendant in excess of $5,000,000. Or a declaration that
a standardized product sold throughout the nation is "defective"
might well put a case over the $5,000,000 threshold, even if the
class complaint did not affirmatively seek a determination that
each class member was injured by the product.

Overall, new section 1332(d) is intended to expand substantially
federal court jurisdiction over class actions. Its provisions should be
read broadly, with a strong preference that interstate class actions
should be heard in a federal court if properly removed by any de-
fendant.

As noted above, it is the intent of the Committee that the named
plaintiff(s) should bear the burden of demonstrating that a case
should be remanded to state court (e.g., the burden of dem-
onstrating that more than two-thirds of the proposed class mem-
bers are citizens of the forum state). Allocating the burden in this
manner is important to ensure that the named plaintiffs will not
be able to evade federal jurisdiction with vague class definitions or
other efforts to obscure the citizenship of class members. The law
is clear that, once a federal court properly has jurisdiction over a
case removed to federal court, subsequent events generally cannot
"oust" the federal court of jurisdiction.[128] While plaintiffs undoubt-
edly possess some power to seek to avoid federal jurisdiction by de-
fining a proposed class in particular ways, they lose that power
once a defendant has properly removed a class action to federal
court.

For purposes of class actions that are subject to subsections
1332(d)(3) and (d)(5)(A), the Committee intends that "primary
defendants" be interpreted to reach those defendants who are the
real "targets" of the lawsuit—i.e., the defendants that would be ex-
pected to incur most of the loss if liability is found. Thus, the term
"primary defendants" should include any person who has substan-
tial exposure to significant portions of the proposed class in the ac-
tion, particularly any defendant that is allegedly liable to the vast
majority of the members of the proposed classes (as opposed to sim-
ply a few individual class members).

---

[128] See, e.g., *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938).

44

It is the Committee's intention with regard to each of these exceptions that the party opposing federal jurisdiction shall have the burden of demonstrating the applicability of an exemption. Thus, if a plaintiff seeks to have a class action remanded under section 1332(d)(4)(A) on the ground that the primary defendants and two-thirds or more of the class members are citizens of the home state, that plaintiff shall have the burden of demonstrating that these criteria are met by the lawsuit. Similarly, if a plaintiff seeks to have a purported class action remanded for lack of federal diversity jurisdiction under subsection 1332(d)(5)(B) ("limited scope" class actions), that plaintiff should have the burden of demonstrating that "all matters in controversy" do not "in the aggregate exceed the sum or value of $5,000,000, exclusive of interest and costs" or that "the number of all proposed plaintiff classes in the aggregate is less than 100."

The Committee understands that in assessing the various criteria established in all these new jurisdictional provisions, a federal court may have to engage in some fact-finding, not unlike what is necessitated by the existing jurisdictional statutes. The Committee further understands that in some instances, limited discovery may be necessary to make these determinations. However, the Committee cautions that these jurisdictional determinations should be made largely on the basis of readily available information. Allowing substantial, burdensome discovery on jurisdictional issues would be contrary to the intent of these provisions to encourage the exercise of federal jurisdiction over class actions. For example, in assessing the citizenship of the various members of a proposed class, it would in most cases be improper for the named plaintiffs to request that the defendant produce a list of all class members (or detailed information that would allow the construction of such a list), in many instances a massive, burdensome undertaking that will not be necessary unless a proposed class is certified. Less burdensome means (e.g., factual stipulations) should be used in creating a record upon which the jurisdictional determinations can be made.

New subsection 1332(d)(7) clarifies that the citizenship of members of proposed classes would be determined as of the date the action was filed. Thus, questions about whether two-thirds of the members of a proposed class were citizens of a particular state would be determined as of that date. The only exception is where the original complaint does not indicate the existence of federal jurisdiction and plaintiffs later serve paper (particularly an amended complaint) that creates such citizenship or makes it evident. Then, consistent with the approach in existing section 1446(b), the "snapshot" of class membership citizenship is taken as of the date on which that new paper is served.

New subsection 1332(d)(8) clarifies that the diversity jurisdiction provisions of this section shall apply to any class action before or after the entry of a class certification order by the court. The purpose of this provision is to confirm that both pre- and post-certification class actions shall be subject to the jurisdictional and removal provisions of S. 5. The Committee wishes to make clear that this provision is not intended to alter the deadlines for removal in the current Judicial Code or as are established by this legislation. This section is merely intended to indicate that the status of a

# EXHIBIT B

to reach those defendants who are the real "targets" of the lawsuit—i.e., the defendants that would be expected to incur most of the loss if liability is found. It is the Sponsors' intention with regard to each of these exceptions that the party opposing Federal jurisdiction shall have the burden of demonstrating the applicability of an exemption.

The Sponsors understand that in assessing the various criteria established in all of these new jurisdictional provisions, a Federal court may have to engage in some fact-finding, not unlike what is necessitated by the existing jurisdictional statutes. The Sponsors further understand that in some instances, limited discovery may be necessary to make these determinations. However, the Sponsors caution that these jurisdictional determinations should be made largely on the basis of readily available information. Allowing substantial, burdensome discovery on jurisdictional issues would be contrary to the intent of these provisions to encourage the exercise of Federal jurisdiction over class actions.

Under new subsection 1332(d)(9), the Act excludes from its jurisdictional provisions class actions that solely involve claims that relate to matters of corporate governance arising out of State law. The purpose of this provision is to avoid disturbing in any way the Federal vs. State court jurisdictional lines already drawn in the securities litigation class action context by the enactment of the Securities Litigation Uniform Standards Act of 1998. The Sponsors intend that this exemption be narrowly construed. By corporate governance litigation, the Sponsors mean only litigation based solely on (a) State statutory law regulating the organization and governance of business enterprises such as corporations, partnerships, limited partnerships, limited liability companies, limited liability partnerships, and business trusts; (b) State common law regarding the duties owed between and among owners and managers of business enterprises; and (c) the rights arising out of the terms of the securities issued by business enterprises.

New subsection 1332(d)(11) expands Federal jurisdiction over mass actions—suits that are brought on behalf of numerous named plaintiffs who claim that their suits present common questions of law or fact that should be tried together even though they do not seek class certification status. Mass action cases function very much like class actions and are subject to many of the same abuses. Under subsection 1332(d)(11), any civil action in which 100 or more named parties seek to try their claims for monetary relief together will be treated as a class action for jurisdictional purposes. The Sponsors wish to stress that a complaint in which 100 or more plaintiffs are named fits the criteria of seeking to try their claims together, because there would be no other apparent reason to include all of those claimants in a single action unless the intent was to secure a joint trial of the claims asserted in the action. The Sponsors also wish to stress that this provision is intended to mean a situation in which it is proposed or ordered that claims be tried jointly in any respect—that is, if only certain issues are to be tried jointly and the case otherwise meets the criteria set forth in this provision, the matter will be subject to Federal jurisdiction. However, it also should be noted that a mass action would not be eligible for Federal jurisdiction under this provision if any of several cri-

teria are satisfied by the action, including (1) when all the claims asserted in the action arise out of an event or occurrence in the State where, the suit is filed and the injuries were incurred in that State and contiguous States (e.g., a toxic spill case) and (2) when the claims are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such an action.

The first exception would apply only to a truly local single event with no substantial interstate effects. The purpose of this exception is to allow cases involving environmental torts such as a chemical spill to remain in State court if both the event and the injuries were truly local, even though there are some out-of-State defendants. By contrast, this exception would not apply to a product liability or insurance case. The second exception also addresses a very narrow situation, specifically a law like the California Unfair Competition Law, which allows individuals to bring a suit on behalf of the general public.

Subsection 1332(d)(11)(B)(i) includes a statement indicating that jurisdiction exists only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under section 1332(a). It is the Sponsors' intent that although remands of individual claims not meeting the section 1332 jurisdictional amount requirement may take the action below the 100-plaintiff jurisdictional threshold or the $5 million jurisdictional amount requirement, those subsequent remands should not extinguish Federal diversity jurisdiction over the action as long as the mass action met the various jurisdictional requirements at the time of removal.

Under subsection 1332(d)(11)(C), a mass action removed to a Federal court under this provision may not be transferred to another Federal court under the MDL statute (28 U.S.C. § 1407) unless a majority of the plaintiffs request such a transfer. The Sponsors wish to make clear that this restriction on MDL transfers applies only to mass actions as defined in subsection 1332(d)(11); the legislation does not more broadly restrict the authority of the Judicial Panel on Multidistrict Litigation to transfer class actions removed to Federal court under this legislation. Under subsection 1332(d)(11)(D), the statute of limitations for any claims that are part of a mass action will be tolled while the mass action is pending in Federal court.

The removal provisions in Section 5 of the legislation are self-explanatory and attempt to put an end to the type of gaming engaged in by plaintiffs' lawyers to keep cases in State court. They should thus be interpreted with this intent in mind. In addition, new subsection 1453(c) provides that an order remanding a class action to State court is reviewable by appeal at the discretion of the reviewing court. The Sponsors note that the current prohibition on remand order review was added to section 1447 after the Federal diversity jurisdictional statutes and the related removal statutes had been subject to appellate review for many years and were the subject of considerable appellate level interpretive law. The Sponsors believe it is important to create a similar body of clear and consistent guidance for district courts that will be interpreting this legislation and would particularly encourage appellate courts to review cases that raise jurisdictional issues likely to arise in future cases.

Thank you, Madam Speaker, for allowing me to provide an explanation of these jurisdictional provisions.

Madam Speaker. for purposes of engaging in a colloquy with the two gentlemen from Virginia (Mr. GOODLATTE) and (Mr. BOUCHER), I yield to the gentleman from Virginia (Mr. GOODLATTE).

Mr. GOODLATTE. Madam Speaker. I thank the chairman very much for yielding

Madam Speaker, the general principles behind S. 5 and many of the provisions in the legislation are similar to those in H.R. 1115, which the House passed in 2003, and S. 274, which was voted out of committee in the Senate in 2003 but did not ultimately pass

To the extent these provisions are the same, the House Committee on the Judiciary's report on H.R. 1115 and the Senate Committee on the Judiciary's report on S. 274 reflect the intent and understanding of the committee and the sponsors as to the import of these provisions. However, there are several new provisions in S. 5 regarding Federal jurisdiction over class actions that were not included in prior versions of the legislation

I would like to ask my colleague, the chairman of the Committee on the Judiciary, to provide an overview of the jurisdictional provisions in the legislation. and I would like to discuss the various exceptions included in the legislation and the intent of the sponsors with regard to these exceptions.

Mr. SENSENBRENNER. Madam Speaker, reclaiming my time, I appreciate the gentleman's question

Section 4 of the bill gives Federal courts jurisdiction over class action lawsuits in which the matter in controversy exceeds the sum or value of $5 million, excluding interests and costs and at least one proposed class member and one defendant are citizens of different States or countries.

For purposes of the citizenship element of this analysis, S. 5 does not alter current law Thus, a corporation will continue to be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business However, the bill provides that for purposes of this new section. and section 1453 of title 28, an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it organized This provision is added to ensure that unincorporated associations receive the same treatment as corporations for purposes of diversity jurisdiction. New subsection 1332(d)(10) corrects this anomaly.

Mr BOUCHER Madam Speaker, will the gentleman yield?

Mr SENSENBRENNER I yield to the gentleman from Virginia.

Mr. BOUCHER Madam Speaker, I thank the gentleman for yielding

What about the amount-in-controversy component. the $5 million? Under current law, some Federal courts have determined the value for

requests for injunctive relief by considering the value to each individual plaintiff. Since that value is usually less than $75,000, these courts have kept such cases in State court. This is sometimes known as the plaintiff's viewpoint, defendant's viewpoint problem. Would the Chairman explain how the bill resolves this challenge?

Mr. SENSENBRENNER. Madam Speaker, reclaiming my time, under new subsection 1332(d)(6), the claims of the individual class members in any class action shall be aggregated to determine whether the amount in controversy exceeds the sum or value of $5 million. The sponsors intend this subsection to be interpreted broadly, and if a purported class action is removed under this provision, the plaintiff shall bear the burden of demonstrating that the $5 million threshold is not satisfied. By the same token, if a Federal court is uncertain about whether a case puts $5 million or more in controversy, the court should favor exercising jurisdiction over the case

This principle applies to class actions seeking injunctive relief as well. The sponsors intend that a matter be subject to Federal jurisdiction under this provision if the value of the matter in litigation exceeds the $5 million, either from the viewpoint of the plaintiff or the viewpoint of the defendant, regardless of the type of relief sought, such as damages, injunctive relief or declaratory relief

The sponsors are aware that some courts, especially in the class action context, have declined to exercise Federal jurisdiction over cases on the grounds that the amount in controversy in those cases exceeded the jurisdictional threshold only when assessed from the viewpoint of the defendant.

For example, a class action seeking injunctive relief that would require a defendant to restructure its business in some fundamental way might cost a defendant well in excess of $75,000 under current law, but might have substantially less value to each plaintiff or even to the class of plaintiffs as a whole. Because S. 5 explicitly allows aggregation for the purposes of determining the amount of controversy in class actions, that concern is no longer relevant

To the extent plaintiffs seek to avoid this rule by framing their cases as individual actions for injunctive relief, most Federal courts have properly held that in an individual case the cost of injunctive relief is viewed from the defendant's perspective. This legislation extends that principle to class actions as well

The same approach would apply in a case involving declaratory relief. In determining how much money a declaratory relief case puts in controversy, the Federal court should include in its assessment the value of all relief and benefits that would logically flow from the granting of the declaratory relief sought by the plaintiffs

For example, a declaration that a defendant's conduct is unlawful or fraudulent will carry certain consequences, such as the need to cease and desist from that conduct that will often cost the defendant in excess of $5 million; or a declaration that a standardized product sold throughout the Nation is defective might well put a case over the $5 million threshold, even if the class complaint did not affirmatively seek a determination that each class member was injured by the product

The bottom line is that new section 1332(d) is intended to substantially expand Federal court jurisdiction over class actions, not to create loopholes. This provision should be read broadly, with a strong preference that interstate class actions should be heard in a Federal court if properly removed by a defendant.

Mr. GOODLATTE. Madam Speaker, will the gentleman yield?

Mr. SENSENBRENNER. I yield to the gentleman from Virginia

Mr. GOODLATTE. Madam Speaker, I would also like to discuss the home State exception in the legislation

New subsections 1332(d)(3) and (d)(4)(B) address the jurisdictional principles that will apply to class actions filed against the defendant in its home State, dividing such cases into three categories.

First, for cases in which two-thirds or more of the members of the plaintiff class and the primary defendants are citizens of the State in which the suit was filed, section 1332(d)(4)(B) states that Federal jurisdiction will not be extended by S. 5. Such cases will remain in State courts

Second, cases in which more than two-thirds of the members of the plaintiff class are not citizens of the State in which the action was filed will be subject to Federal jurisdiction. Federal courts should be able to hear such lawsuits because they have a predominantly interstate component. They affect people in many jurisdictions, and the laws of many States will be at issue

Finally, there is a middle category of class actions in which more than one-third, but fewer than two-thirds, of the members of the plaintiff class and the primary defendants are all citizens of the State in which the action was filed. In such cases, the numbers alone may not always confirm that the litigation is more fairly characterized as predominantly interstate in character. New subsection 1332(d)(3), therefore, gives Federal courts discretion in the interests of justice to decline to exercise jurisdiction over such cases based on the consideration of five factors.

☐ 1045

Madam Speaker, I would ask the chairman to explain these factors

Mr. SENSENBRENNER. Reclaiming my time, Madam Speaker, I am pleased to answer the gentleman.

The first factor is whether the claims asserted are of significant national or

interstate interest. Under this factor, if a case presents issues of national or interstate significance that argues in favor of the matter being handled in Federal Court, for example, if a class action alleges a nationally distributed pharmaceutical product caused side effects, those cases presumably should be heard in Federal court because of the nationwide ramifications of the dispute and the potential interface with Federal drug laws

Under this factor, the Federal court should inquire whether the case does present issues of national or interstate significance of this sort. If such issues are identified, that point favors the exercise of the Federal jurisdiction

The second factor is whether the claims asserted will be governed by laws other than those of the forum State. The sponsors believe that one of the significant problems posed by multistate class actions in State court is the tendency of some State courts to be less than respectful of the laws of other jurisdictions, applying the law of one State to an entire nationwide controversy and thereby ignoring the distinct and varying State laws that should apply to various claims included in the class, depending upon where they arose

Under this factor, if the Federal court determines that multiple State laws will apply to aspects of the class action, the determination would favor having the matter handled in the Federal court system. which has a record of being more respectful of the laws of various States in the class action controversy. Conversely, if the court concludes that the laws of the State to which the action was filed will apply to the entire controversy, that factor will favor keeping the case in State court

The third factor is whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction. The purpose of this inquiry is to determine whether the plaintiffs have proposed a natural class, a class that encompasses all the people and claims that one would expect to include in a class action, as opposed to proposing a class that appears to be gerrymandered solely to avoid Federal jurisdiction by leaving out certain potential class members or claims.

If the Federal court concludes that evasive pleading is involved, that factor would favor the exercise of Federal jurisdiction. On the other hand, if the class definition and claims appear to follow a natural pattern, that consideration would favor allowing the matter to be handled by a State court.

The fourth factor is whether there is a distinct nexus between. A. the forum where the action was brought. and, B. the class members, the alleged harm or the defendants. This factor is intended to take account of a major concern that led to this legislation, the filing of lawsuits in the out-of-the-way magnet State courts that have no real relationship to the controversy at hand.

Thus, if a majority of the proposed class action members and the defendants reside in the county where the suit is brought, the court might find a distinct nexus exists. The key to this factor is the notion of there being a distinct nexus. If the allegedly injured parties live in many other localities, the nexus is not distinct, and this factor would weigh heavily in favor of the exercise of Federal jurisdiction over the matter.

The fifth factor is whether the number of citizens in the forum State in the proposed plaintiff class is substantially larger than the number of citizens from any other State, and the citizens of the other members of the proposed class is dispersed among a substantial number of States.

This factor is intended to look at the geographic distribution of class members in an effort to determine the forum State's interest in handling the litigation. If all of the out-of-State class members are widely dispersed among many other States, that point would suggest that the interest of the forum State in litigating the controversy are preeminent.

The sponsors intend that such a conclusion would favor allowing the State court in which the action was originally filed to handle the litigation. However, if a court finds that the citizenship of the other class members is not widely dispersed, then a Federal forum would be more appropriate because several States other than the forum State would have a strong interest in the controversy.

The final factor is whether one or more class actions asserting the same or similar claims on behalf of the same or other persons have been filed in the last 3 years. The purpose of this factor is to determine whether a matter should be subject to Federal jurisdiction so that it can be coordinated with other overlapping or parallel class actions.

If the other class actions on the same subject have been or are likely to be filed elsewhere, the sponsors intend that this consideration would strongly favor the exercise of Federal jurisdiction. It is the sponsors' intention that this factor be broadly interpreted and that plaintiffs not be able to plead around it with creative legal theories.

If a plaintiff brings a product liability suit alleging consumer fraud or unjust enrichment, and another suit was previously brought against some of the same defendants alleging negligence with regard to the same product, this factor would favor the exercise of Federal jurisdiction over the later-filed claim.

Madam Speaker, I now yield to my colleague, the gentleman from Virginia (Mr. BOUCHER), to provide some examples that illustrate how these six factors would work in litigation.

Mr. BOUCHER. Madam Speaker, I thank the gentleman for yielding to me, and I will be pleased to provide two examples.

Suppose that a California State court class action were filed against a California pharmaceutical drug company on behalf of a proposed class of 60 percent California residents and 40 percent Nevada residents alleging harmful side effects attributed to a drug sold nationwide.

In such a case, it would make sense to leave the matter in Federal court. After all, the State laws that would apply in all of these cases would vary, depending on where the drug was prescribed and purchased. As a result, allowing a single Federal court to sort out such issues and handle the balance of the litigation would make sense both from added efficiency and a federalism standpoint.

Now, suppose, in a second example, a checking account fee disclosure class action were filed in a Nevada State court against a Nevada bank located in a border city, and the class consisted of 65 percent Nevada residents and 35 percent California residents who crossed the border in order to conduct transactions in the Nevada bank.

In this hypothetical, it might make sense to allow that matter to proceed in State court. It is likely that Nevada banking law would apply to all of these claims, even those of the California residents, since all of the transactions occurred in the State of Nevada. There is also less likelihood that multiple actions will be filed around the country on the same subject so as to give rise to a coordinating Federal multidistrict litigation proceeding.

Mr. GOODLATTE. Madam Speaker, if the chairman would continue to yield

Mr. SENSENBRENNER. I yield to the other gentleman from Virginia (Mr. GOODLATTE).

Mr. GOODLATTE. I thank the chairman for yielding to me. I think those examples really reflect the intent of the legislation.

Madam Speaker, the legislation also includes a local controversy exception which is intended to ensure that truly local class actions can remain in State court under the legislation. Under this provision, Federal courts are instructed not to exercise jurisdiction over cases that meet all of the following four criteria:

First, more than two-thirds of the class members must be the citizens of the State where the suit is brought; second, there must be at least one in-State defendant from whom significant relief is sought by members of the class and whose conduct forms a significant basis of plaintiffs' claims; third, the principal injuries resulting from the alleged conduct or related conduct of each defendant must have occurred in the State where the action was originally filed; and, fourth, no other class action has been filed during the preceding 3 years asserting the same or similar factual allegations against any of the defendants.

Madam Speaker, I would ask that the chairman elaborate on these criteria.

Mr. SENSENBRENNER. Madam Speaker, reclaiming my time, yes, this provision is intended to respond to concerns that class actions with a truly local focus should not be moved to Federal court under this legislation because State courts have a strong interest in adjudicating such disputes. At the same time, this is a narrow exception that was carefully drafted to ensure that it does not become a jurisdictional loophole. Thus, each of the criteria is intended to identify a truly local class action.

First, there must be a primarily local class. Secondly, there must be at least one real local defendant. And by that the drafters meant that the local defendant must be a primary focus of the plaintiffs' claims, not just a retailer or other peripheral defendant. The defendant must be a target from whom significant relief is sought by the class, as opposed to just a subset of the class membership, as well as being a defendant whose alleged conduct forms a significant basis for the claims asserted by the class.

For example, in a consumer fraud case, alleging that an insurance company incorporated and based in another State misrepresented its policies, the local agent of the company named as a defendant presumably would not fit this criteria. He or she probably would have had contact with only some of the purported class members and, thus, would not be a person from whom significant relief would be sought by the plaintiff class viewed as a whole. And, from a relief standpoint, the real demand of the full class in terms of seeking significant relief would be on the insurance company itself.

Third, the principal injuries resulting from the actions of all the defendants must have occurred in the State where the suit was filed. This criterion means that all or almost all of the damage caused by the defendants' conduct occurred in the State where the suit was brought. If defendants engaged in conduct that allegedly injured consumers throughout the country, the case would not qualify for the local controversy exception, even if it was only brought as a single State class action.

And, fourth, no other class action involving similar allegations has been filed against any of the defendants over the last 3 years. In other words, if we are talking about a situation that results in multiple class actions, those are not the types of cases that this exception is intended to address. I would like to stress that the inquiry under this criterion should not be whether identical or nearly identical class actions have been filed. Rather, the inquiry is whether similar factual allegations have been made against the defendant in multiple class actions, regardless of whether the same causes of action were asserted or whether the proposed plaintiff classes in the prior case was the same

Madam Speaker, I yield to the gentleman from Virginia (Mr. GOODLATTE).

Mr. GOODLATTE. I thank the chairman for yielding once again.

Madam Speaker, in this regard I think it is important to note that the exceptions in this legislation are just that, exceptions, and they should not be interpreted in ways that turn them into loopholes For example, the legislation excludes actions against States. Obviously, this does not mean that plaintiffs can simply name a State in every consumer class action and stay out of Federal court To the contrary, Federal courts should proceed cautiously before declining Federal jurisdiction under the subsection 1332(d)(5)(a) "state action" case exception, and do so only when it is clear that the primary defendants are indeed States, State officials, or other governmental entities against whom the court may be foreclosed from ordering relief.

The sponsors intend that primary defendants be intended to reach those defendants who are the real targets of the lawsuit, i e the defendants who would be expected to incur most of the loss if liability is found. Thus, the term "primary defendant" should include any person who has substantial exposure to significant portions of the proposed class in the action, particularly any defendant that is allegedly liable to the vast majority of the members of the proposed classes, as opposed to simply a few individual class members

It is the sponsors' intention with regard to each of these exceptions that the party opposing Federal jurisdiction shall have the burden of demonstrating the applicability of an exemption Thus, if a plaintiff seeks to have a class action remanded on the ground that the primary defendants and two-thirds or more of the class members are citizens of the home State, that plaintiff has the burden of demonstrating that these criteria are met

Similarly. if a plaintiff seeks to have a purported class action remanded because a primary defendant is a State, that plaintiff should have the burden of demonstrating that the exception should apply.

Mr. BOUCHER. Madam Speaker, if the gentleman from Wisconsin will yield once again.

Mr. SENSENBRENNER. I yield to the gentleman from Virginia (Mr BOUCHER).

Mr. BOUCHER. Madam Speaker. I thank the gentleman for yielding

The principles that have just been enumerated apply to another provision that I would like to discuss, the mass action provision Under this provision, defendants will be able to remove mass actions to Federal court under the same circumstances in which they will be able to remove class actions

□ 1100

However, a Federal court would only exercise jurisdiction over these claims that meet the $75,000 minimum In addition, a mass action cannot be removed to Federal court if it falls under one of the following four categories: number one, if all of the claims arise out of an event or occurrence that happened in the State where the action was filed and that resulted in injuries only in that State or in contiguous States;

number two, if it is the defendants who seek to have the claims joined for trial;

number three, if the claims are asserted on behalf of the general public pursuant to a State statute authorizing such an action;

and, number four, if the claims have been consolidated or coordinated for pretrial purposes only

I would appreciate the gentleman from Wisconsin clarifying how the $75,000 amount in controversy minimum would apply to assessing whether Federal jurisdiction exists over a mass action, and, most importantly, explaining the intent of the sponsors with regard to the first and third exceptions.

Mr SENSENBRENNER Mr Speaker, reclaiming my time, I will be happy to explain

The mass action provision was included in the bill because mass actions are really class actions in disguise. They involve an element of people who want their claims adjudicated together, and they often result in the same abuses as class actions In fact, sometimes the abuses are even worse because the lawyers seek to join claims that have little to do with each other and confuse a jury into awarding millions of dollars to individuals who have suffered no real injury

Here is how the mass action provision and the current amount-in-controversy provision would work in tandem: suppose 200 people file a mass action in Mississippi against a New Jersey drug manufacturer and also name a local drug store. Three of them assert claims for a million dollars apiece, and the rest assert claims of $20,000.

The Federal Court would have jurisdiction over the mass action because there are more than 100 plaintiffs, there is minimal diversity, and the total amount of controversy exceeds $5 million, and a product liability case does not qualify for the local occurrence exception in the provision.

Then the question becomes, which claims would, in the mass action. the Federal judge keep in Federal Court, and which would be remanded? At this point the judge would have to look at each of the claims very carefully and determine whether or not they meet the $75,000 minimum

In this regard, I would note that the plaintiffs often seek to minimize what they are seeking in the complaint so that they can stay in State court. For example, sometimes plaintiffs leave their claim for punitive damages off the original complaint to make it seem like their claims are smaller than they really are.

It is our expectation that a Federal judge would read a complaint very carefully and only remand claims that clearly do not meet the $75,000 threshold If it is likely that a plaintiff is going to turn around in a month and add an additional claim for punitive damages, the Federal court should obviously assert jurisdiction over that individual's claims.

Finally, I would like to stress that this provision in no way is intended to abrogate 8 United States Code 3867 to narrow current jurisdictional rules Thus, if a Federal court believed it to be appropriate, the court could apply supplemental jurisdiction in the mass action context as well

With regard to the exceptions, it is our intent that they be interpreted strictly by a court so that they do not become loopholes for an important jurisdictional provision. Thus, the first exception would apply only in a situation where we are talking about a truly local single event with no substantial interstate effects.

The purpose of this exception is to allow cases involving environmental torts, such as a chemical spill, to remain in State court if both the event and the injuries were truly local, even though there are some out-of-state defendants.

By contrast, this exception would not apply to a product liability or insurance case. The sale of a product to different people does not qualify as an event, and the alleged injuries in such a case would be spread out over more than one State or contiguous States even if all of the plaintiffs in a particular case came from one single State.

The third exception addresses a very narrow situation, specifically a law like the California Unfair Competition Law, which allows individuals to bring a suit on behalf of the general public. Such a suit would not qualify as a mass action. However, the vast majority of cases brought under other States' consumer fraud laws which do not have a parallel provision could qualify as removable class actions.

I yield to the gentleman from Virginia

Mr. GOODLATTE. I thank the gentleman for yielding.

Finally, Mr. Speaker, some critics have complained that the legislation removal provisions will result in delay Can the gentleman explain why that is simply not the case?

Mr SENSENBRENNER. Mr. Speaker, reclaiming my time. once again, critics of the legislation have it backwards. This legislation will streamline jurisdictional inquiries by putting an end to all of the gaming that takes place under the current system, and the so-called delay refers to procedural rules that already exist under the current system.

Under existing law, diversity of citizenship between the parties must exist, both at the time a complaint is filed and at the time a complaint is removed to Federal court. However, if the plaintiff files an amended complaint in State court that creates jurisdiction,

*February 17, 2005*      CONGRESSIONAL RECORD—E      H733

or if subsequent events create jurisdiction, the defendant can then remove the case to Federal court.

Current law is also clear that once a complaint is properly removed to Federal court, the Federal court's jurisdiction cannot be ousted by later events. Thus, for example, changes in the amount of controversy after the complaint has been removed would not subject a lawsuit to be remanded to State court.

Mr. GOODLATTE Mr. Speaker, I thank the gentleman for his leadership in moving this legislation forward and in working with the Senate to accomplish that as well.

I hope this colloquy will provide guidance on the very important jurisdictional provisions in S. 5 and the sponsor's intent.

Mr. SENSENBRENNER. Mr. Speaker. I reserve the balance of my time.

Mr. CONYERS. Mr. Speaker. I am pleased to yield 4 minutes to my good friend, the gentleman from Massachusetts (Mr. MARKEY) from the Committee on Energy and Commerce. He has worked with us on many of these issues.

Mr. MARKEY. Mr. Speaker, I thank the gentleman from Michigan for yielding, and I thank him for his leadership on this most critical of all consumer issues before Congress this year.

So you have all heard now the technical arguments made by the Bush administration proponents here on the House floor. So you have heard the Bush administration argument on why this is good.

Now you want to hear what the bill is really about? Do you want to hear what the Bush administration is really interested in? Well, here it is, ladies and gentlemen. Citigroup's Smith Barney subdivision: "Tobacco. Flash—Senate Just Passed Class Action Bill—Positive For Tobacco." Let me read it to you:

"The Senate just passed a bill, 72-26." This has gone out from Smith Barney to all their investors. "This bill is designated to funnel class action suits with plaintiffs in different States out of State courts and into the Federal court system, which is typically much less sympathetic to such litigation.

"The practical effect of the change could be that many cases will never be heard given how overburdened Federal judges are, which might help limit the number of cases."

Smith Barney advised its clients that this bill will be positive in general for the tobacco industry and that tobacco stocks have rallied on this favorable news given that this bill could have a positive impact on tobacco litigation.

That is what it is all about, ladies and gentlemen. You heard the technical defense of it for the last half hour. The impact is they are trying to protect the tobacco industry from being sued. So if you are out there, one of your family members has just found that they have a spot on their lung, they have smoked for the last 20 or 30 years, what this bill will do is it will make it more difficult for you and the other people in your States who also have found that they have spots on their lungs to get together to sue the tobacco companies.

If your children are beginning to smoke, they are 13, 14, 15, this bill is intended to make it more difficult for the people in the State of New Hampshire, or Kansas, or Oklahoma to bring a suit to stop it. That is what it is all about. Smith Barney gives the good news to the tobacco industry investors, not to smokers.

And so what they have done is this. It is brilliant in the Bush administration and that is what this side of the aisle is all about. The FDA, is it going to move in to regulate tobacco? No, they made sure they appoint people who will not do it. The EPA, are they going to move in to make sure that the oil industry does not pollute your groundwater so that the children in your neighborhood do not contract leukemia; that breast cancers do not rise? No. Are they going to have a Department of Labor which protects you against asbestos in the workplace? No.

You are not going to see those suits, ladies and gentlemen. So it comes to you and your families to go to court. And what this bill is intended to do is to not let you go to court. So it is perfect. If you are an asbestos company, your stocks are going up. If you are a tobacco company, your stocks are going up. If you are an oil company, a chemical company, your stocks are going up. Smith Barney gives you the good news. Mr. and Mrs. Investor of America.

But if you are afraid for the health of your family, if you know that the groundwater in New Hampshire has been poisoned by Amerada Hess and 22 other oil companies that are not in New Hampshire, you know what the Republicans say? You know what the Bush administration says? The case should not be held in New Hampshire. If Amerada Hess, the big oil company, is a defendant, the case should be outside of New Hampshire, not protecting the person whose family's health has been injured.

And so that is what it is all about. It is the final payback to the tobacco industry, to the asbestos industry, to the oil industry, to the chemical industry at the expense of ordinary families who need to be able to go to court to protect their loved ones when their health has been compromised. And these people are saying, your State is not smart enough, your jurors are not smart enough to understand how the MTBE ruined the groundwater in their State and poisoned thousands of people, that it has to go to a State where Amerada Hess or some large oil company feels comfortable, because they are not headquartered in New Hampshire, they do not have a large plant in New Hampshire. All they did was sell the material which poisoned your neighborhood.

That is what it is all about, ladies and gentlemen. You just watch across the board every single interest that harms the health and well-being of America skyrocket as soon as we take the vote on final passage of this bill today because President Bush is going to sign this bill with great joy because the oil, the chemical and polluting industries are going to be happy.

INDUSTRY NOTE: TOBACCO—SENATE JUST PASSED CLASS ACTION BILL—POSITIVE FOR TOBACCO

(By Bonnie Herzog)

SUMMARY

The Senate just passed a bill 72-26 which is designed to funnel class-action suits with plaintiffs in different states out of state courts and into the federal court system, which is typically much less sympathetic to such litigation.

The practical effect of the change could be that many cases will never be heard given how overburdened federal judges are, which might help limit the number of cases.

Although this news is positive in general for the tobacco industry, we do not necessarily believe that class actions pose a big threat to the industry. Furthermore, this type of legislation would have been a bigger help to the industry if it was passed 10 years ago.

The bill now moves to the House floor and the chances are high that it passes since the House Republican leadership said last week that it would pass the Senate's version of this legislation as long as there were no amendments.

OPINION

The Senate just passed a bill that is designed to funnel class-action lawsuits with plaintiffs in different states out of state courts and into the federal court system, which is historically much less sympathetic to such litigation.

The practical effect of the change could be that many cases will never be heard, which might also be positive for tobacco companies. Federal judges, facing overburdened dockets and ambiguities about applying state laws in a federal court, often refuse to grant standing to class-action plaintiffs.

Therefore, tobacco stocks have rallied on this favorable news given that this bill could have a positive impact on potential future tobacco litigation.

Now the bill should move to the House floor and apparently the House Republican leadership announced last week that the GOP majority in that chamber will pass the Senate's version of class-action litigation provided it arrives without amendments and from what we hear, this is in fact what has happened in the Senate. Obviously President Bush has been a big proponent of this type of legislation so we would assume that he would sign it as part of a broader fight that he hopes will lead to limits on awards in asbestos cases and to caps on pain-and-suffering awards in medical malpractice cases.

Although positive in general terms for the tobacco companies, clearly this type of legislation would have been much more useful if it were passed 10 years ago.

ANALYST CERTIFICATION

I, Bonnie Herzog, hereby certify that all of the views expressed in this research report accurately reflect my personal views about any and all of the subject issuer(s) or securities. I also certify that no part of my compensation was, is, or will be directly or indirectly related to the specific recommendation(s) or view(s) in this report.

IMPORTANT DISCLOSURES

Analysts' compensation is determined based upon activities and services intended

# EXHIBIT C

108TH CONGRESS ⎱
   *1st Session* ⎰  HOUSE OF REPRESENTATIVES  ⎰ REPORT
                                              ⎰ 108–144

## CLASS ACTION FAIRNESS ACT OF 2003

JUNE 9, 2003 —Committed to the Committee of the Whole House on the State of
the Union and ordered to be printed

Mr. SENSENBRENNER, from the Committee on the Judiciary,
submitted the following

# R E P O R T

together with

## ADDITIONAL AND DISSENTING VIEWS

[To accompany H.R. 1115]

[Including cost estimate of the Congressional Budget Office]

The Committee on the Judiciary, to whom was referred the bill (H.R. 1115) to amend the procedures that apply to consideration of interstate class actions to assure fairer outcomes for class members and defendants, to outlaw certain practices that provide inadequate settlements for class members, to assure that attorneys do not receive a disproportionate amount of settlements at the expense of class members, to provide for clearer and simpler information in class action settlement notices, to assure prompt consideration of interstate class actions, to amend title 28, United States Code, to allow the application of the principles of Federal diversity jurisdiction to interstate class actions, and for other purposes, having considered the same, reports favorably thereon with an amendment and recommends that the bill as amended do pass.

### CONTENTS

| | Page |
|---|---|
| The Amendment | 2 |
| Purpose and Summary | 6 |
| Background and Need for the Legislation | 7 |
| Hearings | 27 |
| Committee Consideration | 27 |
| Vote of the Committee | 27 |
| Committee Oversight Findings | 31 |
| New Budget Authority and Tax Expenditures | 31 |
| Congressional Budget Office Cost Estimate | 31 |

37

demonstrating that the removal was improvident (*i.e.*, that the applicable jurisdictional requirements are not satisfied). If a Federal court is uncertain as to whether the matter in controversy in a purported class action exceeds the sum or value of $2 million, the court should err in favor of exercising jurisdiction over the case.

By the same token, the Committee intends that a matter be subject to Federal jurisdiction under this provision if the value of the matter in litigation exceeds $2 million, either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief). The Committee is aware that some courts, especially in the class action context, have declined to exercise Federal jurisdiction over cases on the ground that the amount in controversy in those cases exceeded the jurisdictional threshold only when assessed from the viewpoint of the defendant. For example, a class action seeking an injunction that would require a defendant to restructure its business in some fundamental way might "cost" a defendant well in excess of $75,000 under current law, but might have substantially less "value" to a class of plaintiffs. Some courts have held that jurisdiction does not exist in this scenario under present law, because they have reasoned that assessing the amount in controversy from the defendant's perspective was tantamount to aggregating damages. Because H.R. 1115 explicitly allows aggregation for purposes of determining the amount in controversy in class actions, that concern is no longer relevant.

The Committee also notes that in assessing the jurisdictional amount in declaratory relief cases, the Federal court should include in its assessment the value of all relief and benefits that would logically flow from the granting of the declaratory relief sought by the claimants. For example, a declaration that a defendant's conduct is unlawful or fraudulent will carry certain consequences, such as the need to cease and desist from that conduct, that will often "cost" the defendant in excess of $2 million. Or a declaration that a standardized product sold throughout the nation is "defective" might well put a case over the $2 million threshold, even if the class complaint did not affirmatively seek a determination that each class member was injured by the product.

Overall, the new section 1332(d) is intended to expand substantially Federal court jurisdiction over class actions. For that reason, its provisions should be read expansively; they should be read as stating a strong preference that interstate class actions be heard in a Federal court if so desired by any purported class member or any defendant.

Consistent with this overriding intent, the provisions of the new section 1332(d)(3)(A) should be read narrowly. A purported class action should be deemed a case that falls outside Federal jurisdiction only if virtually all members of all proposed classes are residents of a single State of which all "primary defendants" are also citizens. For example, a case in which a proposed class of 1000 persons sues a North Carolina citizen corporation presumably would fit this exception if 997 of those persons were North Carolina citizens. Further, Federal courts should be cautious to decline Federal jurisdiction under section 1332(d)(3)(B) only where it is relatively clear that States, State officials, or other governmental entities are

38

primary defendants against whom the court may be foreclosed from ordering relief

For purposes of class actions that are subject to subsections 1332(d)(3) and (d)(4)(A), the Committee intends that the only parties that should be considered "primary defendants" are those defendants who are the real "targets" of the lawsuit—*i.e.*, the defendants that would be expected to incur most of the loss if liability is found Thus, the Committee intends for the term "primary defendants" to include any person who has substantial exposure to significant portions of the proposed class in the action, particularly any defendant that is allegedly liable to the vast majority of the members of the proposed classes (as opposed to simply a few individual class members). For example, in a class action alleging that a drug was defective, the defendant manufacturer of the drug would be a primary defendant, since it is a major target of the allegations of the full class However, if several physicians who had each prescribed the drug to a handful of class members were also named as defendants, they would not be primary defendants. Similarly, in a class action alleging that a type of ladder was defective, both a defendant manufacturer that made 60 percent of the ladders at issue and a defendant manufacturer that made 20 percent of the ladders at issue would be primary defendants, since both are major targets of the allegations and have substantial exposure to significant percentages of the class in the case. However, if two local hardware stores that each sold a few of the ladders were named as defendants, they would not be deemed "primary defendants." Merely alleging that a defendant conspired with other class members to commit wrongdoing will not, without more, be sufficient to cause a person to be a "primary defendant" under this subsection

For the purposes of the section 1132(d)(3)(A) carve-out, the only parties that should be considered "primary defendants" are those who are the real "targets" of the suit; that is, the parties that would be expected to incur most of the loss if liability is found. For example, an executive of a corporate defendant who, in the interest of completeness, is named as a co-defendant in a class action against his employer normally should not be deemed a "primary defendant." In most instances, the executive would not be the real "target" of the purported class action; his employer company would be. Moreover, no defendant should be considered a "primary defendant" for purposes of this analysis unless it is the subject of legitimate claims by all class members. To illustrate, if named as a defendant, a dealer, agent, or sales representative of a corporate defendant should not be deemed a "primary defendant" unless that dealer, agent, or sales representative is alleged to have actually participated in the purported wrongdoing with respect to all class members (*e.g.*, the defendant is alleged to have sold a purportedly defective product to all class members) Merely alleging that a defendant conspired with other class members to commit wrongdoing will not be sufficient to cause a person to be a "primary defendant."

It is the Committee's intention with regard to each of these exceptions that the party opposing Federal jurisdiction shall have the burden of demonstrating the applicability of an exemption For example, if a plaintiff seeks to have a purported class action remanded for lack of Federal diversity jurisdiction under section 1332(d)(3)(C), that plaintiff should have the burden of dem-

# EXHIBIT D

*2005 ABA Annual Meeting, Section of Litigation. August 4-7, 2005*
*The Class Action Fairness Act  Reform or Revolution?*

# The Class Action Fairness Act of 2005: An Analysis

**Scott L. Nelson**
**Public Citizen Litigation Group**
**Washington, DC**

## INTRODUCTION

On January 25, Senator Charles Grassley (R-Iowa) introduced S. 5, the Class Action Reform Act of 2005. The bill was virtually identical to one that had failed the previous July and largely the same as one that was blocked by a filibuster in October 2003. But this time — the November election having resulted in consolidated Republican control over the Senate and an intact Republican majority in the House of Representatives — the bill quickly cleared the Senate Judiciary Committee without amendment, and without a written report to slow its momentum. A week later, the Senate acted on the bill, which passed 72-26 with 18 Democrats' votes.[1]

House Republicans had long favored a more pro-defendant bill, but in the interest of finally passing class action legislation, the House leadership had announced that if the Senate passed the Grassley bill without amendment, the House would do likewise. On February 17, 2005, a week after the Senate acted, the House leaders made good on their promise. Bypassing the formality of a report by the House Judiciary Committee, the House considered the bill under a rule allowing barely more than two hours of debate. Following the debate, the House vote was nearly as lopsided as the Senate's, with the bill passing by 279-149.

The President signed the bill on Friday, February 18 — the day after the House acted. The law is now in effect. But what does it mean?

In a nutshell, the Class Action Fairness Act has two principal parts. One set of provisions establishes new procedural and substantive standards applicable to class action settlements. Some of these merely duplicate (or add little to) existing practice under the Federal Rules of Civil Procedure, but others — such as new limitations on attorneys' fees in coupon settlements and requirements that government officials be notified whenever a class action settles — are brand new.

---

[1] A few weeks after the Act's passage, a Senate Report was published. *See* S. Rep. No. 109-14. Its authority as legislative history may be questioned because it was clearly not available to any of the Senators or Representatives who voted on the bill. The report may be found at http://www.abanet.org/litigation/committee/classact/cafa2005.html, together with the full text of the Act (and an earlier version of this article).

The other, more important, set of provisions casts aside traditional principles of statutory diversity jurisdiction and provides for both original federal jurisdiction and removal of state-law based class actions that until now could be filed only in state courts. The provisions are complex and require detailed explication. Fundamentally, however, the Acts makes the ordinary requirement of "complete diversity" of citizenship inapplicable to class actions, and provides federal jurisdiction when some class members and some defendants are from different states. It also eliminates the principle that the claims of class members cannot be aggregated to meet the amount-in-controversy requirement, and provides for federal jurisdiction when the total amount in controversy in a class action exceeds $5 million. The effect is to allow most class actions with classes or defendants including citizens of more than one state to be filed in or removed by defendants to federal court.

The Act is complicated, and the jurisdictional provisions in particular have a number of exceptions. A detailed analysis of its provisions is essential to understanding its effect on class action practice.


## THE ACT'S PROVISIONS

### 1. Effective Date

The most pressing, immediate question a practitioner may have is whether the Act applies to a particular case. That key question is addressed in the very last section of the Act, section 9, which provides: "The amendments made by this Act shall apply to any civil action commenced on or after the date of enactment of this Act." In short, the Act applies to class actions filed on or after Friday, February 18, 2005. It does not apply to actions already pending on that date.

Already, defendants have tested this provision by attempting to remove cases that were pending before February 18, 2005. Relying on cases involving the effective date of past legislation increasing the jurisdictional amount provisions of the diversity statute, these defendants have argued that a "civil action" is "commenced" on the date it is removed, not the date it was originally filed in state court. As of this writing, however, these efforts to remove already-pending cases have been unsuccessful. In the leading case, *Pritchett v. Office Depot, Inc.*, __ F.3d __, 2005 WL 827158 (10th Cir. April 11, 2005), the Tenth Circuit held that the language of the statute, the presumption that removal provisions are to be narrowly construed, the legislative history, and considerations of public policy all point to the same conclusion: "removal to federal court does not 'commence' an action for the purposes of the Class Action Fairness Act of 2005." *Id.* at *5.

Significantly, the effective date provision applies to all of the changes made by the Act, including the provisions on settlements, which presumably could have been applied to future settlements in pending actions without raising concerns about unfair retroactivity. Applying the removal and jurisdictional provisions to previously filed actions, by contrast, would have been far more disruptive of settled expectations.

The bottom line is that cases already filed in state court are not subject to removal under the Act, which presumably will elicit a sigh of relief from plaintiffs' lawyers with pending state-court class actions. But because the drafters of the Act chose a uniform, bright-line approach to the effective date for all provisions of the new law, settlements of class actions in federal courts for years to come will

*2005 ABA Annual Meeting. Section of Litigation. August 4-7, 2005*
*The Class Action Fairness Act / Reform or Revolution?*

be subject to two different sets of procedures, depending on the date of filing of the action. Thus, the effective date provision simplifies everyone's life insofar as it applies to the jurisdictional and removal provisions, but will be an ongoing source of complication for settlements.

## 2. Jurisdictional Provisions

### a. The Basic Rules

The Act's provisions for original jurisdiction and removal jurisdiction over multistate class actions are its most important features. They are critical both to the hopes of the Act's backers that it will remove "frivolous" class actions from so-called state-court "hellholes," and to the fears of its opponents that it will shunt cases that have merit under state law into federal courts that are hostile to certification of classes in those cases (and that may be more restrictive than some state courts in construing state-law causes of action, or more receptive to defenses such as federal preemption). The jurisdiction and removal provisions are also the most fundamental changes made by the Act to the status quo, and will have the broadest impact.

Understanding the significance of the changes worked by the Act requires a basic understanding of the status quo ante. Under the law as it stood before the Act's passage, class actions raising federal claims could be freely brought in or removed to federal court by virtue of the broad grant of federal question jurisdiction in 28 U.S.C. § 1331. But most class actions raising only state-law claims could reach federal court only if they satisfied the requirements for diversity jurisdiction under 28 U.S.C. § 1332. Section 1332 posed two significant obstacles to federal jurisdiction over such class actions: The "complete diversity" rule and the amount-in-controversy requirement.

For class actions, the "complete diversity" requirement, as created and refined in judicial decisions, was that all named class representatives and all defendants had to be citizens of different states. If any named plaintiff and any named defendant were from the same state, the action could not be filed in or removed to federal court. *See Strawbridge v. Curtiss*, 7 U.S. 267 (1806); *Supreme Tribe of Ben-Hur v. Cauble*, 255 U.S. 356 (1921). As for the amount-in-controversy requirement, in most cases the claims of class members could not be aggregated to satisfy the $75,000 jurisdictional amount in diversity cases. *See Snyder v. Harris*, 394 U.S. 332 (1969). Thus, at least one class member had to have a claim for more than $75,000; and, under the Supreme Court's decision in *Zahn v. Int'l Paper Co*., 414 U.S. 291 (1973), all class members had to have claims exceeding $75,000.[2] Importantly, both the "complete diversity" requirement and the amount-in-controversy are purely statutory; Congress has constitutional authority under Article III to create diversity jurisdiction as long as there is "minimal diversity" between some plaintiffs and some defendants, and it need not create amount-in-controversy requirements at all.

------------------------

[2] There is a split in the Circuits over whether *Zahn* is still valid in light of the supplemental jurisdiction statute, 28 U.S.C. § 1367, and the Supreme Court has granted certiorari to resolve it in the case of *Exxon Corp. v. Allapattah Servs*., No. 04-70 (argued March 1, 2005). However, all the Circuits have agreed that, regardless of *Zahn's* survival, at least one named plaintiff in a class action had to meet the jurisdictional amount requirement.

Because Congress had not exercised the full scope of its authority to create diversity jurisdiction, the combined effect of the statutory requirements was to keep many class actions based on state law claims out of federal court. All a plaintiff had to do was avoid pleading a federal claim, and name at least one non-diverse plaintiff or defendant or name only class representatives whose claims did not reach $75,000 (not too difficult, particularly in consumer class actions). Absent special circumstances (such as state-law claims that were completely preempted by federal law, or fraudulent joinder), such class actions could not be removed by defendants to federal court, no matter how much they might object to the particular state-court forum selected by class counsel.

The new Act changes all that. It amends both the diversity statute (28 U.S.C. § 1332) and the removal laws (28 U.S.C. §§ 1441 et seq.) to provide for federal jurisdiction, at the election of either the plaintiff or the defendant, over class actions that do not satisfy the traditional "complete diversity" and amount-in-controversy requirements. The basic innovation of the new law (subject to important exceptions to be described later) is that it establishes federal jurisdiction over any action in which any one member of the class (named or not) has diverse citizenship from any one defendant, and where the aggregate amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d)(2).[3]

To take a concrete example, suppose a class with 10,000 members sues GM and one of its dealerships located in Illinois, raising state-law fraud claims. The named class representatives all live in Illinois, but some class members live in Wisconsin, Iowa, Missouri, Indiana, and Michigan. The individual class members' claims average $600, and no class member has a claim exceeding $2,000. Under the law as it stood before the Act's passage, the class action could not be brought in or removed to federal court, both because there was not complete diversity between the named class representatives and the defendants (one defendant was a citizen of the same state as the plaintiffs) and because no individual plaintiff's claim exceeded the jurisdictional amount. Under the new law, the case could be filed in or removed to federal court because of the diversity of citizenship between the named representatives (Illinois) and GM (Michigan) — not to mention that between some non-named class members (various states) and both defendants — and because the total amount in controversy ($6 million) exceeds the jurisdictional amount.

The same would be true if the named class representatives all lived in Michigan and the Illinois defendant were omitted: the diversity between some non-named class members and GM would still suffice to permit federal jurisdiction (assuming the case did not fall into one of the statutory exceptions).

The impact of the new provisions is obvious. The elimination of the complete diversity requirement and the provision for aggregation of claims to meet the amount-in-controversy requirement will mean that many cases that formerly could not be brought in federal court are now subject to federal jurisdiction. Most class actions can at least be argued to involve an aggregate amount in controversy of $5 million or more, and classes that don't involve some out-of-state members (or some defendants from different states) are rare.

---

[3] Cites to 28 U.S.C. are to provisions as amended or added by the Act. Only where a provision of the Act is not codified in 28 U.S.C. will the section of the Act be cited.

### b. Removal

The removal provisions of the new act are coextensive with the original jurisdiction provisions, so any class action that fits within the new diversity provisions can be removed to federal court. *See* 28 U.S.C. §1453 (newly added by the Act). The new removal provisions for class actions generally incorporate the standard removal requirements and procedures set forth in 28 U.S.C. §§ 1441 and 1446, with a couple of important exceptions that significantly expand the possibility of removal.

First, in most cases where removal is based on the existence of diversity jurisdiction under § 1332, removal is only permitted if no defendant is a citizen of the forum state. 28 U.S.C. § 1441(b). The Act removes this requirement for class actions, providing specifically that an action may be removed "without regard to whether any defendant is a citizen of the State in which the action is brought," and further providing that any defendant may remove without the consent of other defendants. 28 U.S.C. § 1453(b).

Second, 28 U.S.C. § 1446(b) generally provides that a removal petition in a diversity case may not be filed more than one year after an action is commenced, even if the facts showing that the case is removable are first revealed after the end of the one-year period. The Act removes this one-year limitations period for class actions. 28 U.S.C. § 1453(b). Thus, under the Act, a removal petition may be filed within 30 days of the first pleading or paper filed in any state-court class action from which a defendant can ascertain that the action falls within the scope of federal jurisdiction under new 28 U.S.C. § 1332(d).

Third, existing law generally provides that when a federal district court determines that removal is not proper and remands to the state court, the remand order cannot be reviewed on appeal. 28 U.S.C. § 1447(d). The Act, however, provides that a court of appeals may (*not must*) accept an appeal of an order either granting or denying a motion to remand, if an application for permission to appeal is filed within seven days of the order. If a court of appeals accepts such an appeal, it *must* decide it within 60 days, unless all parties agree to an extension (which can be of any length) or the court grants an extension of no more than 10 days for good cause shown. If the court of appeals does not decide the case within the time limit, the appeal is denied. Such a binding requirement on a court of appeals to complete its deliberations so quickly or be deemed to have affirmed is, to say the least, a sharp departure from any known provision of federal law and may raise constitutional concerns. (Notably, however, while the provision may prevent a court of appeals from delaying a decision once it has agreed to accept an appeal, it will do nothing to require the appellate court to act promptly on the request for permission to appeal. Thus, the provision, however novel, may ultimately be ineffective to prevent delays of remand appeals.)

### c. The Exceptions

Although the new jurisdictional provisions for class actions are very broad, they are not unlimited, and there are exceptions built into the statute. Some of the exceptions are quite complicated. As a general matter, however, they are intended to keep the following kinds of cases out of federal court: class actions that involve both class members and defendants who mostly are citizens of the forum state; class actions against state government defendants; class actions with fewer than 100 class members; and shareholder class actions or derivative suits based on state corporation law.

First, a federal court *may not* exercise diversity jurisdiction over a class action (or accept removal jurisdiction) if two-thirds of all class members are citizens of the forum state, and either all "the primary defendants" are citizens of the same state, *or* at least one defendant from whom "significant relief" is sought and whose conduct is a "significant basis" of the claims asserted is a citizen of the forum state. In the latter instance, however, the bar to federal jurisdiction applies only if the "principal injuries" from the conduct of "each defendant" were suffered in the forum state, 28 U.S.C. § 1332(d)(4), and no other "similar" class actions have been filed within the past three years. Together these provisions allow some class actions to proceed in state court where the great majority of the class and one or more significant defendants are citizens of the forum state.

Second, a federal court is *permitted* to decline jurisdiction where the primary defendants and between one-third and two-thirds of the class members are citizens of the forum state. 28 U.S.C. § 1332(d)(3). In deciding whether to exercise its power to decline jurisdiction, the court must consider the "interests of justice" and "the totality of the circumstances," including whether the claims involve matters of national interest, whether they involve the application of the law of states other than the forum state, whether the class action was pleaded in an effort to avoid federal jurisdiction, whether there is a "distinct nexus" between the case and the forum state, whether the class members who are citizens of the forum state substantially predominate over citizens of other states, and whether similar class actions have been brought within the past three years. Presumably, a district court's balancing of these factors can be reviewed on appeal if it either dismisses a case originally filed in federal court (in which case its decision is appealable as of right), or if it remands a case that was removed by a defendant (in which case the permissive appeal provisions of 28 U.S.C. § 1453 apply).

Third, a class action based on state law may not be filed in or removed to federal court if the primary defendants are states, state officials, or "other governmental entities against whom the district court may be foreclosed from ordering relief." 28 U.S.C. § 1332(d)(5)(A). Federal courts are generally barred by the Eleventh Amendment from hearing state-law claims against either state governments or state government officials (*see Pennhurst State Sch & Hosp v. Halderman*, 465 U.S. 89 (1984)), so it would be simply bizarre to provide for federal jurisdiction over class actions involving such defendants.

Fourth, a non-federal question class action is not subject to the new provisions for diversity jurisdiction or removal if the total number of class members is less than 100. 28 U.S.C. § 1332(d)(5)(B). Presumably, however, if such an action met the preexisting requirements for diversity jurisdiction (that is, there was complete diversity and the amount in controversy without aggregation exceeded $75,000), it could still be filed in or removed to federal court under statutory provisions predating the Act.

Finally, the Act excludes from its coverage certain actions involving securities and corporate governance claims. The most important of these exclusions (sometimes referred to as the "Delaware carve-out") applies to actions that solely involve claims relating to "the internal affairs or governance of a corporation or other form of business enterprise and that aris[e] under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized." 28 U.S.C. § 1332(d)(9)(B); *see also* 28 U.S.C. § 1453(d)(2). The effect of this exclusion is to prevent shareholder derivative actions or other representative actions involving state corporation law issues

from being entirely federalized, a result that most corporations (not to mention the Delaware Chancery Court) would not favor.[4]

It is hard to generalize about the effect of the various exceptions. Some, like the exclusions of state-law corporate governance claims and actions against states, define classes of cases that are completely outside the central concerns of the Act. Others, like the exclusion of classes of fewer than 100 members, seem likely to have minimal impact.

The provisions involving classes whose members are concentrated in the forum state — the two-thirds/one-third provisions — are harder to evaluate. Some supporters of the Act view them as preserving state-court authority over significant numbers of cases. But their effect is limited by their applicability only where the major defendants are being sued in their own home states. In most state-court class actions potentially subject to removal, that will not be the case. The number of cases where the class definition will be such as to call the two-thirds and one-third provisions into play also seems unclear. Outside of cases where a class is defined to include only citizens of a particular state, there may be few cases where class members will be so concentrated in individual states that the two-thirds requirement could be met. Moreover, in cases where the two-thirds/one-third provisions may potentially apply, it is likely to be extremely difficult, at the outset of a case, to determine whether they do. Satellite litigation over the number of class members who are citizens of the forum state may be the result. Another fertile source of litigation relating to these provisions may be the meaning of the undefined term "primary defendants."

### d. What Is a "Class Action," Anyway?

The discussion so far of the jurisdictional and removal provisions has begged the question of what is a "class action" — a critical issue because jurisdiction under new section 1332(d) and removal under new section 1453 depend on whether a case is a class action. The basic definition, for purposes of both original and removal jurisdiction, is that "the term 'class action' means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). That seems simple enough. Indeed, if the statute stopped there, it would appear that the jurisdictional and removal provisions would not apply to any case that was not actually called a class action either under Rule 23 or under its state-law analogs.

But the Act doesn't stop there. It also provides that a "mass action shall be deemed to be a class action." 28 U.S.C. § 1332(d)(11)(A). What, one might ask, is a "mass action"? Well, it is any civil action other than a class action "in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law and fact." 28 U.S.C. § 1332(d)(11)(B)(i). That may encompass a number of different kinds of cases, but it seems especially aimed at "joinder" and "consolidation" cases under Mississippi and West Virginia

---

[4]  The same paragraph of new § 1332(d) that contains the carve-out for state corporate governance cases also excludes from coverage certain claims relating to securities as defined by federal law. The purpose of this exclusion seems to be to make clear that the Act is not supposed to displace the Private Securities Litigation Reform Act. 15 U.S.C. § 78u-4. which already created new procedures applicable to federal securities class actions  The exclusion seems largely superfluous. however. since such actions are generally subject to federal question jurisdiction. and the new diversity principles set forth in § 1332(d) would not apply to them anyway.

procedure, in which large numbers of nominally distinct individual claims are tried together, with an impact on defendants similar to that of a class action.[5]

The "mass action" provision, however, has some significant limitations. First, it provides for jurisdiction only over those individual claimants whose claims meet the jurisdictional amount limitation of 28 U.S.C. § 1332(a) — that is, $75,000. *See* 28 U.S.C. § 1332(d)(11)(B)(i). Except for those claims not meeting the requirement of "complete diversity" under preexisting law, many such claims would already be within the scope of federal jurisdiction.

Second, the law does not permit federal jurisdiction over "mass actions" involving an "event or occurrence" that took place within the forum state and caused injury in that state and contiguous states. 28 U.S.C. § 1332(d)(11)(B)(ii)(I).[6]

Third, there is no federal jurisdiction under the Act over a "mass action" if it is the result of a *defendant's* motion for joinder; thus, a defendant can't get individual claims filed against it in state court into federal court by having the state court consolidate them and then removing the case as a "mass action." 28 U.S.C. § 1332(d)(11)(B)(ii)(II).

Fourth, and of considerable importance, a "mass action" does not include private attorney general actions (or, in the words of the Act, claims "asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action"). 28 U.S.C. § 1332(d)(11)(B)(ii)(III). Thus, claims under California Business & Professions Code § 17200 will not be affected unless they are specifically pleaded as class actions.[7]

Finally, and somewhat redundantly, the Act provides that "mass actions" do not include claims that are consolidated for pretrial purposes only. 28 U.S.C. § 1332(d)(11)(B)(ii)(IV). Such claims, of course, would not meet the basic definition of a "mass action" anyway because they are not proposed to be "tried jointly."

The "mass action" provisions may prove to have relatively little effect. They can be evaded by simply not joining more than 99 individual claims. Moreover, to the extent one purpose of the Act is to bring state-court class actions into federal court where they may be subject to more stringent certification requirements, that purpose will not necessarily be served by removal of a "mass action." In such a case, the plaintiffs will not need to seek certification because it was never intended to be a class action, and the federal court will have to deal with the individual claims of all of the "mass action" plaintiffs regardless of whether the case could qualify for class certification under Rule 23.[8]

---

[5] Because of "tort reform" legislation in Mississippi and recent Mississippi decisions limiting the application of that state's joinder doctrines, *see MS Life Ins. Co. v. Baker*, No 2003-IA-01149-SCT. 2005 WL 67522 (Miss 2005). and *Harold's Auto Parts, Inc. Mangialardi.* 889 So 2d 493 (Miss 2004). Mississippi practice may no longer be as great a concern to defendants regardless of the Act

[6] The conditions under which there is federal jurisdiction over such "mass accident" claims are already set forth in 28 U.S.C. § 1369.

[7] Once again, however, recent changes to § 17200 limiting the circumstances in which private attorney general actions may be brought may diminish the effect of this exclusion

[8] Indeed, the Act contains a provision that will discourage plaintiffs' counsel in a "mass action" from seeking class certification if the action is removed: It provides that mass actions are exempt from being transferred for Multidistrict Litigation proceedings unless the plaintiffs seek class certification. 28 U.S.C. § 1332(d)(11)(C)

*2005 ABA Annual Meeting. Section of Litigation. August 4-7, 2005*
*The Class Action Fairness Act: Reform or Revolution?*

*e. Effect on Jurisdiction if Class Not Certified*

An earlier version of the Class Action Fairness Act passed by the House (but not the Senate) in 2003 would have provided that if a federal court denied class certification in a case where federal jurisdiction depended on the new class action jurisdiction/removal provisions, the court was required to dismiss the action. (The action could then be refiled in state court, but it would again be subject to removal, denial of class certification, and dismissal by the federal district court.)

As enacted, the Class Action Fairness Act contains no such provision. Presumably, since diversity jurisdiction ordinarily depends on the facts at the time of filing and is not affected by subsequent events, *see Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567 (2004), the district court would retain jurisdiction over an action brought in or removed to federal court under the Act even after it denied class certification. Any individual claims of the named class representatives, therefore, would remain to be decided by the federal court after a denial of class certification, even if there would have been no arguable basis for federal jurisdiction over them if they had originally been filed as part of a non-class action. In such a case, however, a plaintiff who preferred that her individual claim be heard in state court could dismiss the case in federal court and file a non-class-action in state court (assuming the filing would still be timely under state statutes of limitations and tolling principles), which would not be subject to removal.

## 3. The Settlement Provisions

In addition to its jurisdictional and removal sections, the Class Action Fairness Act adds a new Chapter 114 to Title 28 of the United States Code setting forth a number of requirements applicable to the settlement of class actions in federal courts. Some of the new requirements are wholly or largely duplicative of existing practice under Rule 23, but some represent substantial changes. All of the provisions are applicable only to class actions, narrowly defined as cases filed in federal court under Rule 23 or filed as class actions in state court and removed to federal court. 28 U.S.C. § 1711(2).

*a. Coupon Settlements*

Supporters of the Act aimed a great deal of their rhetoric at coupon settlements, usually described as settlements where class members get coupons of dubious value while class counsel get cash. Given the degree to which coupon settlements were mentioned in connection with the need for reform, a person reading the Act for the first time might be surprised at how little it says about them. In essence, the Act adds one section to the U.S. Code, 28 U.S.C. § 1712, which addresses two aspects of coupon settlements: their overall fairness, and the award of attorneys' fees in coupon settlements.

As to the basic fairness of coupon settlements, the Act provides that a court may approve a class action settlement involving coupons "only after a hearing to determine whether, and making a written finding that, the settlement is fair, reasonable and adequate for class members." 28 U.S.C. § 1712(e). Of course, Rule 23 already provides exactly that; indeed, this standard has been applied by federal courts to class action settlements for at least 30 years. Courts that have found coupon settlements fair, reasonable and adequate under existing law are unlikely to change their view in light of the new statutory provision.

*2005 ABA Annual Meeting. Section of Litigation, August 4-7, 2005*
*The Class Action Fairness Act  Reform or Revolution?*

Section 1712(e) does go beyond existing law in one minor respect: It explicitly provides that a court has discretion to require that in a coupon settlement, some portion of the value of unclaimed coupons be distributed to charity (and it forbids an award of attorneys' fees based on the value of the contribution of unclaimed coupons). It seems doubtful that this provision would materially change the terms of any settlement that a court would have approved under Rule 23 before the Act's passage. Some judges, however, may exercise their discretion to add such "cy pres" provisions to settlements that they would otherwise just have approved, and the statute may also encourage parties to include such provisions in more settlements and make it more likely that courts will approve them.

The provisions regarding the award of attorneys' fees in coupon cases, by contrast, work an important change in existing law. New section 1712(a) sets forth the basic rule that in a coupon settlement, "the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed." In other words, attorneys will no longer be able to receive fees based on the gross amount of coupons awarded, or even upon predictions of how many coupons will be redeemed. Any percentage-based fee can be awarded only on the basis of the value of coupons actually redeemed.[9]

In cases where a settlement involves both coupons and injunctive relief, the Act provides that any portion of the fee attributable to coupons shall be calculated on the basis of the coupons actually redeemed, while any fee attributable to the equitable relief shall be determined on the basis of the hours expended — i.e., a "lodestar" basis, with a multiplier if the court deems it appropriate. 28 U.S.C. § 1712(c).

What if a settlement includes both coupons and cash? Here the statutory language is, to put it charitably, opaque. The situation is governed by 28 U.S.C. § 1712(b), which provides that in such cases, "if  . a portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel, any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action." This language is so unclear that courts will undoubtedly face some difficulty in dealing with it, but it appears to mean that part of the fee can be based on the value of the coupons redeemed, but the fee for the cash portion of the settlement must be calculated on a lodestar basis. If this is what the language means, it would be a substantial departure from current practice, which generally permits percentage-based fees in settlements involving cash payments.

### b. Other "Protections" for Class Members

New section 1713 of Title 28 provides that a court may approve a settlement in which class members incur out-of-pocket losses to compensate class counsel "only if the court makes a written finding that non-monetary benefits to the class member substantially outweigh the monetary loss." New section 1714 prohibits class settlements that provide payment of greater amounts to some class members "solely on the basis that the class members to whom the greater sums are to be paid are located in close geographic proximity to the court."

---

[9]  The Act further provides that expert testimony on the value to class members of the coupons that are redeemed is admissible in the discretion of the court. 28 U.S.C. § 1712(d). but the basic standard under the Act will still be actual redemption. not redemption rates as predicted by experts

*2005 ABA Annual Meeting, Section of Litigation. August 4-7, 2005*
*The Class Action Fairness Act  Reform or Revolution?*

These provisions are, to put it mildly, inconsequential. Settlements that put class members out-of-pocket to pay class counsel are very rare, and, under Rule 23, would likely be approved by a court as fair only if the class received significant non-monetary benefits even without this new statute. Thus, the statute permits settlements to put plaintiffs out-of-pocket under the same circumstances that they might already be put out-of-pocket under Rule 23; indeed, it may even slightly encourage such settlements by expressly authorizing them. As for geographic proximity, a settlement that accorded benefits solely on that basis could not conceivably pass muster under Rule 23. There is probably little that is objectionable about the new provisions, but they hardly seem worth writing into the United States Code.

### c. Notifications to Federal and State Officials

In a major departure from existing practice, the Act creates 28 U.S.C. § 1715, which requires that notice of any settlement of a class action in federal court be provided to "appropriate" federal and state officials. For all settlements, the Attorney General of the United States is an "appropriate federal official," 28 U.S.C. § 1715(a)(1)(A), while the term "appropriate state official" means either a state official who has regulatory authority over matters at issue in the case, or, if there is no such official, the attorney general of any state in which any class member lives. 28 U.S.C. § 1715(a)(2). In cases involving regulated financial institutions, the federal officials who must be notified also include whoever has primary regulatory authority over the institutions at issue (e.g., the FDIC).

The notice to be provided must be sent no more than 10 days after a proposed settlement is filed in federal court, and it must include: the complaint; notice of any scheduled hearing; copies of notices to class members informing them of opt-out rights and/or of the settlement; copies of the settlement itself and any side agreements; copies of any (proposed) final orders or judgments; and copies of related judicial opinions. In addition, the notice must, to the extent possible, inform the appropriate state officials of the identities and/or numbers of class members residing in their states. 28 U.S.C. § 1715(b). Responsibility for providing the required notice falls on "each defendant." *Id.* Failure to provide the required notice means class members may choose not to be bound by the settlement. 28 U.S.C. § 1715(e).

Whether the huge volume of paperwork that these provisions entail will benefit anyone is not entirely clear. Perhaps the authors of the Act took the view that the U.S. Attorney General does not receive enough junk mail. Presumably, however, the thought is that federal and state officials will do something to police the fairness of the settlements of which they will receive notice. Nowhere, however, does the Act require the Attorney General or other "appropriate federal officials" to do anything with the notices they will receive, and it would likely be unconstitutional for Congress to attempt to require "appropriate state officials" to take any action.

Ironically, the one federal agency that does have an active program of reviewing the fairness of consumer class action settlements — the Federal Trade Commission — will not receive notices under the Act. Perhaps the Justice Department will respond to the notices by instituting a program of reviewing class action settlement fairness (though in light of the Department's focus on the war on terrorism, on top of its other traditional responsibilities, a major new undertaking in the area of class action settlement review seems unlikely). Or perhaps the Justice Department will pass some or all of the notices it receives on to the FTC to bolster its existing Class Action Fairness Project. And it does

seem likely that some enterprising state attorneys general will make use of the material to subject questionable settlements to increased scrutiny. The provisions may also create a repository of information on settlements that will be subject to the federal Freedom of Information Act and its state counterparts, permitting private watchdog groups greater access to the terms of settlements.

### d. Miscellaneous Provisions

Finally, section 6 of the Act requires the Judicial Conference, within one year of the Act's passage, to report to Congress on class action settlements, and on best practices to ensure their fairness and to award appropriate fees to class counsel. The section further provides that it does not in any way diminish the courts' authority to supervise the award of fees. Section 7 of the Act goes on to provide (anachronistically) that the changes to Rule 23 promulgated by the Supreme Court in March 2003 shall go into effect upon passage of the Act or December 1, 2003, whichever comes sooner. (This is a survivor from the 2003 version of the Act, and it has no effect because the amended Rule 23 already went into effect on December 1, 2003.) Finally, Section 8 of the Act preserves the Supreme Court's authority to prescribe rules of civil procedure governing class actions.

### 4. Some Provisions That Were Not Enacted

The version of the Class Action Fairness Act passed by the House of Representatives in 2003 included several provisions that prompted broad criticism and were omitted from the law as ultimately enacted. Most prominent among these was a provision that would have made all decisions on class certification — up or down — immediately appealable as a matter of right. The Judicial Conference, in particular, objected to the impediment that such a rule would create to the prompt administration of justice. The final version of the Act contains no such provision, leaving appeals of certification decisions subject to the discretionary review provision of Rule 23(f).

The 2003 House bill also would have provided for removal of state class actions at the behest not only of defendants, but also of plaintiff class members, and would have allowed class members to remove following a state-court class certification decision (which in most cases would occur long after the defendants' time to remove had expired). Such a provision would arguably create some possibilities for mischief, allowing defendants who had forgone removal rights to find a dissident class member to act for them if they later changed their minds. It would also have had the potentially beneficial effect of allowing class members who feared a state court would approve an unfair settlement to remove to federal court where they might have greater protection under the terms of Rule 23. (Indeed, under the removal standards of the Act, it may be that almost the only cases that defendants will not immediately remove will be those where a settlement is filed at the same time as the class complaint in a court viewed as likely to approve the settlement, and in those cases allowing class members to remove could have been quite significant.) Under the law as enacted, however, only defendants may remove.

Also omitted from the Act was a provision in the House bill that would prohibit payment of "bounties" to class representatives, which drew objection from, among others, the civil rights plaintiffs' bar. On the whole, however, the Act conforms to the pattern laid out in the draft bills of 2003, and its key provisions on jurisdiction and removal are quite similar to those proposed at that time.

## CONCLUSION

Although the Act's provisions concerning the fairness of class action settlements seem likely to have but limited effect on the substance of class action settlements, its jurisdictional and removal provisions will substantially change class action practice in the United States. Large numbers of cases that formerly could not be filed in or removed to federal court will now be removable, at the election of defendants.

Whether broadened federal jurisdiction over state-law based class actions will have its intended effect of limiting the types and numbers of cases that are able to proceed as class actions, of course, remains to be seen. In the meantime, however, we can expect to see defendants vigorously exercise the removal provisions while plaintiffs seek to work around them, testing the scope of the two-thirds/one-third provisions and experimenting with new ways to bring "mass actions" that avoid the effect of the law.

For everyone involved, a clear understanding of the terms of this complicated statute will be essential.

## ABOUT THE AUTHOR

**Scott L. Nelson**

Scott L. Nelson is a senior attorney at the Public Citizen Litigation Group in Washington, D.C. Before joining Public Citizen in 2001, Mr. Nelson was a partner in the Washington law firm Miller, Cassidy, Larroca & Lewin, LLP. Mr. Nelson's practice at Public Citizen covers a range of subjects, including class actions, regulation of hazardous products and substances, access to presidential records and Freedom of Information Act cases, federal administrative law, campaign finance regulation, and practice before the Supreme Court of the United States. While in private practice, Mr. Nelson was involved in a broad spectrum of appellate and trial-level litigation, including matters involving law firms, attorney ethics, judicial ethics, and arbitration. Mr. Nelson is co-chair of the Class Actions and Derivative Suits Committee of the Section of Litigation, American Bar Association.