FILED OFFICE

**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF MASSACHUSETTS**

2005 OCT 11  P 2: 01

U.S. DISTRICT COURT
DISTRICT OF MASS.

GERALDINE FAVALORO, for herself and on
behalf of all others similarly situated,

        Plaintiff,

vs.

        Case No. 05-11594 RCL
        Honorable Reginald C. Lindsay

PRESIDENT AND FELLOWS OF HARVARD
COLLEGE, BAYVIEW CREMATORY, LLC,
a New Hampshire Limited Liability Company,
LINDA STOKES, TRUSTEE OF THE DEKES
REALTY TRUST OF 107 SOUTH BROADWAY,
LAWRENCE, MASSACHUSETTS, and JOHN J.
GENTILE,

        Defendants.

_____/

## PLAINTIFF, GERALDINE FAVALORO'S COMBINED OPPOSITION TO MOTIONS TO DISMISS OF DEFENDANTS PRESIDENT AND FELLOWS OF HARVARD COLLEGE AND JOHN J. GENTILE

      Plaintiff, Geraldine Favaloro, by and through her undersigned counsel, files this

Combined Opposition to the Motions to Dismiss filed by the Defendants, President And Fellows

Of Harvard College, which is joined in part by Bayview Crematory, LLC, A New Hampshire

Limited Liability Company and Linda Stokes, Trustee of the Dekes Realty Trust of 107 South

Broadway, Lawrence, Massachusetts, and John J. Gentile. In support thereof, Plaintiff states the

following:

## I.
## Preliminary Statement

      Defendants, President and Fellows of Harvard College ("Harvard") and John J. Gentile

("Mr. Gentile") served their respective Motions To Dismiss and Supporting Memorandum Of Law by mail on August 16, 2005.[1] Many of the arguments in the Defendants' respective Motions To Dismiss incorporate similar, if not identical, legal argument. Some argument is unique to each individual Defendant. Accordingly, and in the interests of clarity and non-duplication of argument, Ms. Favaloro has addressed identical or similar argument in each section of this Combined Opposition, with due regard for any individualized considerations.

## II.
## The Motions To Dismiss Should Be Denied

The Motions to Dismiss of Harvard and Mr. Gentile should be denied. The statute in question simply does not apply to the facts as set forth in Ms. Favaloro's Class Representation Complaint. Specifically, the immunity asserted by the Defendants has been restricted in its application to situations in which "consent" to organ/tissue donation is at issue. In fact, the *Carey* case relied upon by the Defendants, as well as the cases in other jurisdictions upon which *Carey* relies, deal solely and exclusively with "consent" issues. The claims of Ms. Favaloro and the putative class members do not deal with "consent" issues, but rather are based upon the Defendants' acts of omission and commission relating to their failure to "dispose of it [the donee's body] in accordance with the terms specified by the donor", as required by the Massachusetts Anatomical Gift Act ("AGA") and as appear in Harvard's voluntary undertakings with the donor/putative class members. The Class Representation Complaint's allegations of wrongful acts of omission and commission preclude application of the statutory good faith defense on these claims. The "good faith" defense should not be interpreted to apply in these

---

[1] The Defendants, Bayview and Stokes, Trustee, have asserted one ground for dismissal of the claims against them as set forth in their respective Partial Joinders to Harvard's Motion to

CHARLIP LAW GROUP, LC
1930 Harrison Street, Suite 208, Hollywood, Florida 33020
TEL: 954.921.2131   FAX: 954.921.2191

circumstances, much less in the absolute, unyielding manner advanced by Harvard and Mr.

Gentile. The Massachusetts case law relied upon by the Defendants, and the cases relied upon by

that Superior Court interpreting the concept of "good faith" as found in most versions of the

Uniform Anatomical Gift Act, clearly establish the limited situation in which the good faith

defense is to apply. Finally, each of the cases relied upon by the Defendants has applied the good

faith defense as part of summary disposition motions and not at the pleading stage. As more

particularly set forth below, the Class Representation Complaint filed by Ms. Favaloro, and the

class definition contained in that Complaint, set out a markedly different set of underlying facts

from those applying the asserted good faith defense. For these basic reasons, the Motions to

Dismiss should be denied.

## III.
## The Massachusetts AGA's "Good Faith" Defense Is Inapplicable To The Claims Of Ms. Favaloro And The Putative Class

The statute upon which Harvard and Mr. Gentile base their good faith defense is

Massachusetts General Laws, Part I. ("Administration of Government"), Title XVI ("Public

Health"), Chapter 113 ("Promotion of Anatomical Science"), § 13 ("Acceptance or rejection of

gift by donee; disposition or disposal of bodies and tissues; determination of time of death;

criminal and civil liability"), which states in part:

> *(c) A person who acts in good faith in accordance with the terms*
> *of sections seven to thirteen, inclusive, or under the*
> *anatomical gift laws of another state or a foreign country shall*
> *not be liable for damages in any civil action or be subject to*
> *prosecution in any criminal proceeding for his act.*

Without more, and relying wholly and exclusively on some limited and particular language from

Dismiss. Opposition is included herein below.

the case of *Carey v. New England Organ Bank*, 17 Mass.L.Rptr. 582, 2004 WL 875623 (Mass.

Super. April 23, 2004), Harvard and Mr. Gentile assert that they have no liability to Ms. Favaloro

and the putative class. Ms. Favaloro, however, asserts that a preceding portion of the same

statute sets forth language highly salient to the application of the asserted defense, which is, in

fact, fatal to that defense. Particularly, § 13(a) provides in part:

> *If the donee is responsible for the disposition of the body, he shall*
> *dispose of it in accordance with the terms specified by the donor,*
> *or if no such terms are specified, he shall have said body decently*
> *buried or cremated.*

As demonstrated below, when § 13 is read the context of *Carey*'s underlying facts and the

facts in the cases upon which the *Carey* court relied, it is clear that the claims asserted by Ms.

Favaloro and the putative class are not properly subject to the asserted good faith defense.

## IV.
## The Favaloro Class Representation Complaint

The Favaloro Complaint contains six (6) counts against four (4) defendants. Count II

asserts a claim against Harvard for negligence in the performance of its written and statutory

duties to the decedent/donors in performing cremations, particularly in the investigation and

selection of a proper, legal, authorized and approved crematory. The claims of negligence

asserted against Harvard by Ms. Favaloro and the putative class members are not only based on

Harvard's direct negligence, but also upon a *respondeat superior* theory for the acts and

omissions of its agent, John J. Gentile.[2] *See* Complaint, ¶¶ 9, 23 70, 71 and 72. In addition to its

---

[2] Mr. Gentile is a licensed funeral director in the Commonwealth of Massachusetts who was paid per body by Harvard for the facilitation of the cremation of the donors to it's Anatomical Gift Program. These donors specifically instructed Harvard to cremate their anatomical remains after Harvard had completed its studies. Complaint, ¶¶ 18 and 19.

CHARLIP LAW GROUP, LC
1930 Harrison Street, Suite 208, Hollywood, Florida 33020
TEL: 954.921.2131  FAX: 954.921.2191

duty to provide a reverent disposition in accordance with the donor's instructions, the Complaint alleges that Harvard had a duty to determine that the facilities used for cremation were authorized and approved, as well as operated properly in accordance with the standards of the industry. *See* Complaint, ¶ 60. The Complaint further alleges that neither Harvard directly or through its agent conducted any investigation and failed to observe the appropriate due diligence required by national associations. *See* Complaint, ¶¶ 62 and 63.

Of major significance to the good faith defense asserted by Harvard and Mr. Gentile, the Complaint specifically asserts that Harvard failed to observe its obligations to the decedent/donors under § 13 of the AGA. (*See* Complaint, ¶¶ 19, 24, 34, 38, 40(e), 40(r), and 64). Counts IV and V are asserted against all Defendants for negligent infliction of emotional distress and reckless/intentional infliction of emotional distress, respectively.

## V.
## Harvard's "Duties"

Harvard, as well as its agents, servants, and employees, have duties to the donor. These duties arise from two separate, but related, bases. The first is Harvard's statutory duty as donee under § 13(a) of the AGA. The second is found in the undertakings assumed by Harvard and represented to the donor to be part of Harvard's Anatomical Gifts Program ("AGP").

### Harvard's "Statutory Duties"

Subsection (a) of § 13 imposes a statutory duty on Harvard. This statutory duty is that Harvard, as donee, is "responsible for the disposition of the body". The duty is mandatory in that the donee "shall dispose of it in accordance with the terms specified by the donor". It is undisputed that Harvard, as the donee, was responsible for the disposition of Ms. Frontiero's body. Ms. Frontiero's instructions in Harvard's "Disposition of Anatomical Remains" form

CHARLIP LAW GROUP, LC
1930 Harrison Street, Suite 208, Hollywood, Florida 33020
TEL: 954.921.2131   FAX: 954.921.2191

Case 1:05-cv-11594-RCL    Document 37    Filed 10/20/2005    Page 6 of 26
Favaloro's Combined Opposition                                            05-11594 RCL

specifically sets forth her terms of donation to include "CREMATION and return of remains to next-of-kin or executor by registered U.S. Mail at the expense of Harvard Medical School." *See* Complaint, ¶¶ 18 and 19; Exhibit "D".[3]  It is alleged that Harvard did not comply with the statutory duty.

## Harvard's Duties As Evidenced In Its Undertakings

In addition to the duties imposed upon Harvard under the AGA, Harvard has unilaterally assumed particular undertakings in the form of duties and responsibilities to the donors and their families under its AGP. These duties are clearly set forth in the attachments to the Complaint relating to Ms. Frontiero's gift. Harvard's "Brochure" to the prospective donor (Exhibit "B") contains language that makes the Brochure an integral part of the donative documents.[4]  It also makes a declaration of financial commitment to the donor for "cremation at the expense of the school" and supports the religious questions related to the gift by "assuring the reverent disposition of the remains". Harvard's "Disposition" form (Exhibit "D") is framed precisely in the form of instructions to the Harvard Medical School and solicits all of the information that Harvard would need in order to comply with those instructions. These undertakings were drafted by Harvard for use in its AGP. Even without the existence of the statutory duty imposed upon Harvard by § 13(a), the same standard of care imposed upon Harvard would arise by virtue of these voluntary undertakings.

---

[3] In fact, Harvard's form reads "I do herein instruct Harvard Medical School to complete the following instructions for the final disposition of the anatomical remains." (Complaint, Exhibit "D").

[4] The Brochure conspicuously states "RETAIN THIS BROCHURE WITH DONOR COPY OF INSTRUMENT OF ANATOMICAL GIFT FORM." "Please share the information in this

6
CHARLIP LAW GROUP, LC
1930 Harrison Street, Suite 208, Hollywood, Florida 33020
TEL: 954.921.2131   FAX: 954.921.2191

## VI.
### *Carey* Is Distinguishable From This Case

Both Harvard and Mr. Gentile place great reliance on the holding in *Carey, supra.* Ms. Favaloro asserts that a detailed reading of *Carey* clearly demonstrates that it is distinguishable from the case at bar as to the basis for the claims asserted and because *Carey*'s enunciated public policy reasoning precludes application of the good faith defense in this case.

Adam Carey was involved in an accident and was subsequently pronounced dead at the hospital. An organ bank representative obtained the verbal consent of Adam's father to harvest Adam's tissue and organs. The decedent's tissue and organs were harvested, but ultimately could not be used because of the hemodilution of Adam's blood. The parents sued in negligence, arguing that the hemodilution test should have been performed prior to the harvesting. The defendant organ bank and the defendant eye and tissue bank moved for summary judgment asserting immunity under the Massachusetts AGA. In granting summary judgment, the Court noted the definition of "good faith", as previously established in *Nicoletta v. Rochester Eye and Human Parts Bank, Inc.*, 136 Misc.2d 1065, 519 N.Y.S.2d 928 (N.Y. Sup.Ct. 1987). However, in discussing how and when the objective standard of "good faith" found in *Nicoletta* could be applied, the Court stated that "while it is possible for the court to resolve the issue of good faith on summary judgment, the court can only do so in the absence of genuine issues of material fact." *Carey*, 2004 WL at \*4, citing *Sattler v. Northwest Tissue Center*, 42 P.3d 440, 445 (Wash.App.Div.1, 2002). Later in the decision, the Court recognizes the importance of uniformity and encouragement of organ donation and "adopts the position that, **absent disputed issues of material facts**, good faith can be determined as a matter of law." *Carey*, 2004 WL at \*5. (Emphasis added). Here, the parties have not proceeded to the point where the allegations of

the Complaint have been accorded consideration of issues of material fact and to what extent

they are disputed. More importantly, the _Carey_ Court set forth specific policy reasons for a

broad application of good faith immunity under the UAGA, none of which are applicable here.

Particularly, the Court noted that the UAGA is:

> designed to balance two competing policy interests. There is the
> need for donations of eyes and other organs for transplantation and
> research purposes. Time is usually of the essence in securing
> donated organs at the time of the donor's death. The Act allows
> hospitals and physicians to ascertain with a high degree of certainty
> when someone is willing to donate organs, and to arrange for the
> prompt removal and preservation of donated organs. The Act also
> recognizes the religious and moral sensibilities of those who do not
> wish to donate organs. The act does not compel organ donations
> nor does it establish a presumption that organs will be donated.
> **The good faith exception to civil and criminal liability is**
> **designed for situations . . . where because of confusion, an**
> **organ is removed without genuine consent.**

_Carey_, 2004 WL at *9, citing _Lyon v. United States_, 843 F.Supp. 531, 536 (D.Minn.1994).

(Emphasis added). The Court cited other policy reasons, including certainty of consent "at the

most difficult of times. Accordingly, previous cases, discussing the UAGA good faith immunity

provision involves organ recovery absent genuine consent or beyond the scope of consent."

_Carey_, 2004 WL at *9. Finally, the Court noted that very often the concerns of those awaiting

transplant of organs come into play and when consent is given, the donors are consenting to

allow the use of the decedent's organs to save the life of another.

> The legislature has balanced these frequently countervailing
> concerns by immunizing defendants from liability when they have
> satisfied the requirements of the UAGA, and made a good faith
> effort to recover and transplant a donor's organs and tissue. Given
> the overarching, vital public interest in facilitating organ and tissue
> donation, reflected in the UAGA, courts have allowed some leeway
> when construing the applicability of the UAGA's good faith
> immunity.

_Carey_, 2004 WL at *10.

CHARLIP LAW GROUP, LC
1930 Harrison Street, Suite 208, Hollywood, Florida 33020
TEL: 954.921.2131    FAX: 954.921.2191

Ms. Favaloro asserts that the policy reasoning behind the *Carey* Court's holding for the broad application of the good faith immunity is a "consent-driven" consideration. It is clear that the issue of Richard Carey's "consent" to the recovery of his son's tissue and organs was the seminal act within which the good faith actions of the Defendants were framed. Conversely, here, there are no consent issues. In fact, the allegations of the Complaint are framed inapposite to any issue of consent. It is Harvard's response to the instructions of the donor, not the donor's consent, upon which liability is based. Of significant import is the fact that, as discussed in the ensuing sections of this Opposition, virtually every case decided in the United States on the good faith defense set forth in the various enacted versions of the UAGA, relates to the issue of "consent". Also discussed below is the case of *Schembre v. Mid-America Transplant Association*, 135 S.W.2d 527 (Mo.App.E.D. 2004), not cited by Harvard or Mr. Gentile, which makes the very distinction upon which Ms. Favaloro relies herein.

## VII.
## The Cases Relied Upon By *Carey* Are Also Distinguishable

In *Carey*, as well as in all of the cases relied upon by the Superior Court in *Carey*, the appellate court reviewed the grant of summary judgment as dispositive of the claims based upon the good faith defense. Each case relied upon the development of the underlying facts to the point where each court could properly determine the context of the application of the "good faith" defense. **No case** has held that the mere existence of the statutory language was the proper basis for dismissal at the pleading stage. Additionally, each of these cases applies the objective standard of "good faith" in the context of disputed or mistaken consent. Neither of these very salient considerations are present in this case.

The first case to discuss the concept of a good faith defense based upon the provisions of the UAGA was *Nicoletta v. Rochester Eye and Human Parts Bank, Inc.*, 136 Misc.2d 1065, 519 N.Y.S.2d 928 (N.Y. Sup.Ct. 1987). *Nicoletta* involved the removal of the decedent's eyes following a fatal motorcycle accident. The decedent's father sued the eye bank and hospital for physical and emotional distress. Both defendants moved for summary judgment under the good faith defense available under New York's AGA. The developed facts demonstrated that the decedent's co-resident and mother of his two children had come to the hospital and signed a consent, as his wife, to harvest the decedent's eyes. She was not married to the decedent. The Court noted that the eye bank removed the eyes in "justified reliance" on a written permission form provided by the hospital and that the eye bank had "no actual notice" that the gift was opposed by a class of persons within the AGA. Of particular application to this case, and adding weight to Ms. Favaloro's claims, unrelated to any consent issue, the Court found that:

> It is the position of this Court, based on the uncontroverted evidence produced at the Examination Before Trial, that the defendant-Hospital had neither actual nor constructive knowledge that Judy Shufelt was not who she said she was, to wit, Peter Nicoletta's wife. **The Hospital, by its agents, conducted a reasonable inquiry as to the identity of the purported wife, and having received a plausible response, had no reason to believe that any irregularity existed.**

*Nicoletta*, 519 N.Y.S.2d at 932. (Emphasis added). Here, the essential supporting allegations of the claims of Ms. Favaloro and the putative class members are that Harvard's duties based upon statute and operative undertakings have been breached. Further, and an essential element of the breach of those duties is Harvard's failure to conduct a reasonable inquiry into the nature of the entity it hired to perform the very act culminating the donor's instructions, to-wit, cremation.

In *Lyon v. United States, supra,* a dispute arose over whether or not a signed consent form

for donation of a decedent's eyes solicited by a new, resident physician at the hospital was valid. The Minnesota version of the UAGA, with the good faith defense, was asserted to bar a claim by the family against the eye bank. Relying on the decision in *Nicoletta, supra*, the Minnesota District Court concluded that the eye bank could not have known, in the face of a properly executed form, that the family had given no actual consent to the enucleation. It could not therefore be said that it acted in bad faith. In concluding, the Court used the language set forth in the *Carey* decision, stating **"The good faith exception to civil and criminal liability is designed for situations . . . where because of confusion, an organ is removed without genuine consent."** (Emphasis added).

Virtually every other case relied upon by the defendants has granted summary judgment based on the need to validate reasonably obtained consent. *See Kelly-Nevils v. Detroit Receiving Hospital*, 207 Mich.App. 410, 526 N.W.2d 15 (1994) (Summary judgment affirmed in favor of hospital that acted in good faith belief that person who authorized harvesting of decedent's organs was decedent's brother and only living relative)[5]; *Ramirez v. Health Partners of Southern Arizona*, 193 Ariz. 325, 972 P.2d 658 (1999) (Summary judgment affirmed where hospital social worker miscommunicated survivors' wishes regarding lack of consent to remove bone); *Andrews v. Alabama Eye Bank*, 727 So.2d 62 (Ala.1999) (Summary judgment affirmed where mother gave consent to harvest son's corneas and father later objected)[6]; *Rahman v. The Mayo Clinic*,

_____

[5] Significantly, the *Kelly-Nevils* Court noted the "reasonable inquiry" language of the *Nicoletta* Court, *supra*, and added *Nicoletta*'s explanation that requiring further action by the Hospital would "jeopardize the whole process of organ donation by causing unnecessary delays, thereby frustrating the entire intent of the Uniform Anatomical Gift Act." *Kelly-Nevils*, 526 N.W.2d at 19. Ms. Favaloro asserts that such temporal considerations play no role in her claims. Harvard can make no argument that time constraints involving disposition of the donor's remains in accordance with "terms specified by the donor" or whether they constitute a "reverent disposition" are time critical and thereby could impact on its duties under the AGA.

[6] Two points are significant to this case. First, Alabama law permitted **either** parent to consent

578 N.W.2d 802 (Minn.Ct.App. 1998) (Summary judgment affirmed on good faith defense under Minnesota AGA where donation permission form contained ambiguity). *Cf. Sattler v. Northwest Tissue Center*, 110 Wash.App. 689, 42 P.3d 440 (2002) (Summary judgment denied where material issues of fact existed as to whether procuring organization lacked an honest belief that surviving spouse had consented to removal of decedent's corneas and whether representative attempted to act in good faith in accordance with Act).

In point of fact, neither Harvard nor Mr. Gentile can direct this Court to any case that is dispositive of the claims made by Ms. Favaloro using the good faith defense.

## VIII.
## The *Schembre* Decision Is More Analogous To Favaloro's Claims

In addition to the cases relied upon by the Superior Court in *Carey*, the Missouri Court of Appeals, Eastern District, has ruled on the applicability of the good faith defense based upon its own state statute. Of particular import to Ms. Favaloro's claims is the distinction drawn by the Missouri Court with respect to claims presented under its AGA and claims based on ordinary negligence.   In *Schembre v. Mid-America Transplant Association*, 135 S.W.2d 527 (Mo.App.E.D. 2004), the decedent suffered a heart attack and was transported to the hospital. The decedent's wife and two sons were advised of his death and taken to a "quiet room". There, they were approached by a hospital employee about their willingness to consider bone, organ, or tissue donation. The widow agreed to the donation of the decedent's corneas, but did not agree to the use of the donated organs for research.   The hospital employee assisted the widow in completing a form that donated both eyes and bones. In reversing summary judgment on the

to the corneal harvesting, and second, the Alabama Supreme Court specifically noted that language of *Lyon* to the effect that the good faith exception was designed for situations ". . .

negligence claim against the hospital and the employee, the Court noted that the line of cases

discussed above applied the good faith defense under the UAGA "despite flaws with obtaining

consent or in erroneously completing the consent form." *Schembre*, 135 S.W.2d at 532.

Notwithstanding, the Missouri Court of Appeals held that the factual disputes relating to the

representations made by the hospital employee in the course of obtaining the consent created

credibility issues that could only be resolved by the "trier of fact". *Schembre*, 135 S.W.2d at 533.

It does not take a leap of faith to apply *Schembre*'s reasoning to Harvard's voluntary

undertakings, as set forth in its AGP documents.

*Schembre* clearly deals with issues more analogous to the claims of Ms. Favaloro and the

members of the putative class. Unlike the line of cases upholding the application of the good

faith defense under AGA wherein the issue relates to "consent" and where public policy and

temporal considerations play a major role, the claims set forth in Ms. Favaloro's Complaint are

not "consent-driven" communications and the actions of omission and commission asserted

against Harvard and Mr. Gentile all occurred both after the gift had been completed and Harvard

had made use of the donor's body. Good faith is simply not a consideration in the alleged

negligence asserted.

## IX.
## The Class Representation Complaint States Causes Of Action Against
## Harvard, Mr. Gentile, Bayview, and Stokes, Trustee

### The Standards For Reviewing A Motion To Dismiss

When reviewing a motion to dismiss, the Court accepts as true the factual allegations of

the complaint and construes all reasonable inferences therefrom in favor of the Plaintiff. *See*

---

where because of confusion, an organ is removed without genuine consent."

*Perry v. New England Business Service, Inc.*, 347 F.3d 343, 344 (1st Cir.2003) *citing Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16 (1st Cir.1998); *Swack v. Credit Suisse First Boston*, 383 F.Supp.2d 223 (D.Mass. 2004); *Raffaele v. Marrama*, 164 F.Supp.2d 224, 226 (D.Mass. 2001); *Wajda v. R.J. Reynolds Tobacco Company*, 103 F.Supp.2d 29, 32 (D.Mass. 2000); *Amari v. Brown & Williamson Tobacco Corporation*, 2000 WL 33976544, *1 (D.Mass. 2000). "When confronted with a motion to dismiss the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff. . . . 'Dismissal under Fed.R.Civ.P. 12(b)(6) is only appropriate if the complaint, so viewed, presents no set of facts justifying recovery'". *Blacksmith Investments, LLC v. Cives Steel Co., Inc.*, 228, F.R.D. 66, 71 (D.Mass.2005). "A motion to dismiss is subject to limited inquiry, focusing not on 'whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' . . Under Fed.R.Civ.P. 12(b)(6), a court may grant dismissal only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'". *Tolman v. Finnerman*, 171 F.Supp.2d 31, 35 (D.Mass. 2001). Applying these standards to Ms. Favaloro's Class Representation Complaint, dismissal would be improper.

**Ms. Favaloro And The Defined Class Are Proper Plaintiffs**

Ms. Favaloro and the Defined Class in the Complaint are proper parties to this action. One who mistreats the body of a dead person is liable in tort to the member of the family of such person who is entitled to the disposition of the body. *See Kelly v. Post Publishing Co.*, 327 Mass. 275, 98 N.E.2d 286 (1951).

**Harvard's Motion To Dismiss**

In addition to its argument that Ms. Favaloro's claims are barred by the Massachusetts AGA's good faith defense, Harvard asserts that the claims fail to allege essential elements of the

underlying causes of action. In what can only be taken as a tacit acknowledgment of the fact that virtually every case relied upon by the Defendant has been determined by summary judgment, Harvard creates a massive string citation directed only to the issue that Ms. Favaloro should not be permitted to conduct discovery "to unearth a factual basis for her claim", "as a fishing expedition", or "to show a minimal basis for the claim". (Harvard Memorandum, p. 7, n. 1). Further acknowledging that the allegations of Ms. Favaloro's Class Representation Complaint must be taken as true, Harvard then picks and chooses the allegations that it wants to acknowledge as true, omitting significant allegations against it to the effect that the Director of its Anatomical Gift Program provided documents to Ms. Frontiero evidencing Harvard's undertaking and promise to Ms. Frontiero that it "assured the reverent disposition" of her remains (Complaint, ¶15) as part of the "Religious Support" for her gift, and Harvard's undertaking to "comply with the donor's instructions regarding the disposition of the body" (Complaint, ¶16).

Harvard seeks to avoid its responsibilities to the families and loved ones of the donors by finger-pointing. It insists that the case arises from *Bayview's* wrongdoing. It states that the only allegations directed towards it relate to the failure to investigate. Ms. Favaloro's claims, as set forth in the Complaint, belie these assertions. Not only does Ms. Favaloro assert that Harvard, by virtue of § 13(a) of the AGA and its voluntary undertakings, had a duty to determine that it was properly carrying out its responsibilities, she has also alleged that it had a duty to assure that a proper "standard of care and regard for the handling and disposition" of the donor bodies was observed. (Complaint, ¶60). Thus, regardless of whether Bayview was properly licensed and approved by the State of New Hampshire, Ms. Favaloro asserts that Harvard's responsibilities for the "care and regard for the handling and disposition" of the donor bodies did not end

simultaneously with Harvard's scientific and humanitarian requirements (Complaint, ¶¶ 62 and 64). Such *hubris* is patently offensive to ordinary senses and denigrates the gift and sacrifice of the donors and their families!

Ms. Favaloro states causes of action for intentional infliction of emotional distress and negligent infliction of emotional distress against Harvard. Harvard mistakenly argues that the only basis upon which Ms. Favaloro could state a claim is by establishing Harvard's "intention" to inflict emotional harm. As stated in the *Agis* case cited on page 9 of Harvard's Memorandum, and the more recent decision of *Quinn v. Walsh*, 732 N.E.2d 330, 338 (2000), the Plaintiff need only establish that the defendant "knew or should have known that emotional distress was the result of his conduct". "Emotional distress is the natural and proximate result of knowing that the remains of a deceased family member have not been preserved as the family desired". *Kelly v. Brigham & Women's Hospital*, 51 Mass.App.Ct. 297, 745 N.E.2d 969 (2001). *See also Rubianogroot v. Swanson*, 13 Mass.L.Rptr. 276, 2001 WL 721664 (Mass.Super. 2001) (Noting that § 868 of the Restatement (Second) Torts (relied on in *Kelly*) applies not only to an intentional interference, but also to a reckless or merely negligent interference that prevents proper cremation). Harvard further argues that Ms. Favaloro has not alleged that its conduct rose to the level of "extreme and outrageous". In making this assertion, Harvard relies upon the allegations of negligence asserted against it in Count II of the Complaint, instead of those in Count V to the effect that Harvard's handling of Ms. Frontiero's body was "wantonly disrespectful and wholly disregarded the feelings of Ms. Favaloro and the Class members . . . leaving Ms. Favaloro and the class members with knowledge . . . that the remains of a deceased loved one and/or family member have not been preserved as desired". (Complaint, ¶ 94). The acts of the Defendants are alleged to be so devoid of propriety that the remains of the decedents

are "tainted and contaminated". (Complaint, ¶95). The heightened service to humanity by the donors' gift required treatment coincident with the Plaintiffs' belief that the Defendants would strictly observe the donors' instructions and make good on their assurance of a reverent disposition. (Complaint, ¶ 96). The mishandling of the bodies was horrendous and rose to the level of mutilation and desecration. (Complaint, ¶ 97). The conduct of the Defendants was at a minimum "reckless".    (Complaint, ¶ 98).    While Harvard may properly observe that the allegations of ordinary negligence asserted in Count II may not rise to the level of "extreme and outrageous" conduct, such allegations are not required. It is not likely that Harvard would make the same argument with regard to the allegations in Count V for intentional infliction of emotional distress.

Additionally, Harvard's assertions that Bayview's alleged illegal conduct constitutes a supervening, intervening event, breaking the chain of causation for its negligent acts should be rejected by this Court.    First, the cases cited in support of this argument are clearly distinguishable. The _Kanvanaugh_ case held that a college and its basketball coach could not be held liable for a punch thrown by a player. The _Luoni_ case determined that a homeowner could not be held liable for the negligent use of fireworks by a third person. These holdings are neither analogous nor authoritative to insulate Harvard from liability. A university and it's basketball coach's ability to devine the future physical acts of a student-athlete, and a homeowner's ability to determine how fireworks will be ignited by a third party are wholly different and distinct from the ability of Harvard and/or its agent to determine the licensed status, authority to operate, and manner of handling dead bodies by Bayview. Notwithstanding these clear factual differences, forseeability plays a critical role in the application of Harvard's argument. If Bayview's acts were foreseeable, the chain of causation remains intact; it is only broken by an "intervening event

of a type so extraordinary that it could not reasonably have been foreseen . . ." *Delaney v. Reynolds*, 63 Mass.App.Ct. 239, 242, 825 N.E.2d 554, 557 (2005).[7]  Interestingly, one of Harvard's own cited authorities tends to support Ms. Favaloro's argument regarding Harvard's voluntary undertakings. *See* Section V, *supra*. "It is an established principle that a duty voluntarily assumed must be performed with due care". *Mullins v. Pine Manor College*, 389 Mass. 47, 449 N.E.2d 331 (1983).

Finally, Harvard incorrectly asserts that Ms. Favaloro's negligent infliction of emotional distress claim must fail in that it does not allege mishandling of Ms. Frontiero's body. The Court is directed to ¶ 36 of the preliminary allegations of the Class Representation Complaint. More particularly, ¶ 84 of the Negligent Infliction of Emotional Distress Count specifically alleges that the "Defendants' handling of dead bodies was wantonly disrespectful; ¶85 asserts that the actions of the Defendants "were devoid of propriety" and resulted in the decedents' bodies being tainted and contaminated"; ¶86 states that Ms. Favaloro relied upon the Defendants "for the proper treatment and preservation of the remains of their deceased loved ones and/or family members, "; and ¶ 87 alleges that the actions of the Defendants "rose to the level of mutilation and desecration of the body". Harvard's Motion to Dismiss should be denied.

**Gentile's Motion To Dismiss**

Mr. Gentile's Motion to Dismiss incorrectly predicates its request for dismissal on a claim that is not set forth in the allegations of the Complaint. Particularly, Mr. Gentile's motion speaks of the negligence alleged by Ms. Favaloro as being based upon a duty to "verify" licensing of Bayview, when the allegations of the Complaint actually assert a duty to "determine"

---

[7] *Delaney* also noted that the issue of whether the risk of injury was foreseeable "is almost always one of fact". *Delaney*, 825 N.E.2d at 558.

CHARLIP LAW GROUP, LC
1930 Harrison Street, Suite 208, Hollywood, Florida 33020
TEL: 954.921.2131   FAX: 954.921.2191

that Bayview was a properly authorized and licensed facility. (Complaint, ¶ 73). Mr. Gentile's incorrect assertion that Ms. Favaloro's claims are based upon "a cause of action for alleged failure to verify a business license" is simple misdirection to this Court. Mr. Gentile does not assert any argument with respect to Ms. Favaloro's allegations that he had a duty to assure that his selection of a crematory on behalf of his principal, Harvard, required a standard of care consistent with the handling of the disposition of a dead body customarily accepted in his industry. (Complaint, ¶ 73). Similarly, Mr. Gentile does not comment on the allegations directed to him regarding his duty to observe the recommendations of his national industry associations regarding due diligence in selecting a crematory in order to avoid the very situation that exists in this case and giving rise to the damages occasioned to Ms. Favaloro and the putative class members. (Complaint, ¶ 73). Applying a "but for" standard to his conduct, the Complaint specifically alleges that had Mr. Gentile complied with these industry and national association standards of conduct, he would have determined the problems existing at Bayview and presumably avoided the asserted acts of negligence. (Complaint, ¶¶ 74, 76, and 77). Stated another way, Mr. Gentile's failure to do the most minimal investigation of the entity with which he and his principal were doing business with (as recommended by industry experts), made it foreseeable that his omission would have foreseeable adverse consequences for the Plaintiffs.

Next, Mr. Gentile incorrectly argues that Ms. Favaloro has failed to make the requisite allegations to support her claim for recovery under her claim for negligent infliction of emotional distress. This argument must also fail. First, like the cases cited as authority for the application of the "good faith" defense under Massachusetts AGA, *supra*, the *Sullivan* case relied upon by Mr. Gentile is a summary judgment case. In *Sullivan*, the Massachusetts Supreme Court reversed a summary judgment against the Plaintiffs' on their emotional distress claims on the basis that

the record, as developed through experts and discovery, made the requisite showing of associated physical manifestations to support the claims. The Court recognized its "duty to grant deserving plaintiffs a chance to present their case to a fact finder". *Sullivan*, 605 N.E.2d at 811. Further, the Court explained that "[b]oth plaintiffs may attempt to establish at trial that they satisfied the physical manifestation requirement . . ." *Sullivan*, 605 N.E.2d at 811. Notwithstanding the procedural, but nonetheless significant distinction between dismissal at the pleading stage and entry of summary judgment, Ms. Favaloro's negligence claim against Mr. Gentile does not require allegations other than duty (¶¶ 73 & 74), breach of that duty (¶¶ 75, 75, 77, & 78), proximate cause (¶ 79), and damage (¶ 79). Count III for damages based upon the ordinary negligence of Mr. Gentile states a cause of action.

Applying *Sullivan*'s pleading requirements to Count IV (Negligent Infliction of Emotional Distress), Ms. Favaloro's Class Representation Complaint clearly and expressly alleges that the conduct of the Defendants in the "acceptance, handling, treatment and disposition of the loved one and/or family member of each Putative Class Representative and member of the Classes, rose to the level of mutilation and desecration of the body, **occasioning indescribable mental pain and suffering to Ms. Favaloro and the Class members, also manifesting itself through significant physical consequences**". (Complaint, ¶ 97).[8]  *Cf. DiGiovani v. Latimer*, 454 N.E.2d 483 (1983) (Supreme Court affirmation of dismissal of emotional distress claim because plaintiff presented no evidence that she suffered physical harm resulting from a failure to inform).

Finally, Mr. Gentile incorrectly sets forth the standard governing the maintenance of Ms.

---

[8]  It is important to note that *Sullivan* did not require the Plaintiffs' medical experts to have observed the objective symptomology. Instead, in their professional judgment, they could rely on the Plaintiffs' description of their individual experiences. *Sullivan*, 605 N.E.2d at 810.

Favaloro's claim for intentional infliction of emotional distress.

> To prevail on [a] claim [based on this tort], [a] plaintiff[] must
> establish '(1) that the defendant intended to inflict emotional
> distress, or knew or should have known that emotional distress was
> the  result of his conduct, … (2) that the defendant's conduct was
> extreme and outrageous, beyond all possible bounds of decency,
> and utterly intolerable in a civilized community, (3) [that] the
> actions of the defendant were the cause of the plaintiff's distress,
> and (4) [that] the emotional distress suffered by the plaintiff was
> severe and of such a nature that no reasonable person could be
> expected to endure it.'

*Quinn v. Walsh*, 732 N.E.2d 330, 338 (2000) (Openly conducting an adulterous affair was not

sufficient outrageous conduct to support claim for intentional infliction of emotional distress).[9]

Mr. Gentile neglects to direct this Court to the case of *Bresnahan v. McAuliffe*, 712 N.E.2d 1173

(1999) where the Massachusetts Appeals Court reversed a summary judgment in favor of a

funeral home and against the parents of a stillborn baby for damages arising from both negligent

and intentional emotional distress due to the manner in which the funeral and burial services

were provided. The Court reversed a holding by the Superior Court precluding the parents from

introducing evidence supporting their intentional infliction of emotional distress as a discovery

violation sanction. " . . . we think the plaintiffs' submissions showed a reasonable expectation of

proving that the defendants' conduct was extreme and outrageous and that it had a severe and

traumatic effect upon their emotional health". *Bresnahan*, 712 N.E.2d at 1177. With respect to

the claim for negligent infliction of emotional distress, the *Bresnahan* court noted that the

physical harm requirement had been "refined" in *Sullivan*, *supra*, requiring the plaintiffs to

"corroborate their mental distress claims with enough objective evidence of harm to convince a

judge that their claims present a sufficient likelihood of genuineness to go to trial". *Bresnahan*,

---

[9]  The *Quinn* court noted that an extramarital affair may be reprehensible and a cause for sadness
and anger, but it did not rise to the level of extreme and outrageous conduct beyond the bounds

712 N.E.2d at 1177. Just like the claims and evidence in *Sullivan*, the requisite expert testimony did not need to be observed by the medical expert. (n. 6, *supra*). Here, the negligent infliction of emotional distress claim asserted against the Defendants speak in terms of each Defendants responsibility for the "proper handling of the remains" of Ms. Frontiero (Complaint, ¶83), the wanton disrespect, neglect, and inattention of the Defendants (Complaint, ¶ 84), the actions of the Defendants being "devoid of propriety" (Complaint, ¶ 85), the "heightened" duty owed to the Plaintiffs because of the nature of the services agreed to be performed (Complaint, ¶ 86), the "horrendous acceptance, handling, treatment and disposition" of the bodies (Complaint, ¶ 87), and the "indescribable mental pain and suffering . . . also manifesting itself through significant physical consequences" (Complaint, ¶ 87). While Mr. Gentile may wish to pursue the factual underpinnings of these allegations in discovery, it is wholly disingenuous for him to assert that such conduct, alleged against him, does not rise to the level of pleading to state a claim. Mr. Gentile's Motion to Dismiss should therefore be denied.

### Bayview and Stokes, Trustee's Partial Joinder

Defendants, Bayview and Stokes, Trustee, filed separate partial joinders in Harvard's Motion to Dismiss. Each of these partial joinders adopts the arguments set forth in Section II, C, 2, b of Harvard's Motion [Memorandum] to Dismiss asserting that Ms. Favaloro's Complaint fails to state a cause of action for negligent infliction of emotional distress because it does not allege that Ms. Frontiero's remains were mishandled. No other grounds for dismissal are asserted by these two defendants. Directly contrary to the argument adopted by Bayview and Stokes, Trustee from Harvard's Memo, and as noted in the preceding sections of this Opposition, the Count in Ms. Favaloro's Class Representation Complaint asserting a claim for negligent

---

of decency so as to support a claim for emotional distress.

infliction of emotional distress is directed to **all** of the Defendants and specifically alleges that each was "responsible for the proper handling of the remains of the decedent/donor" together with "the resulting horrendous acceptance, handling, treatment and disposition" based on the negligent acts of the Defendants. The dismissal requested by Bayview and Stokes, Trustee should be denied.

## Conclusion

Based upon the arguments and case authorities set forth herein above, Ms. Favaloro asserts that the good faith defense asserted by Harvard and Mr. Gentile is inapplicable to her claims and those asserted by the putative class members. Without exception, every case construing and applying the good faith defense has done so as part of a "consent" issue, only when there was a complete absence of disputed facts, and then only when the facts had been developed to the point where a request for summary judgment was under consideration. No case has ever held the good faith defense to be the basis for dismissal for failure to state a claim or cause of action. Additionally, the Class Representation Complaint contains all of the necessary and requisite allegations to state causes of action under the separate counts. Finally, the Partial Joinders of the Defendants, Bayview and Stokes, Trustee, with Section II, C, 2, b of Harvard's Memorandum must fail with Harvard's Motion. Accordingly, Ms. Favaloro respectfully requests that this Court deny all Motions to Dismiss.

## Request For Oral Argument

In accordance with Local Rule 7.1 (D), Ms. Favaloro, for herself and the putative class members believes that oral argument may assist the Court and desires to be heard on this matter.

Accordingly, counsel requests oral argument in support of this Opposition.

Respectfully Submitted,

Geraldine Favaloro,
Plaintiff and Putative Class Representative,
by her attorneys,

David H. Charlip
Admitted *Pro Hac Vice*
Florida Bar No.: 329932
1930 Harrison Street
Suite 208
Hollywood, Florida 33020
954.921.2131
954.921.2191 Facsimile

And

Lisa DeBrosse Johnson, BBO# 632428
The Pilot House
Lewis Wharf
Boston, MA 02110
(617) 854-3740

CHARLIP LAW GROUP, LC
1930 Harrison Street, Suite 208, Hollywood, Florida 33020
TEL: 954.921.2131    FAX: 954.921.2191

Favaloro's Combined Opposition                                      05-11594 RCL

### Certificate Of Service

I HEREBY CERTIFY that I caused a true and correct copy of the foregoing to be served upon counsel for all parties in the following manner:

### By E-mail Via the Court's ECF Facilities:

Donald R. Frederico, Esq.
Greenberg Traurig, LLP
One International Place
Boston, Massachusetts 02110
*Counsel for President and Fellows of Harvard College*

Edward P. Leibensperger, Esq.
Melissa L. Nott, Esq.
McDermott Will & Emery LLP
28 State Street
Boston, Massachusetts 02109
*Counsel for President and Fellows of Harvard College*

Douglas A. Robertson, Esq.
Martin, Magnuson, McCarthy & Kenney
101 Merrimac Street
Boston, Massachusetts 02114
*Counsel for John J. Gentile*

Andrew R. Schulman, Esq.
Dona Feeney, Esq.
Getman, Stacey, Schilthess & Steere, P.A.
3 Executive Park Drive, Suite 9
Bedford, New Hampshire 03110
*Counsel for Bayview Crematory, LLC*

Mandi J. Hanneke, Esq.
Clark, Hunt & Embry
55 Cambridge Parkway
Suite 410
Cambridge, Massachusetts 02142
*Counsel for Linda Stokes*

CHARLIP LAW GROUP, LC
1930 Harrison Street, Suite 208, Hollywood, Florida 33020
TEL: 954.921.2131    FAX: 954.921.2191

**By U.S. Mail, First Class Postage Prepaid:**

William F. Ahern, Esq.
Clark, Hunt & Embry
55 Cambridge Parkway
Suite 410
Cambridge, Massachusetts 02142
*Counsel for Linda Stokes*

Lisa DeBrosse Johnson

CHARLIP LAW GROUP, LC
1930 Harrison Street, Suite 208, Hollywood, Florida 33020
TEL: 954.921.2131   FAX: 954.921.2191