## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GERALDINE FAVALORO, for herself and on behalf of all others similarly situated, | ) ) ) | Case No. 05-11594 RCL |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| PRESIDENT AND FELLOWS OF HARVARD COLLEGE, BAYVIEW CREMATORY, LLC, a New Hampshire Limited Liability Company LINDA STOKES, Trustee of the Dekes Realty Trust of 107 South Broadway, Lawrence, Massachusetts, and JOHN J. GENTILE | ) ) ) ) ) ) ) | |
| Defendants | ) | |

## REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS BY PRESIDENT AND FELLOWS OF HARVARD COLLEGE

### I.    INTRODUCTION

Plaintiff opposes the motion to dismiss by President and Fellows of Harvard College ("Harvard") contending that (a) the immunity set forth in the Massachusetts Uniform Anatomical Gift Act ("UAGA") should be narrowly construed to apply only to the "consent" element of the statute; and (b) plaintiff's generic allegations against all "defendants" are sufficient to state claims for infliction of emotional distress against Harvard. The plain language of the UAGA invalidates plaintiff's first argument and established precedent refutes plaintiff's second argument. Plaintiff's complaint against Harvard should be dismissed in its entirety.

## II.    ARGUMENT

### A.    THE MASSACHUSETTS UNIFORM ANATOMICAL GIFT ACT PROVIDES IMMUNITY TO HARVARD FROM PLAINTIFF'S CLAIMS

Plaintiff ignores the plain language of the Massachusetts UAGA when she argues that it "simply does not apply" to her complaint.  Plaintiff, Geraldine Favaloro's Combined Opposition to Motions to Dismiss of Defendants President and Fellows of Harvard College and John J. Gentile ("Opposition") at p. 2.  Her argument attempts to restrict the statute in the face of clear legislative intent to provide immunity to a university, such as Harvard, for the salutary operation of an anatomical gift program.  Moreover, plaintiff mischaracterizes the holding in *Schembre v Mid-America Transplant Association* to support her strained distinction.  Opposition, p. 12.  As described below, the Massachusetts UAGA provides complete immunity to Harvard from plaintiff's claims unless Harvard acted in bad faith, an assertion notably lacking in plaintiff's complaint.

### 1.    The Plain Language of the Massachusetts Uniform Anatomical Gift Act Provides Immunity to Harvard from Plaintiff's Claims

In her Opposition, plaintiff contends that "the immunity asserted by the Defendants has been restricted in its application to situations in which 'consent' to organ/tissue donation is at issue."  Opposition at p. 2.  Neither the statute nor the case law provides any such restriction.

The Massachusetts UAGA is contained in a comprehensive statute entitled "Promotion of Anatomical Science."  *See,* M.G.L. ch. 113 §§ 1-14.  A "qualified donee" of gifts of bodies or parts thereof includes, specifically, a university or accredited medical school, for education, research, advancement of medical or dental science or therapy.  M.G.L. ch. 113, § 9.  The section of the statute that provides immunity states the following:

> A person who acts in good faith in accordance with the terms of sections seven to thirteen, inclusive, or under the anatomical gift

> laws of another state or a foreign country shall not be liable for
> damages in any civil action or be subject to prosecution in any
> criminal proceeding for his act.

M.G.L. ch. 113 § 13(c). The "act" of Harvard complained about by plaintiff is the manner of

disposition of the body of Ms. Frontiero. That "act" is covered by "sections seven to thirteen

inclusive" of the statute. In fact, it is Section 13(a) of the statute that specifically states "[i]f the

donee is responsible for the disposition of the body, he shall dispose of it in accordance with the

terms specified by the donor …." M.G.L. ch. 113 § 13(a). It is beyond doubt that the immunity

provision of the statute covers Harvard's "acts" pursuant to Section 13(a). By plaintiff's own

account, Harvard arranged for the disposition of her mother's body through a Massachusetts

licensed funeral director, who in turn arranged for the actual cremation. Nothing in the process,

as documented in the papers attached to the Complaint showing how the body was transported,

cremated and the cremains returned, suggests that anything about this process was other than

routine.

"[W]hen the statute's language is plain, the sole function of the courts … is to enforce it

according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S.

1, 6 (2000); *see also, Chatman v. Gentle Dental Ctr.,* 973 F. Supp. 228, 238 (D. Mass. 1997)

(Lindsay, J.)("If the words are a clear expression of congressional intent, the inquiry need go no

further."). Harvard is a qualified donee under the Massachusetts UAGA and has immunity from

civil liability for good faith actions in accordance with the UAGA.

Plaintiff's attempt to marginalize *Carey v. New England Organ Bank*, a case holding that

good faith immunity may be decided as a matter of law, by suggesting that it applies only to a

- 3 -

dispute concerning consent for organ donation, is unavailing.[1]  Other than the fact that *Carey*

happened to involve issues of consent for a transplant, nothing in the case limited the court's

reading of the UAGA.  The mere fact that the court did not address other "acts" under the statute,

not relevant to the resolution of *Carey*, hardly can be used to support a restrictive reading of the

statute.

There is no basis for plaintiff's cramped reading of the statute.  Harvard is entitled to

immunity for the "act" of disposition of Ms. Frontiero's body, subject only to proof that Harvard

acted in bad faith.  Here, plaintiff does not, because she cannot, allege bad faith as to Harvard or

any facts that might even suggest a basis to allege bad faith.

Good faith under the Massachusetts UAGA can be determined as a matter of law.  *See*

*Carey*, 2004 Mass. Super. LEXIS 132 at *14.  Good faith is defined as "an honest belief, the

absence of malice, and the absence of a design to defraud or to seek an unconscionable

advantage."  *Id.* at *15.  Where no "bad faith" is pleaded, and no facts are pleaded that could

support an inference of bad faith, the Complaint must be dismissed under the UAGA.  *See*

*Jacobsen v. Marin Gen. Hosp.*, 963 F.Supp. 866, 873 (N.D. Cal. 1997), *aff'd,* 192 F.3d 881 (9th

Cir. 1999) (dismissing claim upon Rule 12(b)(6) motion, holding that "[p]laintiffs have not

---

[1] The cases decided under other states' UAGA happen to involve issues of consent regarding organ transplant, but by no means can or should be read to mean that the UAGA only provides immunity in situations related to consent for organ donation.  Indeed, the UAGA immunity is significantly broader and its plain language applies to universities engaged in education and research, not transplants.  It is rarely, if ever, the case that a university would engage in organ transplants, yet universities are specifically included in the UAGA.  Plaintiff selectively emphasizes language in the consent cases discussing a defendants' "reasonable inquiry" regarding consent.  Opposition, p. 10-12.  The UAGA sets forth a hierarchy of relatives who may give consent for organ donation.  *See* M.G.L. ch. 113, § 8(b); 105 Mass. Code Regs. 800.030 (1994).  The cases discussing "reasonable inquiry" involve instances where an individual represented that they had authority to consent to organ donation, where they were not in fact so authorized.  *See Nicoletta v. Rochester Eye & Human Parts Bank, Inc.*, 519 N.Y.S.2d 928, 932 (N.Y. Sup. Ct. 1987) (girlfriend posing as wife gave consent); *Kelly-Nevils v. Detroit Receiving Hosp.*, 526 N.W.2d 15 (Mich. Ct. App. 1994) (friend posing as brother gave consent).  The UAGA does not set forth any procedure for Harvard's disposition of donor remains, requiring only good faith efforts to meet the terms specified by the donor.  *See* M.G.L. ch. 113, § 13.

- 4 -

alleged any facts showing that defendants violated the provisions of the Gift Act or acted

contrary to the purposes for which it was enacted by the California legislature.").

### 2.    Alleged Negligence Can Not Abrogate Harvard's UAGA Immunity

Plaintiff relies on *Schembre v. Mid-America Transplant Association,* to argue that

"[g]ood faith is simply not a consideration in the alleged negligence asserted." Opposition, p.

13. Plaintiff claims that the *Schembre* court drew a distinction "with respect to claims presented

under [the Missouri Anatomical Gift Act] and claims based on ordinary negligence." *Id.* at 12.

Plaintiff goes on to postulate that "[i]t does not take a leap of faith to apply *Schembre's*

reasoning to Harvard's voluntary undertakings ..." *Id.* at 13.

Plaintiff omits a central, critical element from her analysis of the *Schembre* case. Unlike

the Massachusetts UAGA which provides immunity where a qualified donee "acts in good faith

in accordance with the terms" of the act, the Missouri UAGA states:

> A person who acts <u>without negligence and in good faith</u> and in accord
> with the terms of this act or with the anatomical gift laws of another state
> or foreign country is not liable for damages in any civil action or subject to
> prosecution in any criminal proceeding for his [or her] act.

*Schembre v. Mid-America Transplant Ass'n,* 135 S.W.3d 527, 531 (Mo. Ct. App. 2004) (*quoting*

Section 194.270.3 RSMo (1996)) (emphasis added). The *Schembre* court was thus required to

analyze the negligence allegations as distinct from good faith, under the Missouri UAGA. *Id.* at

533 (granting immunity to Mid-America Transplant Association finding that it acted without

negligence and in good faith; denying summary judgment to the hospital defendants finding

genuine dispute of material fact regarding hospital's negligence).

Thus, the *Schembre* court dealt with a very different statute from the Massachusetts

UAGA, making that decision completely inapposite. To avoid application of the Massachusetts

UAGA's good faith immunity, plaintiff must make "more than a showing of mere negligence, lest the Legislature's intent to protect organizations enabling organ donation and transplantation be frustrated." *Carey,* 2004 Mass. Super. LEXIS 132 at *20; *see also, Ramirez v. Health Partners,* 972 P.2d 658, 662 (Ariz. Ct. App. 1998)(holding that the Arizona UAGA was intended to immunize acts or omissions where the donee made a good faith effort to comply with the procedures set forth in the Act).

### B.   PLAINTIFF HAS NOT STATED CLAIMS FOR NEGLIGENT OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

As set forth in Harvard's Motion to Dismiss, plaintiff's Complaint makes general allegations against all defendants and artfully avoids specifically alleging that Ms. Frontiero's remains were mishandled by a named party. As an independent ground for Harvard's motion, in addition to the immunity provided by the UAGA, plaintiff has not met her pleading burden on these claims and her Complaint should be dismissed.

#### 1.   Plaintiff does not Specify Extreme or Outrageous Conduct by Harvard

The standard for making a claim of intentional infliction of emotional distress is very high and "imposes a substantial burden upon a plaintiff seeking relief…." *LaManque v. Massachusetts Dep't of Empl. & Training,* 3 F.Supp. 2d 83, 94 (D. Mass. 1998) (Lindsay, J.); *see also, Doyle v. Hasbro, Inc.,* 103 F.3d 186, 195 (1st Cir. 1996); *Caputo v. Boston Edison Co.,* 924 F.2d 11, 14 (1st Cir. 1991). In her Opposition, plaintiff directs the Court to the general allegations she makes against all "defendants" in Count V, but still does not identify any conduct by Harvard that rises to the level of extreme or outrageous conduct "beyond all possible bounds of decency and utterly intolerable in a civilized community." *LaManque,* 3 F.Supp. 2d at 94.

BST99 1476936-3 044541 0032

While the Court must accept plaintiff's factual allegations as true for purposes of this motion, it need not credit plaintiff's "conclusory descriptions of a general scenario which could be dominated by unpleaded facts." *Schaer v. Brandeis Univ.*, 432 Mass. 474, 477-78 (2000) (*quoting, Judge v. City of Lowell,* 160 F.3d 67, 77 (1st Cir. 1998)); *see also, United States ex rel Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 224 (1st Cir. 2004) ("[W]e reject claims that are made in the complaint if they are 'bald assertions' or 'unsupportable conclusions.'"). Plaintiff's allegations against "defendants" generally, do not state extreme or outrageous conduct by Harvard which Harvard knew or should have known would result in plaintiff's severe emotional distress. Plaintiff's claim for intentional infliction of emotional distress must be dismissed.

### 2. Plaintiff does Not State a Claim for Negligent Infliction of Emotional Distress

As set forth in Harvard's Motion to Dismiss, plaintiff's claim for negligent infliction of emotional distress does not state a cognizable claim. Moreover, it is barred by the doctrine of intervening criminal acts. *See Kavanagh v. Trs. of Boston Univ.*, 440 Mass. 195, 201 (2003). These are separate and independent grounds for dismissal, in addition to the immunity provided by the Massachusetts UAGA.

### C. PLAINTIFF IS NOT ENTITLED TO A DISCOVERY FISHING EXPEDITION

Plaintiff crafted a detailed complaint and attached multiple exhibits setting forth Harvard's treatment of Ms. Frontiero's remains, yet nowhere did she allege any bad faith, or extreme or outrageous conduct by Harvard. No allegation in the Complaint supports a theory that Harvard's actions were dishonest, malicious or designed to defraud or seek an

- 7 -

unconscionable advantage. *See Carey,* 2004 Mass. Super. LEXIS 132, at \*15 (setting forth the definition of good faith under the UAGA).

Plaintiff may not allege unsupportable claims against Harvard and hope that discovery ultimately lends some support for her claims. *See Eastern Food Servs , Inc  v  Pontifical Catholic Univ  Servs  Ass'n,* 357 F.3d 1, 9 (1st Cir. 2004) (affirming dismissal of claim under Rule 12(b)(6) and noting that "discovery is not for fishing expeditions"). Plaintiff must outline specific facts supporting her claims before she is allowed to go forward to discovery. *See Cuddy v. Boston,* 765 F.Supp. 775, 776 (D. Mass. 1991) (holding that "the threshold for stating a claim may be low, but it is real"). "[R]ising litigation costs (and the associated impact of an improper threat of litigation) speak for requiring some specificity before permitting a claimant to drag a defendant past the pleading threshold." *Boston & Me  Corp  v  Hampton,* 987 F.2d 855, 865 (1st Cir. 1993).

Given Harvard's immunity from civil liability under the Massachusetts UAGA, the danger of allowing plaintiff to drag Harvard past the pleading threshold is particularly acute in this putative class action. One of the purposes of immunity is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit. *See Harlow v. Fitzgerald,* 457 U.S. 800, 816 (1982). A defendant's immunity is "recognized as an entitlement not to stand trial or face the other burdens of litigation…." *Mitchell v  Forsyth,* 472 U.S. 511, 526 (1985).

Plaintiff's Complaint and the exhibits attached thereto do not state a claim against Harvard. The conclusory allegations most assuredly do not demonstrate any bad faith by Harvard regarding the disposition of Ms. Frontiero's remains. Plaintiff should not be allowed to force Harvard into protracted litigation in a vain attempt to locate a cause of action.

BST99 1476936-3 044541 0032

## III.    CONCLUSION

For the reasons stated above, Harvard requests that the Court grant its Motion to Dismiss

plaintiff's Complaint.

Respectfully submitted,

PRESIDENT AND FELLOWS OF HARVARD
COLLEGE


By:  /s/ Edward P. Leibensperger
Edward P. Leibensperger (BBO #292620)
Melissa L. Nott (BBO #654546)
McDERMOTT WILL & EMERY LLP
28 State Street
Boston, Massachusetts 02109
(617) 535-4000

and

Donald R. Frederico (BBO #178220)
GREENBERG TRAURIG, LLP
One International Place
Boston, Massachusetts 02110
(617) 310-6000

Date:    October 25, 2005

BST99 1476936-3 044541 0032