## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GERALDINE FAVALORO, for herself and on behalf of all others similarly situated, | ) ) ) | Case No. 05-11594 RCL |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | |
| PRESIDENT AND FELLOWS OF HARVARD COLLEGE, BAYVIEW CREMATORY, LLC, a New Hampshire Limited Liability Company LINDA STOKES, Trustee of the Dekes Realty Trust of 107 South Broadway, Lawrence, Massachusetts, and JOHN J. GENTILE | ) ) ) ) ) ) ) ) | |
| Defendants | ) | |

### PRESIDENT AND FELLOWS OF HARVARD COLLEGE'S RESPONSE TO PLAINTIFF'S PROPOSED FINDINGS FOR ENTRY OF SEPARATE AND FINAL JUDGMENT

On March 29, 2006 the President and Fellows of Harvard College ("Harvard") moved for

entry of a separate and final judgment pursuant to Federal Rule of Civil Procedure 54(b).  On

May 4, 2006 the Court denied the motion without prejudice pending the filing of detailed

proposed findings.  Plaintiff filed proposed findings on May 9, 2006.  While Harvard does not

object to certain of the findings proposed by Plaintiff, some of the proposed findings require

clarification to accurately reflect the Court's reasons, as stated on the record at the December 19,

2006 hearing, for dismissing all claims against Harvard.

As an initial matter, Plaintiff's footnote 2 concerning the Massachusetts Supreme Judicial

Court's recent ruling in *Carey v New England Organ Bank, et al*, 446 Mass. 270 (2006) must be

addressed.  Contrary to Plaintiff's contention, the *Carey* case, decided after this Court's ruling

dismissing Harvard, did not alter the law with respect to good faith immunity under the

Massachusetts Uniform Anatomical Gift Act ("UAGA").  The Supreme Judicial Court affirmed

the Superior Court's grant of summary judgment, holding that the facts alleged were insufficient

to overcome the UAGA's immunity provision. *See Carey,* 446 Mass. at 285. The Supreme

Judicial Court, like the Superior Court before it, defined good faith under the UAGA as "an

honest belief, the absence of malice or the absence of a design to defraud or to seek an

unconscionable advantage over another." *Id.* at 282. The Supreme Judicial Court's decision

provides additional support for this Court's dismissal of the claims against Harvard.

The following are the findings proposed by Plaintiff at paragraph 6 of her Proposed

Findings and Harvard's position on each proposal:

> *Plaintiff's proposed finding at ¶ 6(a).* The Class Representation
> Complaint sets out separate claims for negligence against Harvard, John J.
> Gentile and Bayview. The claims for negligent infliction of emotional
> distress and intentional infliction of emotional distress are asserted against
> these three defendants, as well as Linda Stokes, Trustee.

Harvard does not object to this proposed finding.

> *Plaintiff's proposed finding at ¶ 6(b).* The claims against Harvard and
> John J. Gentile are further related because of the allegations of agency
> associated with the services provided by John J. Gentile for Harvard.

Harvard objects to this proposed finding and proposes the following instead: In her Complaint,

Plaintiff alleges that John J. Gentile, a licensed funeral director, was an agent of Harvard. *See*

Complaint at ¶23.

> *Plaintiff's proposed finding at ¶6(c).* The statutory immunity for "good
> faith" is only available to and was only asserted by Harvard and John J.
> Gentile. Other independent grounds for dismissal asserted by Bayview
> and Linda Stokes, Trustee were rejected.

Harvard does not object to this proposed finding.

> *Plaintiff's proposed finding at ¶6(d).* Ms. Favaloro had failed to plead
> acts of bad faith on the part of Harvard and John J. Gentile.

BST99 1502781-1 044541 0032

Harvard objects to the proposed finding and proposes the following: The facts alleged in Plaintiff's complaint against Harvard and Mr. Gentile allege nothing more than negligence. There are no allegations of bad faith by Harvard or Mr. Gentile. *See Dec. 19, 2005 Hearing Transcript* at p. 32-34, relevant pages attached as Exhibit A.

> *Plaintiff's proposed finding at ¶6(e).* The Court determined as a matter of law that Harvard and John J. Gentile had acted in "good faith" and were therefore entitled to statutory immunity.

Harvard objects to this finding as an inaccurate representation of the Court's holding, and proposes the following: The Court found that, making all inferences in favor of Plaintiff, Plaintiff nonetheless failed to suggest any set of facts that could give rise to an allegation of bad faith conduct by Harvard or Mr. Gentile. *Id* at p. 32-35. The Court accordingly dismissed the claims against Harvard and Mr. Gentile pursuant to the good faith immunity provision of the UAGA. *Id*

> *Plaintiff's proposed finding at ¶6(f):* The Court determined that any attempted amendment would be futile in that there were no set of facts that would avoid the statutory immunity.

Harvard objects to this proposed finding as an inaccurate representation of the Court's decision and proposes the following: The Court provided Plaintiff an opportunity to detail her proposed amended allegations against Harvard and Mr. Gentile. *Id.* at p. 46. Plaintiff was unable to identify any allegation against Harvard or Mr. Gentile that would amount to bad faith conduct. *Id* at p. 46-48. The Court accordingly dismissed all claims against Harvard and Mr. Gentile with prejudice and denied Plaintiff's request for leave to amend her complaint. *Id.* at p. 48.

> *Plaintiff's proposed finding at ¶6(g):* The dismissal of all claims against the party Defendants, Harvard and John J. Gentile, were dismissed with prejudice.

Harvard does not object to this proposed finding.

BST99 1502781-1 044541 0032

## Conclusion

Harvard requests that the Court enter a separate and final judgment in favor of Harvard pursuant to Federal Rule of Civil Procedure 54(b) accompanied by the specific findings as set forth above.

Respectfully submitted,

PRESIDENT AND FELLOWS OF HARVARD COLLEGE

By:/s/ Edward P. Leibensperger
    Edward P. Leibensperger (BBO #292620)
    Melissa L. Nott (BBO #654546)
    McDERMOTT WILL & EMERY LLP
    28 State Street
    Boston, Massachusetts 02109
    (617) 535-4000
    (617) 535-3800 (facsimile)

Date:   May 15, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic filing (NEF) and paper copies will be sent to those indicated as non registered participants on May 15, 2006.

/s/ Melissa L. Nott
Melissa L. Nott

BST99 1502781-1 044541 0032

## EXHIBIT A

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

---

GERALDINE FAVALORO,
                    Plaintiff,         Civil Action No. 05-11594-RCL

V.                                      December 19, 2005, 3:17 p.m.

PRESIDENT AND FELLOWS OF
HARVARD COLLEGE, ET AL,
                    Defendants.

---

TRANSCRIPT OF MOTION HEARING

BEFORE HONORABLE REGINALD C. LINDSAY

UNITED STATES DISTRICT COURT

JOHN J. MOAKLEY U.S. COURTHOUSE

ONE COURTHOUSE WAY

BOSTON, MA   02210

DEBRA M. JOYCE, RMR, CRR
Official Court Reporter
John J. Moakley U.S. Courthouse
1 Courthouse Way, Room 5204
Boston, MA   02210
617-737-4410

Page 30

1 failure to comply with the statute, which Mr. Charlip was
2 referencing
3        It's those claims that are protected by the
4 immunity; and, therefore, the case has to be dismissed against
5 Harvard
6        And it's -- the cases that I referenced to your
7 Honor, the MacKnight case in particular, suggest where good
8 faith is involved in the matter, that there's no -- that
9 there's no reason to proceed to discovery unless the plaintiff
10 has some colorable claim that would give rise to an inference
11 of bad faith because, ultimately, that's the issue of the case
12 and it should not proceed unless the plaintiff has some
13 colorable basis for that claim of bad faith
14        MR. ROBERTSON: Briefly, your Honor  We're in
15 federal court, everybody knows we have Rule 11, there's got to
16 be some basis for going forward here
17        THE COURT: There's a Rule 11 in state court, too,
18 isn't there?
19        MR. ROBERTSON: There is. It has a little different
20 connotation in my experience  Here we are in federal court
21 We've yet to hear, "They're not my mom's ashes; they're a
22 mixture of ashes"  We've yet to hear anything that actually is
23 wrong about what happened  Be that as it may, we have you
24 should have known more  Anybody who went into the cafeteria
25 downstairs may not have checked for a creamery license, a food

Page 31

1 license or lots of licenses  Maybe they were negligent, but
2 were they extremely outrageous in their conduct as taking on
3 faith that a business was doing business and they had a
4 transaction?
5        Instead, what we hear is doing business with
6 somebody in New Hampshire is in itself sort of -- there's a
7 presumption of nefariousness  I don't get that. That doesn't
8 come out of any law that I know of  Nor the implication here
9 that there was a better price to be had in New Hampshire
10 Saving a little money for a program like this to me doesn't
11 seem to involve any nefarious presumption
12        Instead, where we are is in paragraph 42 of their
13 complaint it says, "The core issue which presents facts and law
14 that predominate over all issues was the failure to make even
15 the slightest investigation about Bayview's authorization to
16 conduct business as a crematory"  That's the basis of
17 paragraph 42  That's negligence at its best  It's not bad
18 faith, it's not extreme and outrageous, it's not intentional
19 conduct
20        So as to Mr Gentile, I would submit that the
21 statutory provision providing for immunity is directly on
22 point; and the 1st Circuit in the case of Colonial Mortgage
23 Banking pointed out that litigants are not permitted to assert
24 contradictory positions to avoid dismissal
25        They can't have their cake and eat it, too, here

Page 32

1 They can't assert it's really a negligence case at its core
2 issue and then say, oops, maybe we missed, we really have this
3 bad faith case against Mr Gentile.
4        Thank you, your Honor
5        THE COURT: Okay.
6        Well, I'm prepared to rule on these motions having
7 heard the argument
8        Taking Harvard's motion and the motion of Gentile
9 first, the provision in the Uniform Anatomical Gifts Act that
10 is at issue is section 13  This is Massachusetts General Laws
11 Chapter 113 section 13(c)
12        That statute reads, "A person who acts in good
13 faith in accordance with the terms of sections 7 to 13
14 inclusive or under the anatomical gift laws of another state or
15 a foreign country shall not be liable for damages in any civil
16 action or be subject to prosecution in any criminal proceeding
17 for his act.
18        First, let me point out that the immunity created
19 by this statute extends to a person, any person who acts in
20 good faith  That would cover Harvard and Gentile acting in
21 good faith  And what this statute does, as I read it, is to
22 immunize persons acting in good faith from any claim, except a
23 claim of -- that the conduct of the defendant was conduct in
24 bad faith  As such, the statute eliminates all causes of
25 action in which there is no allegation of bad faith or the

Page 33

1 absence of good faith
2        So while my initial thought that maybe this is a
3 defense and that it can be raised as an affirmative defense, it
4 should not preclude the progress of this case in the face of a
5 motion to dismiss  I think that the statute properly read puts
6 the burden of pleading upon the plaintiff; that is to say, the
7 plaintiff must plead the absence of bad faith or lack of good
8 faith against parties that wanted to proceed
9        And Mr. Robertson has put his finger on an
10 important -- and perhaps I think maybe Mr Leibensperger did as
11 well -- the central allegation of the complaint as it relates
12 to Harvard and Gentile, and that's paragraph 42
13        Paragraph 42 in full reads: "The unauthorized and
14 illegal operation of the Bayview Crematory, as well as its
15 improper, offensive, and mortifying method of operation,
16 together with its deficient and/or nonexistent recordkeeping
17 practice, as well as the failure of Harvard and Gentile even to
18 make the slightest investigation or determination of Bayview's
19 authorization to conduct business as a crematory, all resulted
20 in offensively irreverent disposition of the anatomical remains
21 of the class members' decedents/donors and resulting damage to
22 Ms Favaloro and the members of the class  These are the core
23 issues in the case which present issues of fact and law that
24 predominant over all issues in this matter "
25        The core issues then as to Bayview, as I read this

9 (Pages 30 to 33)

Favaloro v. Harvard, et al, 12/19/05 hearing

8818be72-163a-4f5f-a160-da47a906b8b2

Page 34

1 complaint, are that Bayview improperly and offensively operated
2 its crematory, had deficient and nonexistent recordkeeping
3 practices  There are other allegations, too, about Bayview
4 here; but as to Harvard and Gentile, the only allegation is
5 that they failed to make even the slightest investigation and
6 determination
7 　　　In this argument this afternoon Mr  Charlip
8 pronounced Harvard's -- the deficiencies of Harvard and Gentile
9 with the terms that they knew or should have known about
10 Bayview's operation  Again, the construct, the language of
11 negligence
12 　　　What is alleged in this complaint against Harvard
13 and Bayview (sic ) is nothing more than negligence, that they
14 failed fully to investigate the operations of Bayview
15 　　　And because only negligence is alleged, lack of
16 good faith is not alleged, I think -- I rule -- not I think
17 that I rule, I mean I do rule that Harvard and Bayview (sic )
18 are covered by section 13 -- excuse me, Harvard and Gentile --
19 excuse me, Harvard and Gentile are covered by Chapter 113
20 section 13(c) of the Uniformed Anatomical Gifts Act  And as to
21 Harvard and Gentile, the motion to dismiss is granted
22 　　　As to Bayview, however, the allegations are
23 broader, and read with all the inferences that are appropriate
24 to plaintiff I think they do -- these allegations allege bad
25 faith  Just as an example, I point to paragraph 36 of the

Page 35

1 complaint, which alleges the following: "Bayview's operation
2 in this crematory was not only unauthorized and illegal, and
3 unauthorized in this complaint means that there is not a
4 license," the complaint goes on, it was not in compliance,
5 "Bayview was not in compliance with and did not observe the
6 standards deemed ordinary and proper for the handling and
7 cremation of decedents  Particularly, Bayview performed
8 multiple cremations simultaneously, left bodies to decompose in
9 non-refrigerated containers, generally failed to properly
10 handle the bodies of decedents, and failed to prepare, keep,
11 and maintain accurate and proper records of its business  This
12 caused Bayview to return to Harvard, and ultimately the
13 families of Ms  Favaloro and other class members, tainted and
14 contaminated remains or remains that were not consistent with
15 the unique identity of the decedent/donor "
16 　　　I think the complaint with that language reads
17 sufficiently to allege the absence of good faith, and the
18 parties have -- counsel for Bayview have acknowledged that the
19 immunity in this statute does not apply to the crematory in any
20 event
21 　　　So the motion of Bayview to dismiss this complaint
22 is denied
23 　　　Is there anything else I need to say?
24 　　　Just one second
25 　　　(Discussion off the record )

Page 36

1 　　　THE COURT: I didn't ask about the trustee  Do you
2 want to say anything about the trustee?
3 　　　MR  AHERN: Yes, your Honor  Our argument
4 basically mirrors that set forth in Harvard's brief, and which
5 you've already heard from Attorney Feeney  I don't think
6 there's a sufficient allegation that the trustee herself caused
7 any harm to the only named plaintiff in the case, Favaloro
8 　　　THE COURT: What does a trustee do?
9 　　　MR  AHERN: The trustee is just the legal entity,
10 the person representing the legal entity that owned the
11 property at the time the complaint was filed, and she is the
12 mother of the owner of some of the funeral parlors in
13 Massachusetts
14 　　　THE COURT: So the allegation against the trustee
15 simply is that she owns the -- the only allegation against the
16 trustee is that she owned these properties?
17 　　　MR  AHERN: The allegation is that she owned the
18 property  The trust owned the property, she's the trustee of
19 the trust, and that she somehow was involved with Bayview and
20 the operation, daily operation of the crematorium, your Honor
21 　　　THE COURT: Isn't that enough to keep the trustee
22 in?
23 　　　MR  AHERN: My issue, again, is that I don't think
24 the complaint goes far enough to make a connection between the
25 only named defendant -- only named plaintiff and what the

Page 37

1 trustee did or didn't do
2 　　　THE COURT: What do you say about that,
3 Mr  Charlip?
4 　　　MR  CHARLIP: Paragraph 32, we allege that "Stokes
5 was fully cognizant and aware of the fact that Bayview was not
6 a state authorized and approved crematory in the State of New
7 Hampshire and had no official authority to conduct business
8 cremating the remains of decedents under any rule" --
9 　　　THE COURT: Slowly
10 　　　MR  CHARLIP: I'm sorry  -- "under any rule,
11 regulation, statute or ordinance of any state of the United
12 States of America "
13 　　　Further, we say, "Stokes was fully cognizant and
14 aware that Bayview Crematory had no authority or approval to
15 conduct business in this Commonwealth but had and maintained
16 business relations with funeral homes and funeral directors,
17 including Gentile  Stokes permitted Bayview to operate --
18 improperly operate its unauthorized and unapproved business
19 with full knowledge of the foreseeable consequences and likely
20 effect on Favaloro and the class "
21 　　　So I think that paragraph -- there's some other
22 paragraphs, but I think that paragraph ties in Stokes to the
23 conduct
24 　　　THE COURT: Yes, sir
25 　　　MR  AHERN: Your Honor, I think it's a pretty weak

10 (Pages 34 to 37)

Favaloro v. Harvard, et al, 12/19/05 hearing

8818be72-163a-4f5f-a160-da47a906b8b2

Page 46

1  about  Allegations along those lines
2        Now, if you've got something like that and you
3  think you in good faith can make that allegation, then you
4  ought to do it, but if it's just negligence -- you understand
5  that I will not -- I don't want to look at this again if all
6  you're going to tell me is negligence
7        And what is it you're going to say? Tell me --
8  maybe I should know what it is you're going to allege
9        MR CHARLIP: Well, I think what we would allege
10  would be along the lines -- and obviously I can't give you
11  chapter and verse right now --
12        THE COURT: No, no, you should be able to, because
13  you say you want me to not dismiss, give you a chance to
14  amend  That means you know right now what it is you'll say
15  So tell me
16        MR CHARLIP: That there were funeral homes -- I'm
17  sorry, that there were crematories in the State of
18  Massachusetts that under Massachusetts law had to be owned by
19  someone other than a funeral home owner, that it was against
20  Massachusetts law to own a funeral home and a crematory, that
21  it was well-known in the industry that Derek Wallace was a
22  funeral home owner and owned two funeral homes and that he
23  formed Bayview in New Hampshire to evade the requirements of
24  Massachusetts law, that Bayview was charging --
25        THE COURT: And that Harvard and Gentile knew all

Page 47

1  of this
2        MR. CHARLIP: Yes
3        THE COURT: They knew
4        MR CHARLIP: It was known in the industry --
5        THE COURT: Excuse me, that Bayview (sic ) and
6  Harvard knew, not known in the industry  That these parties
7  knew -- if they did not know but should have known but was
8  known in the industry, that's negligence again
9        But the allegation is that somebody formed a
10  crematory in New Hampshire to avoid Massachusetts law and
11  Harvard and Gentile knew that  Now, are you prepared to allege
12  that?
13        MR. CHARLIP: I have not deposed Harvard, I have
14  not deposed Gentile --
15        THE COURT: No, no  At this point can you allege
16  it in good faith? Not that it's known in the industry, because
17  as I say, knowing in the industry means simply -- it may have a
18  different impact on Gentile, but Harvard is not in this
19  industry
20        MR CHARLIP: I would submit that Harvard's
21  donative body program acts in the stead of a funeral home
22  They do -- they do contract --
23        THE COURT: You know, you're talking a legal
24  construct  The question is did Harvard act in bad faith? And
25  bad faith means that they did something knowing the things

Page 48

1  you're just alleging  Harvard knew all of this.
2        MR CHARLIP: I don't know what Harvard knew as I
3  stand here right now
4        THE COURT: Okay. I think I'm done
5        The motion to dismiss is with prejudice
6        MR. CHARLIP: Okay
7        THE COURT: The granting of the motion to dismiss
8  is with prejudice.
9        MR. CHARLIP: Your Honor, I rise only to remind you
10  you asked us to remind you --
11        THE COURT: Thank you very much
12        On the motion to remand, I have apparently already
13  granted (sic ) that motion, and there are two exceptions to the
14  removal of this case: The local controversy exception and the
15  home state exception
16        The local controversy exception fails because no
17  other class action was filed within the three-year period
18  within which this action was filed; and there are at least
19  four, I have another one, at least one of them, maybe there are
20  two other ones  How many?
21        MS. FEENEY: Two.
22        MR. AHERN: Two, your Honor
23        THE COURT: I have two other class actions  And
24  those class actions make the same or similar allegations
25  against at least some of the defendants as is made in this

Page 49

1  case
2        The home state exception reads that two-thirds or
3  more of the members of all proposed plaintiff classes in the
4  aggregate and the primary defendants are citizens of the state
5  in which the action was originally filed  And the primary
6  defendants are not citizens of Massachusetts  Bayview being
7  the primary -- and Stokes the primary defendants, they're all
8  citizens of New Hampshire
9        Now, there's some notion that Harvard and Gentile
10  are the primary defendants, but the primary action alleged in
11  this is the action of Bayview, and besides which, I've
12  dismissed the other two defendants
13        (Discussion off the record )
14        THE COURT: I'm reminded I'm using the wrong phrase
15  as between granted and dismissed -- granted and denied
16        The motion to remand has been denied, and is denied
17  for those reasons
18        Okay  Anything further?
19        MR LEIBENSPERGER: Thank you, your Honor
20        THE COURT: If I had to write this all down, I can
21  get it straight, but since I'm -- I'm doing it from the bench
22  to get it done quickly, I need someone to remind me if I say
23  granted when I mean denied, in particular
24        Okay  Just to clear things up, the motion to
25  dismiss is granted in as far as it is a motion of Harvard and

Favaloro v. Harvard, et al, 12/19/05 hearing

8818be72-163a-4f5f-a160-da47a906b8b2