UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

GERALDINE FAVALORO, for herself and on
behalf of all others similarly situated,

    Plaintiff,

vs.                                           Case No. 05-11594 RCL
                                                            Honorable Reginald C. Lindsay

PRESIDENT AND FELLOWS OF HARVARD
COLLEGE, BAYVIEW CREMATORY, LLC,
a New Hampshire Limited Liability Company,
LINDA STOKES, TRUSTEE OF THE DEKES
REALTY TRUST OF 107 SOUTH BROADWAY,
LAWRENCE, MASSACHUSETTS, and JOHN J.
GENTILE,

    Defendants.
_____/

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF, GERALDINE FAVALORO'S, MOTION FOR ATTORNEY'S FEES AND COSTS AS SANCTIONS PURSUANT TO RULE 11, FED.R.CIV.P.

Plaintiff, Geraldine Favaloro ("Ms. Favaloro"), by and through her undersigned counsel, files this Memorandum of Law in Support of her Motion for Attorney's Fees and Costs as Sanctions Pursuant to Rule 11, Fed.R.Civ.P. (the "Favaloro Rule 11 Motion"), as set forth herein below.

### The Context of the Favaloro Rule 11 Motion

Ms. Favaloro makes this Motion solely within the context of the propriety of the Gentile Rule 11 Motion. The Favaloro Rule 11 Motion requests this Court to consider only the matters pertaining to the predicate for and the timing of the filing of the Gentile Rule 11 Motion and not

the merits of Ms. Favaloro's claims in the underlying action. To do otherwise would interject the merits aspects of the Gentile Rule 11 Motion into the considerations of whether the actions of Mr. Gentile and his counsel violated Federal Rule of Civil Procedure 11(b)(1), (2), and (3).[1] It is also important to note that virtually every case that precluded Mr. Gentile and his counsel from legitimately asserting a Rule 11 violation against Ms. Favaloro and her counsel in these particular circumstances could be found in the established law of this District. Finally, Ms. Favaloro would point out that Mr. Gentile and his counsel cited no authority in the Gentile Rule 11 Motion or Memorandum of Law to support the relief sought.

### The Gentile Rule 11 Motion Was For An Improper Purpose, i.e., To "harass" And To Cause A "needless increase in the cost of litigation" Rule 11(b)(1)

There never was a proper basis for the assertion of the Gentile Rule 11 Motion. The Motion and the accompanying Memorandum of Law allege, without substantiation, the ostensible quantity and quality of evidence in the Plaintiff's possession. The Motion goes on to critique Ms. Favaloro's decision to exercise her right to an appeal, but neglects to address the fact that while the appeal was pending, the Massachusetts Supreme Judicial Court interpreted the Massachusetts Anatomical Gifts Act "good faith" exception in a manner wholly consistent with Ms. Favaloro's legal position. In fact, Mr. Gentile continues to argue the incorrect status of the law as to "good faith"[2], despite the Supreme Judicial Court's ruling (*Gentile Rule 11 Memorandum of Law*, p. 1). See <u>Carey v. New England Organ Bank</u>, 446 Mass. 270, 283, 843 N.E.2d 1070, 1083 (2006).

---

[1] It should be noted, however, that Mr. Gentile cannot be held liable for monetary sanctions for a violation of subdivision (b)(2). *Rule 11(c)(2)(A), Fed.R.Civ.P.*

[2] This is incorrectly referred to in the Gentile Rule 11 Motion as a burden on Ms. Favaloro to demonstrate Mr. Gentile's "bad faith." The statute is not worded in this way.

The Gentile Rule 11 Motion evidences an unhappiness and frustration on the part of Mr. Gentile with the fact that he has to hire counsel to defend this case. While Mr. Gentile's Rule 26 Initial Disclosures indicate that his personal and professional liability insurance carriers have declined to provide either a defense or coverage, this fact does not create any Rule 11 liability on the part of Ms. Favaloro or her counsel. It is apparent that Mr. Gentile has decided to harass Ms. Favaloro and exact his "pound of flesh" by the threat of sanctions and the needless increase in the cost of this litigation to Ms. Favaloro and her counsel.

Mr. Gentile has obviously and belatedly sought to seize on the colloquy that occurred during the December 19, 2005 oral argument on the Defendants' Motions to Dismiss. There, the Court noted that in the event that Ms. Favaloro were given leave to amend her complaint, and failed to allege sufficient negligence to the level of a lack of good faith, Rule 11 sanctions would be available.

```
 18              THE COURT:  So you're asking for leave to amend the
 19     complaint?
 20              MR. CHARLIP:  Correct.
 21              THE COURT:  What do you say, Mr. Leibensperger?
 22              MR. LEIBENSPERGER:  Well, we would object to that.
 23     That's exactly the point that the immunity statute is intended
 24     to do, is to prevent this sort of fishing expedition for facts
 25     that the plaintiff doesn't have or doesn't even have a good
00045
  1     faith ground to assert.
  2              I mean, he has Rule 11 obligations.  He brought
  3     this complaint, he's seen this motion to dismiss now for
  4     four-plus months, and now even allegations that I'm hearing
  5     that he might want to assert starting to really sound like in
  6     negligence anyway.
  7              So for example, if we got a motion to amend
  8     tomorrow I'm sure that we'd oppose it on the ground that it was
  9     futile and it ought not to be allowed.
 10              So I would oppose.
 11              THE COURT:  Let me suggest to you, if I allow this
 12     motion and if it's nothing more than negligence, you have your
 13     Rule 11 motion.
```

*Hearing Transcript, December 19, 2005*, pp. 44-45. Again, this dialogue was within the context of a request to amend the dismissed complaint; occurred prior to the Supreme Judicial Court's

3

ruling in *Carey*; and dealt with possible remedies to the Defendants if any amended complaint failed to allege matters sufficient under the law as it existed at that time. It is apparent that Mr. Gentile was hoping beyond hope that the issue of Rule 11 sanctions could be re-injected into these proceedings, regardless of context and relevancy. As such, the Gentile Rule 11 Motion violates Rule 11(b)(1).

### The Gentile Rule 11 Motion Was "unwarranted" And "frivolous" Under Existing Law Rule 11(b)(2)

Rule 11 carries the procedural requirement of timely notice. Mr. Gentile acknowledges that his counsel's April 3, 2006 was his "Rule 11 letter." (*Gentile Motion, pp. 1 & 2; Gentile Memorandum of Law, p. 2*). There are no other letters, documents or notices referred to in the Gentile Rule 11 Motion forming the basis for compliance with the notice requirement of Rule 11(c)(1)(A). The letter was mailed to undersigned counsel nine (9) months after the suit was instituted and almost four (4) months after the allegedly offending claims had already been dismissed by this Court, with prejudice,. In fact, the appeal from that dismissal was dismissed by the Federal Appellate Court two (2) days after Mr. Gentile's Rule 11 letter.[3] Ms. Favaloro and Mr. Charlip were required to be afforded <u>time</u> to evaluate and correct the offending matter.

> *To that end, a motion filed after a judgment has been entered is procedurally defective. . . . The "safe harbor" provision functions as a practical time limit, and motions have been disallowed as untimely when filed <u>after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission</u>. . . . "[A] party cannot wait to seek sanctions until after the contention has been judicially disposed. A party must now serve a Rule 11 motion on the*

---

[3] It is important to note that the appeal did not address the merits arguments. The appeal was dismissed based upon the absence of a final judgment under Rule 54(b), thereby depriving the Appellate Court of § 1291 jurisdiction. A motion for entry of such a judgment has been made by Mr. Gentile's co-Defendant, Harvard, and the parties have filed suggested findings as a predicate to the judgment. The matter is currently pending before this Court.

>   *allegedly offending party at least twenty-one days prior to conclusion of the case <u>or judicial rejection of the offending contention</u>. . . . Any other interpretation would defeat the rule's explicit requirements."*

<u>In re: M.A.S. Realty Corporation</u>, 326 B.R. 31, 38-39 (Bkrtcy.D.Mass.2005)(emphasis added). *See also* <u>Smith v. Robertshaw Controls Company</u>, 2004 WL 1260097, *2 (D.Mass.2004) (Given the "safe harbor" provisions discussed below, a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention.)"); <u>Monohan Corporation v. Whitty</u>, 319 F.Supp.2d 227, 234 (D.Mass.2004) (Rule 11 motion was untimely where filed more than two months after grant of summary judgment and more than one year after movant became aware of the basis for the motion.)  Here, the allegedly offending Complaint was filed on July 7, 2005; dismissed by this Court, with prejudice, on December 15, 2005; Mr. Gentile's Rule 11 letter was mailed on April 3, 2006; and the Gentile Rule 11 Motion filed on June 12, 2006.  Mr. Gentile's motion was untimely on its face and not warranted by existing law in this District.  The previously cited Massachusetts District Court decisions establish that Mr. Gentile's Rule 11 Motion was untimely on its face.  "To file pleadings such as this Reconsideration Motion and <u>the non-compliant requests for sanctions</u> wastes both counsels' and the Court's time and resources and may well be sanctionable."  <u>In re Hannigan</u>, 2005 WL 3263923, *2 (Bkrtcy.D.Mass.2005)(Emphasis added).

In addition to the untimely nature of Mr. Gentile's Rule 11 Motion, he has taken a cavalier approach to compliance with the Rule and has failed to understand its "safe harbor" requirements.  Similar to <u>Hannigan</u>, *supra*, a Rhode Island District Court has held that ignorance of the requirements of Rule 11 or a casual approach to filing the motion results in a waste of the court's time and forces parties to respond to a motion with no basis in law or fact.  Rule 11

sanctions and a public reprimand are appropriate for such conduct.  <u>Waters v. Walt Disney World Company</u>, 237 F.Supp.2d 162, 168 (D.Rhode Island 2002).  Mr. Gentile's Rule 11 Motion effectively precluded Ms. Favaloro and Mr. Charlip from availing themselves of the opportunity to seek safe harbor under the Rule.  "Rule 11 was amended in 1993 to include a 21-day 'safe harbor' provision with respect to motions filed by parties.  Fed.R.Civ.P. 11(c)(1)(A).  The safe harbor provision must be strictly complied with for sanctions to be imposed under the amended Rule."  <u>In re Hannigan</u>, 2005 WL 3263923, *1 (Bkrtcy.D.Mass.2005)  Notice and the opportunity of a party to avail itself of safe harbor are an absolute and necessary predicate to obtaining relief under the Rule.  Without compliance with the notice provisions of Rule 11, the Motion is <u>procedurally defective</u> and no sanctions can be properly awarded by the Court.

> *By the terms of Rule 11(c), this court cannot impose sanctions under that rule unless the requirements of the "safe harbor" provision have been met.  "[T]he safe harbor provisions of Rule 11 are inflexible claim-processing rules and . . . a district court exceeds its authority by imposing sanctions requested through a procedurally-deficient Rule 11 motion.  <u>Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.</u>, 369 F.3d 385, 396 (4th Cir.2004).*

<u>United States v. M.A. Mortenson Company</u>, 2006 WL 696196, *1 (D.Maine 2006).  Not only is Mr. Gentile's Motion untimely, there was no offending "paper, claim, defense, contention, allegation, or denial" that either Ms. Favaloro or Mr. Charlip could withdraw to protect themselves from the sanctions sought by Mr. Gentile.  Mr. Gentile knew or was certainly charged with knowledge of this existing law when they filed the Rule 11  Motion.  Further, Ms. Favaloro, through her counsel, brought this law to their attention and afforded Mr. Gentile and his counsel the same "safe harbor" they denied her.

## The Gentile Rule 11 Motion Has No "evidentiary support"
### Rule 11(b)(3)

Mr. Gentile's Rule 11 is devoid of evidentiary support. No specific reference is made to any of the subdivisions of Rule 11(b). Certain subsections can logically be eliminated by reference to the Rule 11 Motion itself. The Gentile Rule 11 Motion does <u>not</u> assert that either Ms. Favaloro or Mr. Charlip presented the Complaint for any "improper purpose" or that the allegations are "not warranted by existing law or by nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Mr. Gentile could not assert the latter in that after this Court dismissed the case, with prejudice, and during the pendency of the appeal that was dismissed for lack of § 1291 jurisdiction, the Massachusetts Supreme Judicial Court held that where a defendant moving for summary judgment contends, and makes at least a minimal showing that it acted in "good faith" within the meaning of *G. L. c. 113, § 13(c)*, the burden falls to the plaintiffs to identify competent evidence sufficient for a reasonable jury to find to the contrary. <u>Carey v. New England Organ Bank</u>, 446 Mass. 270, 283, 843 N.E.2d 1070, 1083 (2006). This holding was wholly consistent with the legal position asserted by Ms. Favaloro and her counsel before this Court regarding "good faith" as an affirmative defense that was not subject to Rule 12 dismissal. Mr. Gentile's Motion does speak in terms of "unsupported", and "ill-considered actions", although Rule 11 never uses the two latter words in subsection (b) as a standard for imposition of sanctions.

Dated this 21st day of August, 2006.

>/s/ David H. Charlip\
David H. Charlip\
Admitted *Pro Hac Vice*\
Florida Bar No.: 329932\
1930 Harrison Street\
Suite 208\
Hollywood, Florida 33020\
954.921.2131\
954.921.2191 Facsimile\
dcharlip@charliplawgroup.com

## Certificate of Service

I HEREBY CERTIFY that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 21st day of August, 2006.

>/s/ David H. Charlip\
David H. Charlip\
Admitted *Pro Hac Vice*